# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| JANE ROE, et al. | ) | Case No. 1:22-cv-00376 |
| | ) | |
| Plaintiffs, | ) | Judge Matthew W. McFarland |
| | ) | |
| v. | ) | Magistrate Judge Karen L. Litkovitz |
| | ) | |
| UNIVERSITY OF CINCINNATI, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT UNIVERSITY OF CINCINNATI'S
## MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, University of Cincinnati, moves this Court to dismiss Plaintiffs Jane Roe and Karen Soe's Complaint with prejudice. The grounds for this Motion are set forth more fully in the accompanying Memorandum in Support.

DAVE YOST
ATTORNEY GENERAL OF OHIO

By:  /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
Michael B. Rogers (0098948)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
E-mail: carpenter@carpenterlipps.com
bricker@carpenterlipps.com
barthel@carpenterlipps.com
rogers@carpenterlipps.com

Special Counsel for Defendant
University of Cincinnati

**MEMORANDUM IN SUPPORT**

**I.      INTRODUCTION**

To successfully state a claim for deliberate indifference under Title IX, Plaintiffs must allege facts showing they suffered *further* actionable sexual harassment by their harasser, fellow student John Doe, after placing an appropriate person at the University of Cincinnati on notice that John Doe previously harassed them. Not only that, Plaintiffs must also show the University's intentional deliberate indifferent response caused the further harassment. The facts alleged by Plaintiffs fail to state such a claim.

The last alleged incident of sexual harassment by John Doe against Plaintiff Jane Roe occurred on October 5, 2021. The University's Office of Gender, Equity and Inclusion ("OGEI") received notice on October 8, 2021. No further harassment occurred after October 8.

The only alleged incident of sexual harassment by John Doe against Plaintiff Karen Soe occurred on October 22, 2021. OGEI received notice on November 5, 2021. No further harassment occurred after November 5.

Even if Plaintiffs had alleged a plausible Title IX deliberate indifference claim, they are not entitled to their requested damages related to loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress, lost earning capacity, and lost career and business opportunities. Those damages are not recoverable under Title IX.

Therefore, as further detailed below, Plaintiffs' Complaint fails as a matter of law.

**II.     PLAINTIFFS' ALLEGATIONS**

Plaintiffs and John Doe are students at the University in its College – Conservatory of Music ("CCM") ballet program. (*See* Complaint, Doc. 1, at ¶¶ 21-23.) Plaintiffs allege John Doe sexually harassed them during partnering class (female and male dancer are taught how to dance

2

together) or during pas de deux rehearsals (a dance for two people, typically a male and a female). (Id. at ¶¶ 43, 47.)

*Jane Roe's Allegations:*

Plaintiff Jane Roe alleges that, between September 2, 2021, and October 5, 2021, she experienced multiple incidents of John Doe holding her in an improper manner while dancing in partnering class or pas de deux rehearsal, which led to him inappropriately touching her. (*Id*. at ¶¶ 31-33, 35-37.)

On Friday, October 8, 2021, Jane Roe met with Denton Yockey, who was at that time the Division Head, Theatre Arts, Production and Arts Administration, to report these alleged incidents. (*Id*. at ¶ 40.) Yockey reported these allegations to OGEI that same day. (*Id*.) Over the ensuing two weeks, OGEI met with Jane Roe three times. (*Id*. at ¶ 47.)

Meanwhile, on October 14, 2021, Jane Roe states that she met with Professor Dierdre Carberry and Shauna Steele, the Chair of the Dance Department, to discuss John Doe's alleged conduct. (*Id*. at ¶ 41.) Jane Roe states that Steele told her that she did not have to partner with John Doe anymore and that they would try to find a way to conduct rehearsals without partnering. (*Id*.)

On Thursday, October 21, 2021, Jane Roe decided to file a formal complaint against John Doe based on the partnering class and pas de deux rehearsal incidents that occurred between September 2, 2021, and October 5, 2021. (*Id*. at ¶ 47.)

On the ensuing Monday, October 25, 2021, as a supportive measure, a mutual no contact order was issued to Jane Roe and John Doe. (*Id*. at ¶ 44.) Jane Roe alleges she wanted additional measures that the University could not legally provide, so she sought an *ex parte* protective order against John Doe from the Hamilton County Common Pleas Court. (*Id*. at ¶ 48.) The *ex parte*

protective order was granted on November 1, 2021, and remained in place for the duration of the 2021-2022 school year. (*Id*.)

Jane Roe does not allege that she experienced any other incidents of inappropriate touching after October 5, 2021, or that John Doe violated the mutual no contact order or the protective order. (*See* Complaint, generally.) Jane Roe also does not allege that she was in any more classes or rehearsals with John Doe after November 1, 2021, or that she saw him on campus during that time. (*Id*.)

OGEI investigated Jane Roe's formal complaint, and a hearing was conducted where the hearing panel found John Doe not responsible. (*Id*. at ¶¶ 49-57, 59.) Jane Roe appealed the decision, but her appeal was not successful. (*Id*. at ¶ 59.)

*Karen Soe's Allegations:*

Plaintiff Karen Soe alleges she danced with John Doe when she was 15 years-old while she was a student at Cincinnati Ballet, and prior to her admission to the University. (*Id*. at ¶ 25.) Karen Soe alleges that, during this time, John Doe inappropriately touched her during partnering but that she did not report the conduct. (*Id*.)

Karen Soe alleges that she accompanied Jane Roe to the October 8, 2021 meeting with Yockey. (*Id*. at ¶ 40.) Karen Soe alleges she told Yockey about her experience with John Doe while at Cincinnati Ballet when she was 15 years-old. (*Id*.) The report Yockey made to OGEI on October 8, 2021, did not include allegations of misconduct from Karen Soe's time at Cincinnati Ballet. (*Id*.)

Karen Soe alleges that on October 22, 2021, she partnered with John Doe in partnering class and that he held her too closely while placing her back down on the ground, which caused inappropriate touching. (*Id*. at ¶ 43.) Karen Soe states that she did not report the incident because

she knew John Doe would no longer be in class with her after Jane Roe obtained her *ex parte* protective order. (*Id.*)

On November 5, 2021, Karen Soe met with an OGEI investigator to serve as a witness in Jane Roe's formal complaint. (Complaint, Doc. 1, at ¶ 49.) During this meeting, Karen Soe alleged that she informed the OGEI investigator about the October 22, 2021 incident with John Doe. (*Id.*)

Karen Soe does not allege that she filed a formal complaint, that she requested supportive measures, or that she sought a mutual no contact order between herself and John Doe. (*See* Complaint, generally.) Karen Soe does not allege that she experienced any other alleged inappropriate touching by John Doe during her time at the University, aside from the one incident on October 22, 2021. (*Id.*) Karen Soe also does not allege that she was in any more classes or rehearsals with John Doe after November 1, 2021, or that she saw him on campus during that time. (*Id.*)

*Plaintiffs' Complaint:*

Plaintiffs filed their one-count Complaint on June 30, 2022, alleging the University's response to Plaintiffs' reports constituted deliberate indifference under Title IX. Plaintiffs seek "damages includ[ing] diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages." (*Id.* at ¶ 70.)

### III. ARGUMENT

#### A. Rule 12(b)(6) Standard.

A complaint that fails to state a claim upon which relief can be granted is subject to

dismissal under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must therefore "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* The Court "need not accept conclusory allegations or indulge in unreasonable inferences." *HMS Prop. Mgmt. Grp., Inc. v. Miller*, 69 F.3d 537, at *3 (6th Cir. 1995) (citing *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971)).

Applying these principles, Plaintiffs' claim for relief fails to comply with this standard and should be dismissed.

**B.** **Plaintiffs' Complaint Fails to Plead an Actionable Claim Under Title IX.**

Title IX prohibits state universities from denying the benefits of an education on the basis of sex. 20 U.S.C. § 1681. A state university's liability under Title IX may ***not*** be premised on principles of agency, negligence, *respondeat superior*, vicarious liability, or the independent actions of school employees or other students. *See Klemencic v. Ohio State Univ.*, 263 F.3d 504, 511 (6th Cir. 2001); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285, 288 (1998); *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) (applying *Gebser's* deliberate indifference standard to student-on-student harassment claim). Rather, the Supreme Court has held that when a student commits sexual misconduct against another student, the school can be held responsible for the student's misconduct only if its "response [amounts] to deliberate indifference to discrimination." *Gebser,* 524 U.S. at 290; *see also Davis*, 526 U.S. at 633.

6

A Title IX cause of action based on a school's response to student-on-student harassment sets a "high standard" that applies only "in certain limited circumstances." *Davis*, 526 U.S. at 643. The school is "properly held liable in damages only where [it is] deliberately indifferent to sexual harassment, of which [it] has actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id*. at 650.

The Sixth Circuit has characterized the Title IX deliberate indifference claim as having "two separate components, comprising separate-but-related torts by separate-and-*un*related tortfeasors: (1) "actionable harassment" by a student; and (2) a deliberate-indifference intentional tort by the school." *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 619–20 (6th Cir. 2019). Regarding the first tort, for student-on-student sexual harassment to be *actionable* it must be (a) severe, (a) pervasive, and (c) objectively offensive. *See Davis,* 526 U.S. at 651. Regarding the second tort, Plaintiffs must allege facts to satisfy four discrete elements: (1) actual knowledge of the misconduct, (2) an act by the University indicating deliberate indifference, (3) injury, and (4) causation. *Kollaritsch,* 944 F.3d at 621. Absent any one of these elements, a Title IX deliberate indifference claim fails. Here, Plaintiffs fail to allege sufficient facts to satisfy their pleading requirements.

1. **Tort 1: There was no actionable harassment by John Doe.**

The University does not want to minimize Plaintiffs' alleged experiences with John Doe. The issue here is that those alleged incidents simply do not rise to the level of actionable harassment that is subject to Title IX's regulations. Plaintiffs' allegations do not sufficiently allege actionable harassment at the hands of John Doe—harassment "so severe, pervasive, and

7

objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis,* 526 U.S. at 633.

Karen Soe alleges that, on "one occasion during partnering class," John Doe touched her "inappropriately." (Complaint, Doc. 1, at ¶¶ 26, 43.b.) A single incident could be sufficiently "severe," if, for example, it involved a sexual assault. But "severe" is only one part of the test. The incident must also be pervasive. So even if, for purposes of this argument, John Doe's contact with Karen Soe is "severe," "a single incident would nonetheless fall short of Title IX's requirement of 'systemic' harassment." *Kollaritsch*, 944 F.3d at 620. Consequently, Karen Soe has not alleged actionable harassment.

Jane Roe had more than one encounter with John Doe during partnering classes and pas de deux rehearsals at the University. (Complaint, Doc. 1, ¶ 47.) Jane Roe alleges John Doe touched her "inappropriately" during those classes and rehearsals. (*Id.*) But those events did not "effectively bar[] the victim's access to an educational opportunity or benefit." *Davis,* 526 U.S. at 633. Indeed, Jane Roe continued attending classes and was cast and participated in performances. (*Id.*, ¶ 60.) Jane Roe has not alleged actionable harassment.

2. **Tort 2: The University did not act deliberately indifferent.**

Even assuming Plaintiffs alleged actionable harassment by John Doe, Plaintiffs nevertheless fail to state the second tort of deliberate indifference by the University. The University's response was not clearly unreasonable, and neither Plaintiff suffered any actionable sexual harassment by John Doe *after* the University's response. Therefore, the University's response did not cause Plaintiffs to suffer any further harassment.

a. **The University Did Not Have Actual Knowledge of Alleged Sexual Harassment Until October 2021.**

"'Knowledge' means that the defendant school had 'actual knowledge' of an incident of

actionable sexual harassment that prompted or should have prompted a response." *Kollaritsch*, 944 F.3d at 621, *citing Davis*, 526 U.S. at 650 (rejecting an imputed-knowledge standard under agency principles or a should-have-known standard based in negligence). Under Title IX, "actual knowledge" is defined, in relevant part, as:

> notice of sexual harassment or allegations of sexual harassment to a recipient's Title IX Coordinator or any official of the recipient who has authority to institute corrective measures on behalf of the recipient, …. Imputation of knowledge based solely on vicarious liability or constructive notice is insufficient to constitute actual knowledge. …. The mere ability or obligation to report sexual harassment or to inform a student about how to report sexual harassment, or having been trained to do so, does not qualify an individual as one who has authority to institute corrective measures on behalf of the recipient. …

34 CFR § 106.30(a). "An appropriate person is someone 'high enough up the chain-of-command' that her decision constitutes the school's decision." *Kesterson v. Kent State Univ.*, 967 F.3d 519, 529 (6th Cir. 2020), *citing Hill v. Cundiff*, 797 F.3d 984, 971 (11th Cir. 2015).

According to Plaintiffs, the University learned of Jane Roe's allegations of sexual harassment against John Doe on October 8, 2021, and Karen Soe's allegations of sexual harassment against John Doe on November 5, 2021. (Complaint, Doc. 1, at ¶¶ 40, 49.) These dates represent the first time the allegations were reported to OGEI. The Complaint does not allege that Plaintiffs reported alleged sexual harassment to any other University official with the authority to institute corrective measures on behalf of the University prior to these dates. (*See* Complaint, generally.) Alleged reports to CCM faculty, who may have had mandatory reporting requirements, but no authority to institute corrective measures, does not constitute actual knowledge.[1]

---

[1] Indeed, Plaintiffs allege that Yockey informed them that he did not have authority to take corrective action outside the Title IX process. (Complaint, Doc. 1, at ¶ 42.)

9

### b. The University's Actions Were Not Clearly Unreasonable.

Once Plaintiffs reported their concerns to an appropriate person, OGEI, the University did not act unreasonably. "An 'Act' means a response by the school that was 'clearly unreasonable in light of the known circumstances,' *Davis*, 526 U.S. at 648, thus demonstrating the school's deliberate indifference to the foreseeable possibility of *further* actionable harassment of the victim." *Kollaritsch*, 944 F.3d at 621.

Bear in mind, "[i]t's not a university's job to do the impossible—to 'purg[e] [its] school[] of actionable peer harassment." *Foster v. Univ. of Michigan*, 982 F.3d 960, 965 (6th Cir. 2020) (en banc), *citing Davis*, 526 U.S. at 648. The deliberate indifference standard makes schools liable when they "refuse[ ] to take action…not when they take action that ultimately fails to purge their schools of actionable peer harassment. We ask not whether the school's efforts were ineffective but whether they amounted to an official decision ... not to remedy the violation." *Id.* at 968 (cleaned up).

Once OGEI received Jane Roe's report of alleged sexual harassment against John Doe on October 8, 2021, the OGEI investigator met with Jane Roe three times before Jane Roe decided to file a formal complaint on October 21, 2021. (Complaint, Doc. 1, at ¶ 47.) Upon filing the formal complaint, OGEI investigated, issued a mutual no contact order, and held a hearing. (Id. at ¶¶ 44, 49-57.) Moreover, by November 1, 2021, John Doe was no longer on campus because of an *ex parte* protective order. (*Id*. at ¶ 48.)

As for Karen Soe, she benefitted from the University's response to Jane Roe's situation. That suffices considering Karen Soe did not file her own formal complaint with OGEI after her incident with John Doe occurred on October 22, 2021. Indeed, Karen Soe alleges that she did not report John Doe's alleged sexual harassment because she knew Jane Roe's *ex parte* protective

10

order would remove him from campus. (Id. at ¶ 43.) Moreover, unlike Jane Roe, Karen Soe did not request a mutual no contact order, or any other supportive measures. (*See* Complaint, generally.)

Although the University's collective response signals the University was anything but deliberately indifferent to Plaintiffs' reports, one aspect of the University's response—a mutual no contact order—is particularly noteworthy. The no contact order ended the alleged sexual harassment against Jane Roe, that is, the inappropriate touching during partnering class and pas de deux rehearsals. The order permitted John Doe to continue attending classes, but the University did not act in an intentionally indifferent way by allowing John Doe to continue attending class. In fact, doing more could have exposed the University to a lawsuit by John Doe. "Recall that the harasser has 'constitutional [and] statutory' rights too. It's "entirely reasonable for a school to refrain from a form of disciplinary action that would expose it" to lawsuits by the harasser." *Foster*, 982 F.3d at 969 (internal citations omitted).

Therefore, Plaintiffs have failed to state facts showing the University's response was clearly unreasonable in light of the known circumstances.

### c. The Plaintiffs Suffered No Further Injury After OGEI Received Their Reports.

Neither Plaintiff suffered any injury, that is to say *further* actionable sexual harassment by John Doe, after their reports of harassment were received by OGEI. "'Injury' in this Title IX context means the deprivation of 'access to the educational opportunities or benefits provided by the school[.]'" *Kollaritsch*, 944 F.3d at 622, *citing Davis*, 526 U.S. at 650. "Emotional harm standing alone is not a redressable Title IX injury." *Id.*

To show further actionable harassment, the conduct must be "something more than just juvenile behavior among students, even behavior that is antagonistic, non-consensual, and crass."

11

*Id.* For example, the Sixth Circuit has held that shoving a student into a locker, making an obscene sexual gesture towards her, and requesting oral sex did not constitute actionable harassment. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 363 (6th Cir. 2012). By way of further example, allegations that the student "could have encountered [the harasser] at any time due to his mere presence on campus" fails to plausibly allege the further actionable harassment required to establish a claim under Title IX. *Kollaritsch,* 944 F.3d at 625.

Jane Roe claims that she "was negatively impacted by the presence of John Doe," and that he looked angry and made "weird gestures." (Complaint, Doc. 1, at ¶ 60.) Appearing "angry" and making "weird gestures" does not rise to the level of further actionable sexual harassment (injury). *See Davis*, 526 U.S. at 633. *See also, Kollaritsch*, 944 F.3d at 620; *Doe v. Univ. of Kentucky*, 959 F.3d at 2501-52 (finding plaintiff's allegations that the harasser "stared at her, stood by her at a party, followed her home, and sat near her in the library" insufficient as a matter of law to constitute actionable harassment); *Pahssen*, 668 F.3d at 363 (shoving plaintiff into locker, requesting oral sex, and making rude gesture insufficient to constitute actionable harassment); *Feucht v. Triad Loc. Sch. Bd. of Educ.*, 425 F. Supp. 3d 914, 931-32 and fn. 12 (S.D. Ohio 2019) (holding that threat of rape does not constitute actionable harassment under Title IX, in part, due to a lack of any physical contact).

Karen Soe alleges in a conclusory fashion that she "was unable to be cast in a classical ballet piece each semester because of the presence of John Doe." (Complaint, Doc. 1, at ¶ 60.) She fails to allege this was because of additional actionable harassment on the part of John Doe, who was no longer on campus after November 1, 2021. (*Id*. at ¶ 48.) John Doe's mere presence, especially when he was no longer present at the time Karen Soe allegedly made her report to OGEI, fails to rise to the level of actionable sexual harassment. *See Kollaritsch*, 944 F.3d at 620; *Pahssen*,

12

668 F.3d at 363; *Doe v. Univ. of Kentucky*, 959 F.3d at 2501-52; *Feucht*, 425 F. Supp. 3d 914, 931-32 and fn. 12.

Plaintiffs have not alleged any further actionable harassment (injury) and, therefore, fail to sufficiently plead causation as well.[2] As such, their Complaint must be dismissed.

### D. <u>Plaintiffs Are Not Entitled to Damages</u>.

As a matter of law, Plaintiffs can never succeed in recovering their requested categories of damages in this lawsuit.

#### 1. Plaintiffs' Claims for Emotional Distress Damages Should be Dismissed because they are Unavailable in Title IX Cases as a Matter of Law.

Even if Plaintiffs had pled sufficient claims under Title IX, which they have not, any claims for damages related to emotional distress must be dismissed. The Supreme Court held in *Cummings v. Premier Rehab Keller, P.L.L.C.* that emotional distress damages are not available in cases arising from statutes passed with the power of the Spending Clause unless there is clear Congressional intent to make them available. 142 S. Ct. 1562, 212 L. Ed. 2d 552, reh'g denied, 142 S. Ct. 2853 (2022).

The Supreme Court recognized that "[w]hen Congress acts pursuant to its spending power, it generates legislation 'much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions.'" *Davis*, 526 U.S. at 640 (quoting *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981)); *Barnes v. Gorman*, 536 U.S. 181,

---

[2] "'Causation' means the 'Act' caused the 'Injury,' such that the injury is attributable to the post-actual-knowledge *further* harassment, which would not have happened but for the clear unreasonableness of the school's response. *Davis*, 526 U.S. at 644. *Davis* requires a showing that the school's 'deliberate indifference 'subject[ed]' its students to *harassment*,' necessarily meaning further actionable harassment. *Id*. (emphasis added). But the occurrence of further harassment is not enough by itself; the response's *unreasonableness* must have caused the further harassment. The school's response must be clearly unreasonable *and* lead to further harassment." *Kollaritsch*, 944 F.3d at 622.

186 (2002) (ADA and Rehabilitation Act); *Guardians Ass'n v. Civ. Serv. Comm'n of City of New York*, 463 U.S. 582, 599 (1983) (same); *Lau v. Nichols*, 414 U.S. 563, 568-69 (1974) (same). The Court has explicitly applied this principle to Title IX. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) ("[Title IX] condition[s] federal funding on a recipient's promise not to discriminate, in what amounts essentially to a contract between the Government and the recipient."). Because of this contractual relationship, "[t]he legitimacy of Congress' power to legislate under the spending power ... rests on whether the [recipient] voluntarily and knowingly accepts the terms of the 'contract.' ... Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst*, 451 U.S. at 17. Ultimately, "Congress must express clearly its intent to impose conditions on the grant of federal funds so that States can knowingly decide whether or not to accept those funds." *Id.* at 25.

Under this principle, the Supreme Court has held that emotional distress damages are not available under Spending Clause statutes because Congress did not clearly express any unambiguous intent to make such damages available. *See Cummings*, 142 S. Ct. at 1571-72. The Court in *Cummings*, which discussed Title IX extensively, noted that "a federal funding recipient may be considered 'on notice that it is subject not only to those remedies explicitly provided in the relevant legislation, but also to those remedies traditionally available in suits for breach of contract.'" *Id.* at 1571 (quoting *Barnes*, 536 U.S. at 187). The Court reasoned that "a funding recipient is aware that, for breaching its Spending Clause 'contract' with the Federal Government, it will be subject to the *usual* contract remedies in private suits," and that "[i]t is hornbook law that 'emotional distress is generally not compensable in contract.'" *Cummings*, 142 S. Ct. at 1571 (emphasis *sic*), (quoting D. Laycock & R. Hasen, Modern American Remedies 216 (5th ed. 2019)). Accordingly, the Court held that it "cannot treat federal funding recipients as having consented to

14

be subject to damages for emotional distress. It follows that such damages are not recoverable under the Spending Clause statutes [at issue.]" *Id.* at 1572.

Because the University did not consent to be subject to damages for emotional distress, Plaintiffs cannot recover them in their Title IX suit here as a matter of law, and their claims for the same should be dismissed.

### 2. Plaintiffs' Claims For Lost Earning Capacity, As Well As Lost Career And Business Opportunities, Should Be Dismissed As Too Speculative To Recover.

*Cummings* applies equally to bar Plaintiffs' reduced earnings claims. The *Cummings* decision seeks "to ensure that funding recipients 'exercise[d] their choice' to take federal dollars 'knowingly, cognizant of the consequences of' doing so." *Id.* at 1573 (quoting *Pennhurst*, 451 U.S. at 17). The Court explained that "it is fair to consider recipients aware that, if they violate their promise to the Government, they will be subject to either damages or a court order to perform. Those are the usual forms of relief for breaching a legally enforceable commitment. No dive through the treatises, 50-state survey, or speculative drawing of analogies is required to anticipate their availability." *Id.*

The Court also has cautioned that in the context of Title IX, damages should be reasonably limited to the value of the services allegedly denied. *See Gebser*, 524 U.S. at 290 ("Where a statute's express enforcement scheme hinges its most severe sanction on notice and unsuccessful efforts to obtain compliance, we cannot attribute to Congress the intention to have implied an enforcement scheme that allows imposition of greater liability without comparable conditions."). Title IX prohibits recipients of federal funds from engaging in sex discrimination. *See* 20 U.S.C.A. § 1681. It is not reasonably within the contemplation of the recipient of federal funds that it might be subjected to pay indeterminate damages for diminished earning capacity or lost business

15

opportunities because of an alleged denial of educational services to the student. *See Barnes*, 536 U.S. at 188, 122 S. Ct. at 2102 (expressing doubt that a funding recipient would agree to indeterminate damages).

Relatedly, breach of contract damages are limited to damages reasonably within the contemplation of the parties at the time the contract was entered. *See Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 544, 23 S. Ct. 754, 755 (1903). A student's contention that Title IX related deficiencies in educational services may result in lost or diminished employment opportunities several years later is too speculative to be deemed within the contemplation of the parties. *See Assoc. General Contractors of California., Inc. v. California State Council of Carpenters*, 459 U.S. 519, 533-35, 103 S. Ct. 897, 906-07 (1983) (extending common law contract damages principals to federal law, and recognizing limits on consequential damages).

Here, Plaintiffs' factual allegations regarding "diminished earning capacity, as well as lost career and business opportunities," are too speculative and conclusory to plausibly state a claim for relief. (Complaint, Doc. 1, at ¶ 70.) The Complaint alleges that "Jane Roe's ability to participate in educational activities was negatively impacted," that she "had declining performance, trouble concentrating, and fear of attending school," and that "[s]he was not cast in the same type of roles as before." (*Id.* at ¶ 60.) The Complaint does not allege any facts that link Jane Roe's alleged declining performance or any casting decisions to the University's actions or inactions. Nor could she as she fails to plead a subsequent actionable harassment by John Doe, who was no longer on campus after November 1, 2021. (*See* Sections III.B.2.) Instead, Jane Roe merely alleges, in a conclusory fashion, that these speculative losses are due to the University's alleged Title IX violation. (Complaint, Doc. 1, at ¶ 70. This is not sufficient. *See also Davis*, 526 U.S. at 652 (holding that "a mere 'decline in grades' is not enough to survive a motion to dismiss

16

under Title IX); *Kollaritsch*, 944 F.3d at 624; *Gordon*, 686 F. App'x at 325.

Similarly, the Complaint alleges that Karen Soe "was unable to be cast in a in a [*sic*] classical ballet piece each semester because of presence [*sic*] of John Doe. In Spring, 2022, Karen Soe received some of the worst casting in a production of *Gizelle*. When she asked a professor how she was doing, the professor said, 'you are dancing really well, but it seems like there is something [*sic*] on.' Karen Soe explained the situation; the professor indicated that he had no idea what was going on despite the promises of Carberry and Steele to inform the faculty." (Complaint, Doc. 1, at ¶ 60.) Once again, however, Plaintiffs fail to allege facts connecting Karen Soe's alleged poor casting to a claimed Title IX violation. The Complaint simply claims, without alleging any factual support, that it was due to the presence of John Doe, but he was no longer on campus at that time.[3] (*Id.* at ¶ 60.) Again, this is not sufficient. *See Davis*, 526 U.S. at 633; *Kollaritsch*, 944 F.3d at 620; *Doe,* 959 F.3d at 2501-52; *Gordon*, 686 F. App'x at 325.

The Complaint generally claims that Plaintiffs were "denied the benefits of education at their chosen school," and that "[t]he conduct of [the University] has damaged Jane Roe and Karen Soe's academic and professional reputations and will affect their ability to find professional employment as ballet dancers." (Complaint, Doc. 1, at ¶ 61.) The Complaint fails to allege any facts supporting these conclusory statements. It does not allege how Plaintiffs' reputations have been damaged, or why their ability to find employment now or after graduation has been affected. This is simply insufficient to state a plausible claim for relief, and Plaintiffs' claims for diminished earning capacity and lost career and business opportunities must be dismissed. *See Twombly*, 550 U. S. at 555; *see also Iqbal*, 556 U.S. at 678.

---

[3] The casting for *Gizelle* occurred in Spring 2022. (*Id.* at ¶ 60.) John Doe was not on campus after November 1, 2021. (*Id*. at ¶¶ 43(c), 48.)

IV. **CONCLUSION.**

For the reasons stated above, the Court should dismiss Plaintiffs' Complaint with prejudice.

                        Respectfully submitted,

                        DAVE YOST
                        ATTORNEY GENERAL OF OHIO

By:   /s/ Michael H. Carpenter
        Michael H. Carpenter (0015733) (Trial Attorney)
        Timothy R. Bricker (0061872)
        David J. Barthel (0079307)
        Michael B. Rogers (0098948)
        CARPENTER LIPPS AND LELAND LLP
        280 Plaza, Suite 1300
        280 North High Street
        Columbus, OH 43215
        E-mail: carpenter@carpenterlipps.com
                     bricker@carpenterlipps.com
                     barthel@carpenterlipps.com
                     rogers@carpenterlipps.com

        Special Counsel for Defendant
        University of Cincinnati

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on September 19, 2022. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Michael H. Carpenter

Trial Attorney for
Defendant University of Cincinnati