**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JANE ROE, et al. | ) | Case No. 1:22-cv-00376 |
| | ) | |
| Plaintiffs, | ) | Judge Matthew W. McFarland |
| | ) | |
| v. | ) | Magistrate Judge Karen L. Litkovitz |
| | ) | |
| UNIVERSITY OF CINCINNATI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNIVERSITY OF CINCINNATI'S**
**MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant, University of Cincinnati (the "University"), moves this Court to dismiss Plaintiffs Jane Roe and Karen Soe's Amended Complaint (Doc. 15) with prejudice. The grounds for this Motion are set forth more fully in the accompanying Memorandum in Support.

DAVE YOST
ATTORNEY GENERAL OF OHIO

By: /s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
Michael N. Beekhuizen (0065722)
David J. Barthel (0079307)
Michael B. Rogers (0098948)
CARPENTER LIPPS AND LELAND LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, OH 43215
E-mail:carpenter@carpenterlipps.com
bricker@carpenterlipps.com
beekhuizen@carpenterlipps.com
barthel@carpenterlipps.com
rogers@carpenterlipps.com

Special Counsel for Defendant
University of Cincinnati

<u>MEMORANDUM IN SUPPORT</u>

I.      <u>INTRODUCTION.</u>

To state a claim for deliberate indifference under Title IX, Plaintiffs must each allege facts showing they suffered ***further*** actionable sexual harassment by fellow student John Doe after placing an appropriate person at the University on notice that John Doe previously harassed them. Plaintiffs also must each show a deliberately indifferent response by the University caused the further harassment.  Plaintiffs fail to state such a claim.

The last alleged incident of sexual harassment by John Doe related to Plaintiff Jane Roe occurred on October 5, 2021.  The University's Office of Gender, Equity and Inclusion ("OGEI"), the office at the University tasked with responding to such complaints, received notice on October 8, 2021.  Jane Roe does not allege to have suffered further harassment after October 5, 2021.

The only alleged incident of sexual harassment by John Doe after October 8, 2021 is related to Plaintiff Karen Soe, and is alleged to have occurred on October 22, 2021.  OGEI received notice of this allegation in November, 2021.  Karen Soe does not allege to have suffered further harassment after that.

Plaintiffs also fail to state a retaliation claim under Title IX.  They do not allege that the *University* retaliated against them, but rather seek to hold the University liable for the purported retaliation of University employees who are not officials of the University.  Plaintiffs' retaliation claim also fails because they do not allege they suffered an adverse *school-related* action *because* they reported sexual harassment.

Even if Plaintiffs had alleged a plausible Title IX claim, they are not entitled to damages related to loss of reputation, humiliation, embarrassment, inconvenience, lost earning capacity, and lost career and business opportunities.  Those damages are not recoverable under Title IX.

For these reasons, and as discussed further below, Plaintiffs' Amended Complaint fails to state a claim for which relief may granted.

## II.    PLAINTIFFS' ALLEGATIONS.

Plaintiffs and John Doe are students at the University's Conservatory of Music ("CCM") ballet program. (*See* Am. Compl., Doc. 15, at ¶¶ 21-23.) Plaintiffs allege John Doe sexually harassed them during partnering class (a class teaching dancers how to dance together) and during *pas de deux* rehearsals (a dance for two people, typically a male and a female). (*Id*. at ¶¶ 43, 47.)

***Jane Roe's Allegations*:** Plaintiff Jane Roe alleges that, between September 2, 2021, and October 5, 2021, she experienced multiple incidents of John Doe holding her in an improper manner while dancing in partnering class or during *pas de deux* rehearsals. (*Id*. at ¶¶ 30, 32-33, 35-37, 43.) On Friday, October 8, 2021, Jane Roe met with Denton Yockey, the then Division Head, Theatre Arts, Production and Arts Administration, to report the alleged incidents. (*Id*. at ¶ 35.) Mr. Yockey reported these allegations to OGEI that same day. (*Id*.) Over the ensuing two weeks, OGEI met with Jane Roe three times. (*Id*. at ¶ 43.)

On October 14, 2021, Jane Roe met with Professor Dierdre Carberry and Shauna Steele, the Chair of the Dance Department, to discuss John Doe's conduct. (*Id*. at ¶ 36.) Jane Roe states that Ms. Steele told her she did not have to partner with John Doe anymore and she would try to find a way to conduct rehearsals without partnering. (*Id*.)

On Thursday, October 21, 2021, Jane Roe filed a formal complaint against John Doe based on the partnering class and *pas de deux* rehearsal incidents that occurred between September 2, 2021, and October 5, 2021. (*Id*. at ¶ 43.) On the ensuing Monday, October 25, 2021, the University issued a mutual no contact order to Jane Roe and John Doe. (*Id*. at ¶ 39.)

Jane Roe alleges she wanted additional measures the University could not legally provide,

so she sought an *ex parte* protective order against John Doe from the Hamilton County Common Pleas Court. (*Id.* at ¶ 44.) The *ex parte* order was granted November 1, 2021, and remained in place for the duration of the 2021-2022 school year, prohibiting John Doe from coming within 500 feet of Jane Roe. (*Id.*) A copy of the *ex parte* protective order is attached. Exhibit A, Declaration of David. J. Barthel, Attachment 1.[1]

Jane Roe does ***not*** allege that she experienced any other incidents of inappropriate touching after October 5, 2021, or that John Doe violated the mutual no contact order or the protective order. (*See* Am. Compl., generally.) Jane Roe also does ***not*** allege she was in any more classes or rehearsals with John Doe after November 1, 2021, or that she saw him during that time. (*Id.*)

OGEI investigated Jane Roe's formal complaint. A hearing was conducted and the hearing panel found John Doe not responsible. (*Id.* at ¶¶ 53-55.) Jane Roe appealed the decision, but her appeal was not successful. (*Id.* at ¶ 55.)

***Karen Soe's Allegations***: Plaintiff Karen Soe alleges she danced with John Doe when she was a 15 year-old student at Cincinnati Ballet ***prior to her admission to the University***. (*Id.* at ¶ 25.) Karen Soe alleges that, during this time, John Doe inappropriately touched her during partnering but that she did not report the conduct. (*Id.*)

Karen Soe alleges she accompanied Jane Roe to the October 8, 2021 meeting with Mr. Yockey. (*Id.* at ¶ 35.) Karen Soe also alleges she told Mr. Yockey about her pre-University experience with John Doe at Cincinnati Ballet. (*Id.*) The report Mr. Yockey made to OGEI on October 8, 2021 did not include allegations of misconduct from the Cincinnati Ballet from prior to Karen Soe's attendance at the University. (*Id.*)

---

[1] Courts may take judicial notice of materials referenced in complaints. *See Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) ("[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment.").

Karen Soe alleges that, on October 22, 2021, she partnered with John Doe in partnering class and that he held her too close during a lift. (*Id*. at ¶ 38.) Karen Soe did not report the incident because she knew John Doe would no longer be in class with her after Jane Roe obtained her *ex parte* protective order. (*Id*.)

In November 2021, Karen Soe met with an OGEI investigator as a witness in Jane Roe's formal complaint. (Am. Compl., Doc. 15, at ¶ 45.) During this meeting, Karen Soe alleges that she informed the OGEI investigator about the October 22, 2021 incident with John Doe. (*Id*.) Karen Soe does **not** allege that she filed a formal complaint, that she requested supportive measures, or that she sought a no contact order between herself and John Doe. (*See* Am. Compl., generally.) She also does not allege that she experienced any inappropriate touching by John Doe during her time at the University, aside from the single incident on October 22, 2021. (*Id*.) Karen Soe additionally does not allege that she was in any more classes or rehearsals with John Doe, or that she saw John Doe on campus, after November 1, 2021. (*Id*.)

Plaintiffs allege that Jane Roe told Professor Carberry in March, 2020 that John Doe harassed Karen Soe **before** they were students at the University. (*Id.* at ¶ 28.) Plaintiffs allege that Professor Carberry escalated the matter to OGEI, and that OGEI emailed Jane Roe regarding the allegations. (*Id.* at ¶ 26.) After Professor Carberry initially informed OGEI of the allegations, OGEI followed up with Professor Carberry in March, 2020. (*Id*. at ¶ 26, 28(b)). A copy of the emails between Jane Roe and OGEI, and between OGEI and Professor Carberry are attached.[2] Exhibit B, Declaration of Alexa Justice ("Justice Dec."), Attachments 1-2.

---

[2] The Court may consider the communications between OGEI and Professor Carberry in this Rule 12(b)(6) motion to dismiss because they are referenced in the complaint and help "fill in the contours and details of a complaint" by providing important background information regarding Plaintiffs' report to OGEI in early 2020. *Bon-Ing Inc. v. Hodges*, 2:16-cv-710, 2016 WL 6680813, at *2, *4 (S.D. Ohio Nov. 14, 2016) (quoting *Yeary v. Goodwill Indus. Knoxville, INc.*, 107 F.3d 443, 445 (6th Cir. 1997)); *see also Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 834 (6th Cir. 2020) (quoting *Yeary*, 107 F.3d at 445); *Waters v. Drake*, 105 F. Supp. 3d 780, 784 (S.D. Ohio 2015).

III.    **ARGUMENT.**

A complaint that fails to state a claim upon which relief can be granted is subject to dismissal under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This includes containing "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* The Court "need not accept conclusory allegations or indulge in unreasonable inferences." *HMS Prop. Mgmt. Grp., Inc. v. Miller*, 69 F.3d 537, at *3 (6th Cir. 1995) (citing *Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971)).

Applying these principles, Plaintiffs' claims fail to state claims for which relief can be granted and should be dismissed.

A.    **Plaintiffs Fail To Plead An Actionable Title IX Deliberate Indifference Claim.**

Title IX prohibits a denial of educational benefits on the basis of sex. 20 U.S.C. § 1681. A school cannot be liable under Title IX based on principles of agency, negligence, *respondeat superior*, vicarious liability, or the independent actions of school employees or other students. *See Klemencic v. Ohio State Univ.*, 263 F.3d 504, 511 (6th Cir. 2001); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285, 288 (1998); *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) (applying *Gebser's* standard to student-on-student harassment). Rather, when a student commits sexual misconduct against another student, the school is responsible for the student's misconduct only if its "response [amounts] to deliberate indifference

5

to discrimination." *Gebser,* 524 U.S. at 290; *see also Davis*, 526 U.S. at 633.

A Title IX cause of action based upon student-on-student harassment sets a "high standard" that applies only "in certain limited circumstances." *Davis*, 526 U.S. at 643. The school is "properly held liable in damages only where [it is] deliberately indifferent to sexual harassment, of which [it] has actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id*. at 650.

The Sixth Circuit characterizes the Title IX deliberate indifference claim as having "two separate components, comprising separate-but-related torts by separate-and-***un***related tortfeasors: (1) 'actionable harassment' by a student; and (2) a deliberate-indifference intentional tort by the school." *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 619–20 (6th Cir. 2019) (emphasis in original). Regarding the first tort, to be ***actionable***, student-on-student sexual harassment must be severe, pervasive, and objectively offensive. *See Davis,* 526 U.S. at 651. Regarding the second tort, a plaintiff must allege facts to satisfy four discrete elements: (1) actual knowledge of the misconduct, (2) an act by the university indicating deliberate indifference, (3) injury, and (4) causation. *Kollaritsch,* 944 F.3d at 621. Absent any one of these elements, a Title IX deliberate indifference claim fails. Here, Plaintiffs fail to state a Title IX deliberate indifference claim.

### 1.     Tort 1: There Was No Actionable Harassment By John Doe.

Plaintiffs' allegations do not allege actionable harassment by John Doe, *i.e.*, harassment that is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis,* 526 U.S. at 633.

Karen Soe alleges that, on "one occasion during partnering class," John Doe touched her

"inappropriately." (Am. Compl., Doc. 15, at ¶¶ 26, 43.b.)   A single incident could be sufficiently "severe," if, for example, it involved a sexual assault.  But here, John Doe and Karen Soe were required to touch each other as part of the ***partnering*** class referenced. (*Id*. at ¶ 30.)  And "severe" is only one part of the test.  The incident also must be "pervasive."  *Kollaritsch*, 944 F.3d at 620 (even if harassment is "severe," "[a] single incident would nonetheless fall short of Title IX's requirement of 'systemic' harassment.").

 Jane Roe alleges John Doe touched her "inappropriately" during partnering classes and *pas de deux* rehearsals.  (Am. Compl., Doc. 15, ¶ 47.)  Again, however, John Doe had to touch Jane Roe as part of the dancing classes. (*Id*. at ¶ 30.)  And those events did not "effectively bar[] the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633.  Instead, Jane Roe continued attending classes and was cast and participated in performances.  (*Id*., ¶ 60.)

Neither Plaintiff has alleged actionable harassment.

### 2.      Tort 2: The University Did Not Act Deliberately Indifferent.

Plaintiffs also fail to adequately state the second tort of deliberate indifference.  The University's response was not "clearly unreasonable," and neither Plaintiff suffered any actionable sexual harassment by John Doe ***after*** the University's response.  *Foster v. Bd. of Regents of Univ. of Michigan*, 982 F.3d 960, 962, 966-971 (6th Cir. 2020) (en banc); *Kollaritsch*, 944 F.3d at 621.

The University was informed of Jane Roe's allegations on October 21, 2021, and of Karen Soe's allegations in November, 2021.  The University thoroughly investigated both Plaintiffs' claims; issued a no contact order between Jane Roe and John Doe; and held a hearing to examine the evidence.  The University's actions cannot be "clearly unreasonable" and were not deliberately indifferent as a matter of law.  Plaintiffs also did not suffer any subsequent actionable harassment after their reports.  *Foster*, 982 F.3d 960, 962, 966-971; *Kollaritsch*, 944 F.3d at 621.

a.     **The University Did Not Have Actual Knowledge Until The Fall Of 2021.**

"'Knowledge' means that the defendant school had 'actual knowledge' of an incident of actionable sexual harassment that prompted or should have prompted a response." *Kollaritsch*, 944 F.3d at 621 (quoting *Davis*, 526 U.S. at 650) (rejecting an imputed-knowledge standard under agency principles or a should-have-known standard based in negligence).  "[A]ctual knowledge" is defined, in relevant part, as:

> notice of sexual harassment or allegations of sexual harassment to a recipient's Title IX Coordinator or any official of the recipient who has authority to institute corrective measures on behalf of the recipient, …. Imputation of knowledge based solely on vicarious liability or constructive notice is insufficient to constitute actual knowledge. …. The mere ability or obligation to report sexual harassment or to inform a student about how to report sexual harassment, or having been trained to do so, does not qualify an individual as one who has authority to institute corrective measures on behalf of the recipient. …

34 CFR § 106.30(a).  "An appropriate person is someone 'high enough up the chain-of-command' that her decision constitutes the school's decision." *Kesterson v. Kent State Univ*., 967 F.3d 519, 529 (6th Cir. 2020) (quoting *Hill v. Cundiff*, 797 F.3d 984, 971 (11th Cir. 2015)).

The University learned of Jane Roe's allegations of sexual harassment against John Doe on October 8, 2021, and Karen Soe's allegations of sexual harassment against John Doe in November, 2021.  (Am. Compl., Doc. 15, at ¶¶ 35, 45.)  The Amended Complaint does not allege Plaintiffs reported sexual harassment to any University official with authority to take corrective measures on behalf of the University prior to these respective dates.  (*See* Am. Compl., generally.)

Plaintiffs' conclusory allegation that "faculty members had the authority to institute corrective measures" does not save their claim. (*Id*. at ¶ 68.)  Nor can Plaintiffs rely on their allegation that Karen Soe told Professor Carberry about "her history with John Doe at Cincinnati ballet." (*Id*. at ¶ 26.)  Under *Kesterson*, faculty members do not constitute an "appropriate person"

8

under Title IX. 967 F.3d at 529. Professor Carberry was not "high enough up the chain-of-command that her decision constitutes the school's decision." *Id.* Likewise, reports to CCM faculty who may have had mandatory reporting requirements, but no authority to institute corrective measures, does not constitute actual knowledge by the University.[3] *Id.*

### b.     The University's Response Was Reasonable.

"An 'Act' means a response by the school that was 'clearly unreasonable in light of the known circumstances,' ... thus demonstrating the school's deliberate indifference to the foreseeable possibility of *further* actionable harassment of the victim." *Kollaritsch*, 944 F.3d at 621 (emphasis *sic*). "It's not a university's job to do the impossible—to 'purg[e] [its] school[] of actionable peer harassment." *Foster*, 982 F.3d at 965 (quoting *Davis*, 526 U.S. at 648). Title IX imposes liability when schools "refuse[ ] to take action…not when they take action that ultimately fails to purge their schools of actionable peer harassment. We ask not whether the school's efforts were ineffective but whether they amounted to an official decision ... not to remedy the violation." *Id.* at 968 (cleaned up).

After OGEI received Jane Roe's October 8, 2021 report of alleged sexual harassment, OGEI's investigator met with Jane Roe three times before Jane Roe decided to file a formal complaint on October 21, 2021. (Am. Compl., Doc. 15, at ¶ 43.) Upon filing the formal complaint, OGEI investigated, issued a mutual no contact order, and held a hearing. (*Id.* at ¶¶ 39, 43-55.) By November 1, 2021, John Doe was prohibited from coming within 500 feet of Jane Roe because of an *ex parte* protective order. (*Id.* at ¶ 44.); *see also* Exhibit A, Barthel Dec. at Attach. 1.

Karen Soe admits she benefitted from the University's response to Jane Roe's situation. (*Id.* at ¶ 38.) She also admits she did not file her own formal complaint with OGEI after her

---

[3] Plaintiffs admit that Mr. Yockey—the head of the Division of Theatre Arts—informed them that he did not have authority to take corrective action outside the Title IX process. (Complaint, Doc. 15, at ¶ 35.)

incident with John Doe occurred on October 22, 2021. (*Id.*)  Instead, she alleges that she did not report John Doe's alleged sexual harassment because she knew Jane Roe's *ex parte* protective order would remove him from class.  (*Id*. at ¶ 38.)  Karen Soe did not request a mutual no contact order, or any other supportive measures.  (*See* Am. Compl., generally.)

Although all of the University's responses establish it was not deliberately indifferent to Plaintiffs' reports as a matter of law, one aspect of the University's response—a mutual no contact order—is particularly noteworthy. (*See id*. at ¶ 39.)  The no contact order *ended* the alleged sexual harassment against Jane Roe and Karen Soe, that is, the inappropriate touching during partnering class and *pas de deux* rehearsals. (*Id*.)  The order permitted John Doe to continue attending classes on campus, but that alone does not constitute deliberate indifference.  *Foster*, 982 F.3d at 969 (internal citations omitted) ("Recall that the harasser has 'constitutional [and] statutory' rights too. It's 'entirely reasonable for a school to refrain from a form of disciplinary action that would expose it' to lawsuits by the harasser.").  Therefore, Plaintiffs have failed to state facts showing the University's response was "clearly unreasonable in light of the known circumstances." *Kollaritsch*, 944 F.3d at 621

### c.    Plaintiffs Suffered No Further Actionable Harassment.

Neither Plaintiff alleges she suffered any further ***actionable*** sexual harassment by John Doe after her report of harassment was received by OGEI.  "'Injury' in this Title IX context means the deprivation of 'access to the educational opportunities or benefits provided by the school[.]'" *Kollaritsch*, 944 F.3d at 622 (quoting *Davis*, 526 U.S. at 650).  "Emotional harm standing alone is not a redressable Title IX injury."  *Id.*  Further actionable harassment must be "something more than just juvenile behavior among students, even behavior that is antagonistic, non-consensual, and crass." *Id.*  The Sixth Circuit has held that shoving a student into a locker, making an obscene

sexual gesture towards her, and requesting oral sex did not constitute actionable harassment. *Pahssen v. Merrill Cmty. Sch. Dist.*, 668 F.3d 356, 363 (6th Cir. 2012). By way of further example, allegations that the student "could have encountered [the harasser] at any time due to his mere presence on campus" fails to plausibly allege the required further actionable harassment to establish a claim under Title IX. *Kollaritsch,* 944 F.3d at 625.

Jane Roe claims that she "was negatively impacted by the presence of John Doe," and that he looked angry and made "weird gestures." (Am. Compl., Doc. 15, at ¶ 59.) Appearing "angry" and making "weird gestures," however, does not rise to the level of further actionable sexual harassment (injury). *See Davis*, 526 U.S. at 633. *See also, Kollaritsch*, 944 F.3d at 620; *Doe v. Univ. of Kentucky*, 959 F.3d at 2501-52 (finding plaintiff's allegations that the harasser "stared at her, stood by her at a party, followed her home, and sat near her in the library" insufficient as a matter of law to constitute actionable harassment); *Pahssen*, 668 F.3d at 363 (shoving plaintiff into locker, requesting oral sex, and making rude gesture insufficient to constitute actionable harassment); *Feucht v. Triad Loc. Sch. Bd. of Educ.*, 425 F. Supp. 3d 914, 931-32 and fn. 12 (S.D. Ohio 2019) (holding that threat of rape does not constitute actionable harassment under Title IX, in part, due to a lack of any physical contact).

Karen Soe alleges in a conclusory fashion that she "was unable to be cast in a classical ballet piece each semester because of the presence of John Doe" and "received some of the worst casting in a production" in Spring 2022. (Am. Compl., Doc. 15, at ¶ 60(b).) She fails to allege this was because of additional actionable harassment on the part of John Doe, and John Doe was not in classes after November 1, 2021. (*Id*. at ¶ 44); *see also* Exhibit A, Barthel Dec. at Attch. 1. As such, this fails to rise to the level of actionable sexual harassment. *See Kollaritsch*, 944 F.3d at 620; *Pahssen*, 668 F.3d at 363; *Doe v. Univ. of Kentucky*, 959 F.3d at 2501-52; *Feucht*, 425 F.

11

Supp. 3d 914, 931-32 and fn. 12.

Plaintiffs have not alleged any further actionable harassment (injury) and, therefore, fail to sufficiently plead causation as well.[4]  Their Amended Complaint must be dismissed.

**B.    The University Had No Duty To Investigate Harassment Occurring Years Before Plaintiffs Or John Doe Attended The University.**

The University had no duty to respond to Plaintiffs' complaints of harassment that occurred before Plaintiffs or John Doe attended the University.  In *Davis*, the Supreme Court held that Title IX imposes liability "where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment ***and the harasser is under the school's disciplinary authority***." 526 U.S. at 647 (emphasis added).  Further, the harassment must "deprive the plaintiff of access to the educational opportunities or benefits ***provided by the school***."  *Doe v. Univ. of Kentucky*, 971 F.3d 553, 557 (6th Cir. 2020) (emphasis added).  The Sixth Circuit held in *Doe v. Univ. of Ky.* that a plaintiff student harassed by another student only has standing under Title IX "where a plaintiff is so closely tied to a university that the individual is essentially a student of that university." 971 F.3d at 559 fn. 4 (6th Cir. 2020).

In this case, Plaintiffs allege Karen Soe was sexually harassed by John Doe years before she attended the University. (Am. Compl., Doc. 15, at ¶¶ 25-26.)  The alleged harassment occurred when Karen Soe performed with the Cincinnati Ballet. (*Id.*)  Plaintiffs fail to allege, however, that they or John Doe were connected with the University in any way at that time.  Because John Doe was not "under [the University's] disciplinary authority," and Karen Soe was not deprived of

---

[4] "'Causation' means the 'Act' caused the 'Injury,' such that the injury is attributable to the post-actual-knowledge *further* harassment, which would not have happened but for the clear unreasonableness of the school's response. *Davis*, 526 U.S. at 644. *Davis* requires a showing that the school's 'deliberate indifference 'subject[ed]' its students to *harassment*,' necessarily meaning further actionable harassment. *Id.* (emphasis added). But the occurrence of further harassment is not enough by itself; the response's *unreasonableness* must have caused the further harassment. The school's response must be clearly unreasonable *and* lead to further harassment." *Kollaritsch*, 944 F.3d at 622 (emphasis in original).

educational opportunities or benefits provided by the University, Plaintiffs' Title IX claims related to the incidents occurring before John Doe attended the University fail. *Davis*, 526 U.S. at 647. Additionally, because Plaintiffs had no affiliation with the University at the time of the pre-University harassment, they do not have standing under Title IX to bring a claim regarding that alleged harassment. *Doe v. Univ. of Ky.*, 971 F.3d at 559 fn. 4.

Further, although it had no duty to do so, the University's response to Plaintiffs' reports of pre-University harassment was not clearly unreasonable and cannot constitute deliberate indifference as a matter of law. Plaintiffs admit that after informing Professor Carberry of the incidents, she escalated the matter to OGEI. (Am. Compl., Doc. 15, at ¶ 28). Plaintiffs further admit that OGEI emailed Jane Roe to address Plaintiffs' concerns. (*Id.* at ¶ 29.) Specifically, OGEI emailed Jane Roe on February 24, 2020, and provided her a "process guide for information related to the Title IX process." Exhibit B, Justice Dec. at Attch. 1. OGEI even followed up with Jane Roe twelve days later after Jane Roe did not respond to the initial email. *Id.* Jane Roe responded she "passed the information along [to Karen Soe] when [Jane Roe] received it. We all have been very busy with our full schedules and rehearsals. Thank you." *Id.* Additionally, OGEI followed up with Professor Carberry on March 18, 2020—in the middle of the pandemic—to "check in to see if [she had] received any additional information about the situation since [the report]." Exhibit B, Justice Dec. at Attch. 2. Far from acting with deliberate indifference, the University provided Plaintiffs with the resources to file a Title IX complaint.[5] Plaintiffs chose not to do so at that time, as was their right.

## C. **Plaintiffs Fail To Adequately Plead Retaliation Under Title IX.**

In regard to retaliation claims, the Sixth Circuit has "analogized to Title VII retaliation

---

[5] Jane Roe's failure to respond to OGEI further demonstrates that the alleged conduct was not "severe, pervasive, and objectively offensive." *Davis,* 526 U.S. at 651; *Kollaritsch*, 944 F.3d at 620.

claims, stating that a Title IX plaintiff must show 'that (1) [s]he engaged in protected activity, (2) [the funding recipient] knew of the protected activity, (3) [s]he suffered an adverse school-related action, and (4) a causal connection exists between the protected activity and the adverse action.'" *Bose v. Bea*, 947 F.3d 983, 988, cert. denied, 208 L.Ed.2d 521, 141 S.Ct. 1051 (quoting *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315, 320 (6th Cir. 2017).

In *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005), the Supreme Court applied *Gebser*'s prohibition on vicarious liability principles to a *retaliation* claim under Title IX and held that such a claim is only viable "where *the funding recipient* [itself] retaliates against an individual because he has complained about sex discrimination." *Id*. at 174 (emphasis added). Thus, *Gebser Davis*, and *Jackson*, establish that a Title IX retaliation claim lies only for a funding recipient's own retaliation—but does not establish a cause of action against an entity for retaliation by its employees. *See Jackson*, 544 U.S. at 184. The Sixth Circuit has held the same. *See M.D. by & through Deweese v. Bowling Green Indep. Sch. Dist*., 709 F. App'x 775, 779 (6th Cir. 2017) (citing *Davis* and holding that a plaintiff raising Title IX retaliation claim cannot use agency principles to impute liability to funding recipient for the misconduct of its employees).

Additionally, to state a Title IX retaliation claim, a complaint must allege that the retaliatory conduct was "materially adverse" such that it "dissuade[s] a reasonable [person] from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006). In assessing whether conduct constitutes a materially adverse action, "[c]ontext matters," and "the significance of any given act of retaliation will often depend upon the particular circumstances." *Id.* at 69. The Sixth Circuit has held in the Title VII context that mere criticism or failure to obtain a desired position does not constitute retaliation as a matter of law. *See Primes v. Reno*, 190 F.3d 765, 767 (6th Cir. 1999) ("If every low

14

evaluation or other action by an employer that makes an employee unhappy or resentful were considered an adverse action, Title VII would be triggered by supervisor criticism or even facial expressions indicating displeasure.").

Further, a complaint for retaliation must plausibly allege a causal connection between engaging in protected activity and the materially adverse action taken against the plaintiff. Courts dismiss retaliation claims for failing to allege causation. To adequately plead causation, a complaint "must put forth some fact creating an inference that the adverse action would not have occurred without the [student] first engaging in protected activity." *Sizemore v. Edgewood Bd. of Educ.*, No. 1:19-CV-555, 2020 WL 1904726, at *8 (S.D. Ohio Apr. 17, 2020) (Title VII); *see also Mitchell v. Ohio State Univ.*, No. 2:19-CV-4162, 2020 WL 5250459, at *5 (S.D. Ohio Sept. 3, 2020) (Title IX). Based on the above law, Plaintiffs' Amended Complaint fails to state a Title IX retaliation claim, as discussed below.

### 1.    Plaintiffs Do Not Allege That The *University* Retaliated Against Them.

Plaintiffs purport to allege retaliatory conduct by University instructors and professors. (Am. Compl., Doc. 15, at ¶¶ 42, 59, 60(b), 81). As discussed above, however, faculty members are not high enough up the chain-of-command such that their decisions constitute the decision of the University. *See supra* at 8-9 (citing *Kesterson*, 967 F.3d at 529). Plaintiffs' retaliation claim should be dismissed for this reason.

Further, Plaintiffs' cannot state a Title IX retaliation claim against the University based on a theory that the University was deliberately indifferent to its employees' retaliatory conduct. *See Bose*, 947 F.3d at 989 (questioning whether "deliberate indifference to retaliation [is] even actionable under Title IX"); *M.D. ex rel. Deweese*, 709 F. App'x at 779 ("M.D. has failed to cite any authority applying the ... deliberate indifference framework to a Title IX retaliation claim").

15

Even if a Title IX retaliation claim based on deliberate indifference were actionable, however, such a claim would fail here because Plaintiffs do not allege they ever notified an appropriate University official that they were subjected to retaliation.   In other words, the University could not have been deliberately indifferent to retaliation it did not know about as a matter of law.   *Bose*, 947 F.3d at 993 (6th Cir. 2020); *M.D. ex rel. Deweese*, 709 F. App'x at 779.  Plaintiffs' Title IX retaliation claims must be dismissed.

### 2.      Plaintiffs Did Not Suffer Any Materially Adverse Actions.

Plaintiffs reference an email sent October 25, 2021 criticizing Jane Roe for not attending class. *Id.* at ¶¶ 42, 18.  Plaintiffs fail to allege how this constitutes a materially adverse action.  The email criticizes Jane Roe for "abruptly inform[ing]" the professor that she "would not be in class," calling it "incredibly disrespectful."  This singular email does not constitute a materially adverse action because it would not dissuade a reasonable person from engaging in protected Title IX activity.  Instead, the email criticizes Jane Roe for failing to timely indicate she would not be at class.  Criticism does not rise to the level of "materially adverse action." *See Primes*, 190 F.3d at 767.

Next, Plaintiffs allege that "[a] CCM Professor told Jane Roe that she would have to be removed from a Fall 2021 performance if the school could not find another partner." (Am. Compl., Doc. 15, at ¶ 59.)  Plaintiffs admit, however, that Jane Roe was provided with another partner. (*Id.*)  This cannot be a materially adverse action taken against Jane Roe.

Plaintiffs additionally allege that "[s]hortly after Jane Roe made her report against John Doe, rehearsals were cancelled or modified so that Jane Roe could not attend."  (*Id.*)  Plaintiffs claim that doing so constitutes retaliation for both Jane Roe and Karen Soe. (*Id.* at ¶ 81).  A key component of retaliation claims, however, is "evidence that defendant treated the ***plaintiff***

16

differently from similarly situated [students]." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000) (Title VII employment discrimination) (emphasis added). Cancelling or modifying rehearsals ***for an entire class*** does not constitute a materially adverse action against ***Jane Roe or Karen Soe***. *Id.*

### 3. Plaintiffs Fail To Allege Causation.

Plaintiffs' retaliation claim also should be dismissed because they fail to plead any causal connection between the actions they claim to be adverse and Plaintiffs' engagement in protected activity. Nowhere in Plaintiffs' Amended Complaint do they allege facts that the University retaliated against them ***because*** they ***reported*** John Doe. Instead, Plaintiffs' Amended Complaint explicitly admits that the alleged negative impacts they suffered—e.g., modification or cancellation of rehearsals; reassignment to a new partner—were caused "by the ***presence of John Doe***" (i.e., to mitigate the alleged harassment), ***not*** because the University wanted to punish them for complaining. (Am. Compl., Doc. 15, at ¶¶ 59, 60 ("Jane Roe's [and Karen Soe's] ability to participate in educational activities was negatively impacted ***by the presence of John Doe***.") (emphasis added)). This is not retaliation.

### D. Plaintiffs' Claims for Damages For Loss Of Reputation, Humiliation, Embarrassment, Inconvenience, Lost Earning Capacity and Lost Career and Business Opportunities Should Be Dismissed Because They Are Unavailable And Too Speculative.

Even if Plaintiffs had pled sufficient claims under Title IX, which they have not, any claims for damages related to emotional distress must be dismissed. This includes Plaintiffs' claims for damages for "loss of reputation, humiliation, embarrassment, [and] inconvenience." (Am. Compl., Doc. 15, at ¶ 82.) The Supreme Court held in *Cummings v. Premier Rehab Keller, P.L.L.C.* that emotional distress damages are not available in cases arising from statutes passed with the power of the Spending Clause unless there is clear Congressional intent to make them available. 142 S.

17

Ct. 1562, 212 L. Ed. 2d 552, reh'g denied, 142 S. Ct. 2853 (2022). Title IX is such a statute. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) ("[Title IX] condition[s] federal funding on a recipient's promise not to discriminate, in what amounts essentially to a contract between the Government and the recipient."). Because of this contractual relationship, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981). Ultimately, "Congress must express clearly its intent to impose conditions on the grant of federal funds so that States can knowingly decide whether or not to accept those funds." *Id.* at 25.

Under this principle, the Supreme Court has held that emotional distress damages are not available under Spending Clause statutes because Congress did not clearly express any unambiguous intent to make such damages available. *See Cummings*, 142 S. Ct. at 1571-72. The Court reasoned that "a funding recipient is aware that, for breaching its Spending Clause 'contract' with the Federal Government, it will be subject to the *usual* contract remedies in private suits," and that "[i]t is hornbook law that 'emotional distress is generally not compensable in contract.'" *Cummings*, 142 S. Ct. at 1571 (emphasis *sic*), (quoting D. Laycock & R. Hasen, Modern American Remedies 216 (5th ed. 2019)). Accordingly, the Court held that it "cannot treat federal funding recipients as having consented to be subject to damages for emotional distress. It follows that such damages are not recoverable under the Spending Clause statutes [at issue.]" *Id.* at 1572. Thus, because the University did not consent to be subject to damages for emotional distress, Plaintiffs cannot recover them in their Title IX suit here as a matter of law, and their claims for the same should be dismissed.

*Cummings* applies equally to bar Plaintiffs' reduced earnings claims. The *Cummings* decision seeks "to ensure that funding recipients 'exercise[d] their choice' to take federal dollars

'knowingly, cognizant of the consequences of' doing so." *Id.* at 1573 (quoting *Pennhurst*, 451 U.S. at 17). The Court explained that "it is fair to consider recipients aware that, if they violate their promise to the Government, they will be subject to either damages or a court order to perform. Those are the usual forms of relief for breaching a legally enforceable commitment. No dive through the treatises, 50-state survey, or speculative drawing of analogies is required to anticipate their availability." *Id.*

The Court also has cautioned that in the context of Title IX, damages should be reasonably limited to the value of the services allegedly denied. *See Gebser*, 524 U.S. at 290 ("Where a statute's express enforcement scheme hinges its most severe sanction on notice and unsuccessful efforts to obtain compliance, we cannot attribute to Congress the intention to have implied an enforcement scheme that allows imposition of greater liability without comparable conditions."). Title IX prohibits recipients of federal funds from engaging in sex discrimination. *See* 20 U.S.C.A. § 1681. It is not reasonably within the contemplation of the recipient of federal funds that it might be subjected to pay indeterminate and speculative damages for diminished earning capacity or lost business opportunities because of an alleged denial of educational services to the student before the student even graduates. *See Barnes*, 536 U.S. at 188, 122 S. Ct. at 2102 (expressing doubt that a funding recipient would agree to indeterminate damages).

Relatedly, breach of contract damages are limited to damages reasonably within the contemplation of the parties at the time the contract was entered. *See Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 544, 23 S. Ct. 754, 755 (1903). A student's contention that Title IX related deficiencies in educational services may result in lost or diminished employment opportunities several years later is too speculative to be deemed within the contemplation of the parties. *See Assoc. General Contractors of California., Inc. v. California State Council of*

19

*Carpenters*, 459 U.S. 519, 533-35, 103 S. Ct. 897, 906-07 (1983) (extending common law contract damages principals to federal law, and recognizing limits on consequential damages).

Here, Jane Roe alleges, in a conclusory fashion, that these speculative losses are due to the University's alleged Title IX violation. (Am. Compl., Doc. 15, at ¶ 70.) (alleging that Jane Roe had declining performance, trouble concentrating, and fear of attending school). This is not sufficient. *See Davis*, 526 U.S. at 652 (holding that "a mere 'decline in grades' is not enough to survive a motion to dismiss under Title IX); *Kollaritsch*, 944 F.3d at 624; *Gordon*, 686 F. App'x at 325.

Karen Soe alleges she "was unable to be cast in a classical ballet piece each semester because of presence [*sic*] of John Doe." But, as discussed above, Plaintiffs fail to allege any actionable harassment after November 2021 and thus can state no facts connecting Karen Soe's alleged poor casting to a claimed Title IX violation.[6] Again, this is not sufficient. *See Davis*, 526 U.S. at 633; *Kollaritsch*, 944 F.3d at 620; *Doe,* 959 F.3d at 2501-52; *Gordon*, 686 F. App'x at 325.

## IV.    <u>CONCLUSION</u>.

For the reasons stated above, the Court should dismiss Plaintiffs' Amended Complaint (Doc. 15) with prejudice.

---

[6] As previously discussed, the casting for *Gizelle* occurred in Spring 2022. (*Id.* at ¶ 60.) John Doe was not in classes after November 1, 2021. (*Id*. at ¶ 44.); *see also* Exhibit A, Barthel Dec. at Attch. 1.

Respectfully submitted,

DAVE YOST
ATTORNEY GENERAL OF OHIO

By:    /s/ Michael H. Carpenter
        Michael H. Carpenter (0015733) (Trial Attorney)
        Timothy R. Bricker (0061872)
        Michael N. Beekhuizen (0065722)
        David J. Barthel (0079307)
        Michael B. Rogers (0098948)
        CARPENTER LIPPS AND LELAND LLP
        280 Plaza, Suite 1300
        280 North High Street
        Columbus, OH 43215
        E-mail: carpenter@carpenterlipps.com
                bricker@carpenterlipps.com
                beekhuizen@carpenterlipps.com
                barthel@carpenterlipps.com
                rogers@carpenterlipps.com

        Special Counsel for Defendant
        University of Cincinnati

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on October 28, 2022. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.


/s/ Michael H. Carpenter
Michael H. Carpenter

Trial Attorney for
Defendant University of Cincinnati

22