## THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| JANE ROE, et al. | ) | Case No. 1:22-cv-00376 |
| | ) | |
| Plaintiffs, | ) | Judge Jeffrey P. Hopkins |
| | ) | |
| v. | ) | Magistrate Judge Karen L. Litkovitz |
| | ) | |
| UNIVERSITY OF CINCINNATI, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT UNIVERSITY OF CINCINNATI'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

## I.  INTRODUCTION.

Plaintiffs' Response to the University of Cincinnati's ("UC" or "the University") Motion to Dismiss (the "Response") (Doc. 20) confirms that Plaintiffs' claims should be dismissed.

***First,*** in regard to their Title IX deliberate indifference claim, Plaintiffs do not dispute that after UC's Office of Gender, Equity and Inclusion ("OGEI") was informed of the allegations against John Doe in Fall 2021, Plaintiffs suffered no further harassment. (*See* Response, Doc. 20, at PageID 220-23.)  The Response also does not dispute that UC met multiple times with Jane Roe; investigated her complaint; provided accommodations to reduce Jane Roe's contact with John Doe; issued a mutual no contact order; conducted a hearing; and allowed an appeal. (*Id.* at PageID 221-22.)  UC was not deliberately indifferent as a matter of law.

Plaintiffs' reference to February/March 2020 does not save their Title IX deliberate indifference claim.  Plaintiffs do not dispute that Karen Soe's report to her professor in February/March 2020 was related to alleged sexual harassment by John Doe that occurred ***five years earlier***, when Plaintiffs and John Doe were ***not UC students***, and on property ***not controlled by UC***.  (*Id.* at PageID 218-19.).  Plaintiffs also admit that following the February/March 2020

report, OGEI provided Title IX resources to Plaintiffs, and when OGEI attempted to follow up with Plaintiffs, Plaintiffs responded they were too "busy." Def. University of Cincinnati's Motion to Dismiss Plaintiffs' Amended Complaint, Doc. 17 at Exhibit B, Justice Dec. at Attch. 1. Plaintiffs further concede that UC has "no obligation to discipline John Doe for conduct that occurred prior to his enrollment," and that the first incident of alleged harassment by John Doe at UC did not occur until September 2021—a ***year and a half after*** the report in 2020, even though Plaintiffs and John Doe had been attending classes together. (*See* Am. Compl., Doc. 15 at ¶ 30.) Based on the above undisputed facts, Plaintiffs fail to state a Title IX deliberate indifference claim.

***Second,*** in regard to their Title IX retaliation claim, Plaintiffs cite to inapposite employment law cases and Title IX due process cases that do not address Title IX retaliation claims. In regard to controlling Title IX case law, Plaintiffs do not dispute that they (i) did not suffer an adverse school-related action (ii) by the University (iii) because they reported sexual harassment. *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020), cert. denied, 208 L. Ed. 2d 521, 141 S. Ct. 1051 (2021). As such, Plaintiffs fail to state a Title IX retaliation claim.

***Third,*** Plaintiffs do not dispute that they cannot recover emotional distress damages pursuant to Title IX. (Response, Doc. 20 at PageID 234.) In regard to their claimed damages for loss of reputation, lost income, and lost career and business opportunities, Plaintiffs rely solely upon out-of-circuit district court opinions that either support UC's position such damages are not recoverable pursuant to Title IX or are inapposite. Plaintiffs cannot recover such damages as a matter of law.

## II.     DISCUSSION.

### A.     Plaintiffs' Deliberate Indifference Claim Fails.

To state a claim for deliberate indifference under Title IX, a plaintiff must plausibly allege "an incident of actionable sexual harassment, the school's actual knowledge of it, some further incident of actionable sexual harassment, that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and that the Title IX injury is attributable to the post-actual-knowledge further harassment." *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613, 623–24 (6th Cir. 2019). Plaintiffs' Amended Complaint fails to allege any one of these elements, and their Title IX deliberate indifference claim must therefore be dismissed.

#### 1.     Plaintiffs Do Not Allege Actionable Harassment Under Title IX.

The conduct alleged in Plaintiffs' Amended Complaint does not rise to the level of actionable harassment under Title IX. To implicate Title IX, the alleged misconduct must be both severe and pervasive. *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633, 119 S. Ct. 1661, 1666, 143 L. Ed. 2d 839 (1999). To be severe, the alleged misconduct must "effectively bar[] the victim's access to an educational opportunity or benefit." *Id.* at 633. To be pervasive, a claim under Title IX must plausibly allege more than a single incident of harassment. The Sixth Circuit holds unequivocally that under Title IX, pervasive "means ***multiple*** incidents of harassment; one incident of harassment is not enough." *Kollaritsch*, 944 F.3d 613 at 620 (emphasis *sic*).

In this case, the allegations in the Amended Complaint are not sufficiently severe under Title IX. Plaintiffs do not (and cannot) dispute that the alleged misconduct took place during dance practices, when Plaintiffs and John Doe were required to touch each other. (Am. Compl., Doc. 15,

¶¶ 30, 47.) Additionally, Karen Soe does not allege that the misconduct was pervasive. The Amended Complaint only identifies a single incident between John Doe and Karen Soe. (*Id.* at ¶¶ 26, 43.b.) This is not sufficient. *Kollaritsch*, 944 F.3d 613 at 620.

Plaintiffs' claim that John Doe's alleged misconduct constituted criminal sexual imposition is unpled and irrelevant. (Response, Doc. 20 at PageID 244-45 & n.7.) The Amended Complaint does not include any allegations that John Doe committed criminal acts. Plaintiffs further fail to allege that any criminal proceedings were ever brought against John Doe as a result of these allegations, or that Plaintiffs filed a police report. The Court should disregard this unpled and irrelevant argument for the transparent attempt to deflect from the actual issues.

The Court also should disregard Plaintiffs' reliance on *Wamer v. Univ. of Toledo*, 27 F.4th 461, 471-72 (6th Cir. 2022). (Response, Doc. 20 at PageID 225 n.8.). *Wamer's* holding that causation can be shown through an objectively reasonable fear of further harassment applies only to teacher-student harassment cases; it has never been applied to student-on-student harassment claims, which are still governed by *Kollaritsch's* requirement that a plaintiff **must** prove further actionable harassment that was caused by the institution's deliberate indifference. *See* 27 F.4th at 463, 466 ("[W]e find that the *Kollaritsch* test [requiring further actionable harassment to show causation in student-on-student sexual harassment cases] is not applicable to claims of deliberate indifference to teacher-student sexual harassment."); *see also Huang v. Ohio State Univ.*, No. 2:19-CV-1976, 2022 WL 2954234, at *1 (S.D. Ohio July 26, 2022) ("[T]he Sixth Circuit determined [in *Wamer*] that the standard previously articulated in *Kollaritsch* [requiring further actionable harassment to show causation] did not apply to teacher-student harassment claims.").

Plaintiffs have failed to plead pervasive, actionable harassment. For this reason, their Title IX claim should be dismissed.

### 2. UC Did Not Have Actual Knowledge Of Alleged Incidents Of Sexual Harassment On Campus Until October 8, 2021.

The Response mischaracterizes the actual knowledge element of Title IX and seeks to conflate reports of harassment *before* Plaintiffs were enrolled at UC with the allegations of harassment on campus. *Kollaritsch* is clear: Title IX requires "'***actual knowledge***' of an incident of actionable sexual harassment that prompted or should have prompted a response." 944 F.3d at 621 (emphasis added). Plaintiffs cite no authority for their proposition that their conversations with a professor in March 2020 somehow provided UC with actual knowledge of harassment occurring nearly a year-and-a-half later. (*See* Response, Doc. 20 at PageID 226.) As a matter of law, the discussions in March 2020 did not give UC actual knowledge of Plaintiffs' allegations of harassment occurring in Fall 2021 as is required by *Kollaritsch*. 944 F.3d at 621.

The Court also should reject Plaintiffs' argument that Plaintiffs' professor and/or the head of the Theatre Department may count as an "appropriate person" sufficient to provide UC with actual knowledge. Plaintiffs rely primarily on an unpublished Sixth Circuit Decision, *Dahmer v. W. Ky. Univ.*, No. 21-5318 (6th Cir. Oct. 13, 2022). *Dahmer*, however, is distinguishable. Specifically, in *Dahmer*, the court considered whether the defendant-university's Director of Student Activities, Organizations, and Leaderships constituted an "appropriate person" under Title IX. *Dahmer*, slip op. at 5-6. In finding that he was, the *Dahmer* court relied on the fact that the director was expressly defined by the defendant-university's sexual harassment policy as "an individual who has the authority to address and remedy discrimination/sexual misconduct/harassment … and whose knowledge of such conduct ***can put the institution on notice***." *Id.* (internal quotes omitted) (emphasis added).

In this case, however, Plaintiffs' Amended Complaint contains no factual allegations demonstrating that either Plaintiffs' professor or the head of the theatre division has the authority

to remedy sexual harassment. To the contrary, Plaintiffs admit in their Amended Complaint that Denton Yockey—the head of the Division of Theatre Arts—informed Plaintiffs that he does not "know anything about Title IX and [he] can't do anything. It's up to [the OGEI]." (Am. Compl., Doc. 15, ¶ 37.) Likewise, Jane Roe's meetings with Professor Carberry and Mr. Yockey did not provide UC with actual knowledge of the reports. *See Kesterson v. Kent State Univ.*, 967 F.3d 519, 528 (6th Cir. 2020). Instead, under Title IX, UC only became aware of Plaintiffs' allegations on October 8, 2021, when Mr. Yockey escalated Jane Roe's reports to the OGEI. (Am. Compl., Doc. 15 ¶ 35.c.)

Plaintiffs resort to quoting cartoons in their attempt to avoid the requirements of Title IX. (*See* Response, Doc. 20 at PageID 228 n.13.) But far from relying on a "formalistic focus on *who* receives a complaint," UC relies on clear-cut Sixth Circuit law. (*Id.*) "[A] university employee's ability to mitigate hardship or refer complaints does not make them an 'appropriate person.' … Otherwise, every employee would qualify and schools would face a form of vicarious liability that Title IX does not allow." *Kesterson*, 967 F.3d at 527. Plaintiffs ask this Court to "liberally construe[]" who constitutes an "appropriate person." (Response, Doc. 20 at PageID 228 n.13.) But adopting Plaintiffs' interpretation would lead inevitably to the kind of vicarious liability the Sixth Circuit cautioned against in *Kesterson*. 967 F.3d at 527. This is not permissible. *Id.*

UC did not have actual knowledge of alleged incidents of sexual harassment on campus until October 8, 2021, when OGEI received notice. The Court should reject Plaintiffs' arguments to the contrary. (*See* Response, Doc. 20 at PageID 226.)

### 3. UC Responded Reasonably To Plaintiffs' Allegations.

Plaintiffs' Amended Complaint should be dismissed because it fails to plausibly allege deliberate indifference. Once UC had actual knowledge of Plaintiffs' allegations, it acted swiftly

to investigate Plaintiffs' claims. Plaintiffs do not dispute that an investigator with OGEI met with Jane Roe three times from October 8, 2021 to October 21, 2021 before Jane Roe filed an official complaint. (Am. Compl., Doc. 15, at ¶ 43.) Once Jane Roe filed a complaint, UC investigated the claims, interviewing eight witnesses. (*Id.* at ¶¶ 45-52.) While the investigation was ongoing, Plaintiffs concede UC provided numerous accommodations to reduce Jane Roe's contact with John Doe, including modifying rehearsals, stating she did not have to partner with John Doe, and implementing a mutual no contact order preventing any possibility of further sexual harassment against Jane Roe and Karen Soe. (*Id.* at ¶ 39.) UC also became aware that a court had issued an *ex parte* protection order, further protecting Jane Roe. (*Id.* at ¶ 44.) At the conclusion of the investigation, UC held a hearing, and allowed Jane Roe to appeal the result. (*Id.* at ¶¶ 43-45.)

Plaintiffs do not contest any of these facts and, instead, dispute the effectiveness of the no contact order and the results of the hearing. (Response, Doc. 20 at PageID 229 and n.15.) Plaintiffs argue in their response that UC should have taken different measures to address their concerns. Their position ignores that "a Title IX plaintiff … has no right to insist on 'particular disciplinary actions.'" *Foster v. Bd. of Regents of Univ. of Michigan*, 982 F.3d 960, 968 (6th Cir. 2020) (en banc) (*quoting Davis*, 526 U.S. at 648). UC's response to the allegations against John Doe in conducting an investigation and holding a hearing cannot be considered "clearly unreasonable in light of the known circumstances."[1] *Davis*, 526 U.S. at 648; *see also Foster*, 982 F.3d at 965-971.

---

[1] Plaintiffs attempt to blur the issues by citing to other cases involving UC. These cases, however, have no bearing on ***this*** case and should be disregarded. (Response, Doc. 20 at PageID 217 n.1, 228 n.14.) Several do not involve Title IX claims at all. *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 515 (6th Cir. 2021) involves an employment claim under the Equal Pay Act and Title VII. *Charlton-Perkins v. Univ. of Cincinnati*, 35 F.4th 1053 (6th Cir. 2022), another employment case, involves a failure-to-hire claim. And *Goldblum v. Univ. of Cincinnati*, No. 1:19-CV-398, (S.D. Ohio) involves a constructive termination claim. The Title IX cases Plaintiffs do cite are likewise irrelevant. They involve claims brought by students that ***UC disciplined*** for sexual assault and that did not involve claims of deliberate indifference or retaliation by UC. *See Doe v. Univ. of Cincinnati*, 872 F.3d 393 (6th Cir. 2017), *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, (S.D. Ohio 2016), and *Gischel v. Univ. of Cincinnati*, 302 F. Supp. 3d 961 (S.D. Ohio 2018).

Plaintiffs also complain that "UC took no actions when the allegations against John Doe were reported to the Title IX Office in March 2020." (Response, Doc. 20 at PageID 228-29.) But Plaintiffs have not, and cannot, provide authority establishing that UC should be held responsible for what John Doe was accused of before he attended the University. (*See id.* at PageID 230 n.14.) To the contrary, Plaintiffs admit that "UC may have no obligation to discipline John Doe for conduct that occurred prior to his enrollment." (*Id.*)

Significantly, Plaintiffs' Response ignores that after UC had actual knowledge of the allegations against John Doe and took action, ***Plaintiffs did not suffer further actionable harassment***. (*See id.* at PageID 228-229.) *Kollaritsch* demands that, among other things, a Title IX "plaintiff must plead, and ultimately prove, an incident of actionable sexual harassment, the school's actual knowledge of it, [and] ***some further incident of actionable sexual harassment***." 944 F.3d at 623 (emphasis added). Plaintiffs make the conclusory statement that "UC's response … subjected Jane Roe and Karen Soe to further actionable sexual harassment," but never state what further sexual harassment Plaintiffs suffered. (Response, Doc. 20 at PageID 228.) Nor could they as their own allegations in the Amended Complaint and the timeline they plead demonstrate that Plaintiffs suffered no further harassment after UC had actual knowledge of their reports. (Am. Compl., Doc. 15 at ¶¶ 30-35.)

Jane Roe claims that John Doe sexually harassed her on five occasions in September 2021, and once more on October 5, 2021. (*Id.*) Jane Roe met with Mr. Yockey on October 8, 2021, and Mr. Yockey reported her allegations to the OGEI that same day. (*Id.* at ¶ 35.) The Amended Complaint does not allege any further sexual harassment against Jane Roe after October 5, 2021. (*See generally* Am. Compl., Doc. 15).

Similarly, Karen Soe claims that John Doe sexually harassed her on October 22, 2021. (*Id.*

at ¶ 45.)  She claims she informed the UC investigator of this event in November 2021. (*Id.*)  Plaintiffs do not allege any further sexual harassment against Karen Soe after her report. (*See generally* Am. Compl., Doc. 15).

After Plaintiffs reported John Doe's alleged misconduct to UC, no alleged harassment took place. It makes no difference whether UC or the Common Pleas Court gets "credit" for the end of the harassment. (*See* Response, Doc. 20 at PageID 229 n.15.)  The critical and, indeed, dispositive fact is that the harassment ***ended***.  Again, Title IX imposes liability for student-on-student harassment ***only*** if the institution's deliberate indifference causes a victim to suffer further harassment. *Kollaritsch*, 944 F.3d at 623.  Plaintiffs' Amended Complaint makes no such allegation, and it must be dismissed.

### 4.    Plaintiffs Have Not Plausibly Alleged A "Before" Claim.

Plaintiffs have not stated a viable "before" claim under *Doe v. Metro. Gov't & Davidson Cnty.*, 35 F.4th 459, 465 (6th Cir. 2022).  To state such a claim, a plaintiff must allege that the institution "maintained a policy of deliberate indifference to reports of sexual misconduct" and that this policy "created a heightened risk of sexual harassment that was known or obvious." *Id.* For example, in *Doe*, the school district acted contrary to the Department of Education's recommendations by asking untrained principals to examine Title IX allegations instead of escalating them to an official Title IX coordinator. *Id.* at 464.  The Title IX coordinator in the school district would not review a case unless "the untrained principal determined there was a Title IX violation." *Id.*  The Sixth Circuit noted that the county's practices resulted in more than 2,400 reported Title IX incidents in the school district over a four year period. *Id.*  In finding that there was a heightened risk of harassment, the *Doe* court rested on the institution's "indifference to widespread instances of sexual harassment across its schools." *Id.* at 466.  Such widespread reports

are not pled in this matter. Accordingly, Plaintiffs resort to conclusory arguments finding no support in their allegations.

Plaintiffs argue that UC's response to Plaintiffs' concerns about John Doe in March 2020 somehow constitutes "a policy of deliberate indifference to reports of sexual misconduct." (Response, Doc. 20 at PageID 230.) This bald conclusion finds no support in the factual allegations actually pled. As an initial matter, one action does not itself constitute a policy of deliberate indifference. *See Doe*, 35 F.4th at 466 ("'Before' claims require that more than a single incident of sexual misconduct occur to trigger liability."); *cf. Hardrick v. City of Detroit, Michigan*, 876 F.3d 238, 244 (6th Cir. 2017) (requiring "widespread practice" that violates the Constitution to state a *Monell* claim under § 1983). What is more, UC responded to Plaintiffs' concerns appropriately when they were brought to the University's attention. OGEI emailed Jane Roe on February 24, 2020 and followed up with her in March 2020 regarding her concerns with John Doe. *See* Def. University of Cincinnati's Motion to Dismiss Plaintiffs' Amended Complaint, Doc. 17 at Exhibit B, Justice Dec. at Attch. 1. Jane Roe indicated she and Karen Soe were simply too busy to file a complaint at that time. *Id.*[2] Furthermore, Plaintiffs do not allege that John Doe committed any harassment against them between March 2020 and September 2021, even though they shared classes. (*See generally* Am. Compl.)

Simply stated, there are no plausible factual allegations that would demonstrate that UC maintained a policy of deliberate indifference. Plaintiffs admit in the Amended Complaint that "UC has adopted various policies and procedures to respond to allegations of sexual assault on

---

[2] Plaintiffs wrongly argue that the attachments to UC's motion should not be considered, citing only the general rule that matters outside the pleadings may not be considered on a 12(b)(6) motion to dismiss. (*See* Response, Doc. 20 at PageID 219 n.2, 226 n.9.) Plaintiffs fail to address any of the cases UC cited outlining the exceptions to this general rule. Clear Sixth Circuit precedent allows courts to consider such communications where they are referenced in the complaint and help "fill in the contours and details of a complaint." *Bon-Ing Inc. v. Hodges*, 2:16-cv-710, 2016 WL 6680813, at *2, *4 (S.D. Ohio Nov. 14, 2016) (quoting *Yeary v. Goodwill Indus. Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997)).

campus," and that UC has adopted a Sexual Misconduct Policy. (Am. Compl., Doc. 15, ¶¶ 9, 18.) The Amended Complaint does not allege that these policies were defective in any way, nor does it claim that UC failed to adhere to these policies. Plaintiffs' Amended Complaint is devoid of any plausible factual allegations demonstrating that UC maintained a policy of deliberate indifference. Instead, the Amended Complaint alleges an investigation and hearing occurred. *Id.* at ¶¶ 43-53.

The Amended Complaint also contains no factual allegations identifying any type of obvious heightened risk of sexual harassment as required by *Doe*. *See* 35 F.4th at 465. Again, in *Doe*, that school district's conduct resulted in 2,400 reported instances of Title IX allegations. *Id.* at 464. Here, Plaintiffs point to no such facts.

Thus, Plaintiffs fail to allege that UC maintained a policy of deliberate indifference to reports of sexual misconduct or that a heightened risk of sexual harassment was known or obvious. Plaintiffs' "before" claims are meritless and should be dismissed.

> **B.**     **Plaintiffs' Retaliation Claim Fails.**

Plaintiffs cite to inapposite employment law cases that do not address Title IX retaliation claims. Applying controlling Title IX case law, Plaintiffs do not dispute that Plaintiffs (i) did not suffer an adverse school-related action (ii) by the University itself (iii) because they reported sexual harassment. *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020), cert. denied, 208 L. Ed. 2d 521, 141 S. Ct. 1051 (2021). As such, Plaintiffs fail to state a Title IX retaliation claim.

> **1.**     **Plaintiffs' "Deliberate Indifference Retaliation" Framework Fails To State A Claim.**

Plaintiffs' Response admits that Plaintiffs seek to graft their allegations of deliberate indifference onto their retaliation claim. (Response, Doc. 20 at PageID 231-32 ("UC was deliberately indifferent to known retaliation by appropriate persons.") (emphasis removed).) The

Sixth Circuit has never held that deliberate indifference to retaliation is actionable under Title IX. *Bose*, 947 F.3d at 989; *M.D. by & through Deweese v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 779 (6th Cir. 2017). Instead, the court in *M.D. ex rel. Deweese* specifically criticized plaintiff for "fail[ing] to cite any authority applying the … deliberate indifference framework to a Title IX retaliation claim." 709 F. App'x at 779. Plaintiffs in this case similarly fail to cite any authority to support their theory that an institution can be liable for deliberate indifference to retaliation, and their retaliation claim should be dismissed accordingly.

Even if a deliberate indifference to retaliation claim were actionable under Title IX, Plaintiffs' claim still fails because they do not allege that UC had actual knowledge of the alleged retaliation. Plaintiffs identify only one allegedly adverse action in their Response—that they "were denied solo roles in performances because of their complaints against John Doe." (Response, Doc. 20, at PageID 232 (*citing* Am. Compl., Doc. 15 at ¶ 60.b.).) Plaintiffs claim that the professors' knowledge of their own retaliation suffices to show that UC had actual knowledge. (*Id.* ("[T]he UC officials and administrators who engaged in the retaliatory conduct also had the authority to institute corrective measures.").) The Supreme Court rejected this argument in *Gebser*. 524 U.S. at 291 ("Where [an institution's] liability rests on actual notice principles, … the knowledge of the wrongdoer himself is not pertinent to the analysis."). Retaliation by professors is not retaliation by UC. *Gebser*, 524 U.S. at 291; *see also Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174 (2005); *M.D. by & through Deweese*, 709 F. App'x at 779; *Bose*, 947 F.3d at 987. Additionally, Plaintiffs do not allege that they informed UC that their professors were allegedly retaliating against them by failing to give Plaintiffs solos. (*See generally* Am. Compl., Doc. 15.)

Thus, Plaintiffs fail to plausibly allege that UC had actual knowledge of any alleged retaliation against Plaintiffs. Therefore, even under their improper framework, Plaintiffs'

retaliation claim should be dismissed.

### 2.     UC Did Not Take Any Materially Adverse Actions Against Plaintiffs.

Plaintiffs' retaliation claims fail under a proper analysis of Title IX retaliation as well. Plaintiffs argue it is irrelevant that "criticism from professors and removal from performances" cannot constitute a materially adverse action under Title IX. (*See* Response, Doc. 20, at PageID 232.)   Plaintiffs' position, however, contradicts Supreme Court and Sixth Circuit precedent requiring that a Title IX plaintiff prove that she suffered a "materially adverse action" to prevail on a retaliation claim. *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020).

Plaintiffs assert that they "were denied solo roles in performances because of their complaints against John Doe." (Response, Doc. 20, at PageID 232 (*citing* Am. Compl., Doc. 15 at ¶ 60.b.)  As discussed above, casting decisions made by individual professors cannot be imputed to UC, so any denial of solo roles by individual professors does not state a Title IX retaliation claim against UC. *See supra* at II.B.1.  Indeed, the portion of the Amended Complaint Plaintiffs cite shows that the professor who supposedly retaliated against them cannot plausibly be an "appropriate person" under Title IX.  Plaintiffs admit that when "Karen Soe explained the situation[,] the professor indicated that he had no idea what was going on." (Am. Compl., Doc. 15 at ¶ 60.b.)

Plaintiffs fail to allege any official acts ***by the University*** that constitute retaliation, and their retaliation claim should be dismissed.

### 3.     Plaintiffs Fail To Plausibly Allege Causation.

Even if the denial of solos somehow constituted an adverse action attributable to UC, which it cannot for the reasons discussed above, the Amended Complaint does not allege any facts linking

13

Plaintiffs' casting to their engagement in protected conduct under Title IX. Instead, the Response generically argues that Plaintiffs "had good reputations and received good roles prior to complaining about harassment from John Doe but not after making complaints." (Response, Doc. 20 at PageID 233 (internal quotes omitted).) Plaintiffs also argue that UC is liable for Title IX retaliation because Plaintiffs' professors did not give them solos, and the professors cast Plaintiffs poorly to retaliate against them for filing a Title IX report against John Doe. (*See* Response, Doc. 20, at PageID 232-33.)

Plaintiffs' own Amended Complaint belies their argument, however. Plaintiffs allege that professors "were not informed of the need to make accommodations," and that at least one professor told Karen Soe "that he had no idea what was going on."[3] (Am. Compl., Doc. 15 at ¶¶ 59-60.) If these professors were not informed that Plaintiffs made a Title IX report, they could not possibly retaliate against Plaintiffs in response to the same. These allegations affirmatively demonstrate that under Plaintiffs' theory, UC could not have retaliated against Plaintiffs by denying them solos.

Recognizing their inability to allege retaliatory conduct, Plaintiffs stress the "low hurdle" required to plead causation, citing a non-binding decision from out-of-Circuit. (Response, Doc. 20 at PageID 233.) No matter the size of the hurdle, however, Plaintiffs must still clear it, and the Sixth Circuit has held that temporal proximity alone is insufficient to state a claim for retaliation. *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007) ("[T]emporal proximity, standing alone, is insufficient to establish a causal connection for a retaliation claim."); *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006); *Dixon v. Gonzales*, 481 F.3d 324,

---

[3] These allegations attempt to improperly impugn UC's response to Plaintiffs' claims of harassment. As discussed above, however, a plaintiff has no right to insist on a particular response by a University. *See* Section II.A.3 citing *Foster*, 982 F.3d at 968. After UC received actual knowledge of Plaintiffs' claims of harassment, UC responded reasonably and ***Plaintiffs allege no further actionable harassment***. *See* Section II.A.3.

333 (6th Cir. 2007) (requiring "other indicia of retaliatory conduct" to establish causation); *Little v. BP Expl. & Oil Co.*, 265 F.3d 357, 363 (6th Cir. 2001).

Plaintiffs have failed to allege any facts linking Plaintiffs' casting with their engagement in protected conduct under Title IX. For this reason, their retaliation claim must be dismissed.

### C.        Plaintiffs' Claims For Damages Are Too Speculative To Recover.

Plaintiffs begrudgingly concede they are not entitled to recover damages for emotional distress under *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 212 L. Ed. 2d 552 (2022). (Response, Doc. 20, at PageID 234 (assuming that *Cummings* applies to Title IX claims).)[4] The Amended Complaint also seeks damages for "diminished earnings capacity, lost career and business opportunities, litigation expenses including attorney fees, loss of reputation, humiliation, embarrassment, inconvenience, and other compensatory damages." (Am. Compl., Doc. 15 at ¶ 82.) Plaintiffs do not appear to contest that they are not entitled to damages for humiliation, embarrassment, or inconvenience, which constitute emotional damages under *Cummings*. (*See* Response, Doc. 20 at PageID 234-36.) The Response focuses instead on loss of reputation, lost earning capacity, and lost career and business opportunities. (*See id.*) Plaintiffs argue that their poor casting resulted in their inability to be hired by "large and prestigious ballet companies," and that this resulted in damage to their reputation and loss of income. (*Id.* at PageID 235.) Their arguments lack merit.

---

[4] Plaintiffs identify a Magistrate Judge's decision in an order on motions *in limine* holding that *Cummings* does not apply to Title IX cases. (Response, Doc. 20 at PageID 234 n.18 (*citing Doe v. Purdue Univ.*, No. 18-CV-89, 2022 WL 2828238, at *1 (N.D. Ind. July 20, 2022)).) Plaintiffs fail to disclose that the court in that case later granted defendants' motion for judgment on the pleadings as to plaintiff's emotional damages based on *Cummings*, applying its holding to plaintiff's Title IX claim. *Doe v. Purdue Univ.*, No. 4:18-CV-72, 2022 WL 17253080, at *1 (N.D. Ind. Nov. 28, 2022). The court's subsequent decision aligns with numerous courts that have applied *Cummings* to Title IX claims. *See Doe next friend of Doe v. City of Pawtucket*, No. CV 17-365, 2022 WL 4551953, at *3 (D.R.I. Sept. 29, 2022); *Doe v. Bd. of Regents of Univ. of Nebraska*, No. 4:20CV3036, 2022 WL 3566990, at *4 (D. Neb. Aug. 18, 2022); *Doe v. Curators of Univ. of Missouri*, No. 19-cv-04229, 2022 WL 3366765, at *3-4, *6 (W.D. Mo. Aug. 15, 2022); *Bonnewitz v. Baylor Univ.*, No. 6:21-cv-00491, 2022 WL 2688399, at *9-12 (W.D. Tex. July 12, 2022).

First, Plaintiffs are not entitled to loss of reputation damages because such damages are not generally available in contract cases. *See Cummings*, 142 S. Ct. at 1571-72; *Unknown Party v. Arizona Bd. of Regents,* 2022 WL 17459745, at *4 (D. Ariz. Dec. 6, 2022) (barring plaintiff from recovering reputational damages under *Cummings*). Indeed, two cases cited in Plaintiffs' Response recognized that *Cummings* prevents recovery of damages for loss of reputation. *Montgomery v. D.C.*, No. CV 18-1928, 2022 WL 1618741, at *23-24 (D.D.C. May 23, 2022) ("Montgomery cannot recover either emotional distress or reputation damages in light of *Cummings*."); *Chaitram v. Penn Med.-Princeton Med. Ctr.*, No. CV2117583, 2022 WL 16821692, at *2 (D.N.J. Nov. 8, 2022) (agreeing with *Montgomery*). Plaintiffs' argument that their damages "include the direct financial losses resulting from their impaired professional reputations" should therefore be rejected, and Plaintiffs' claims for damages due to loss of reputation should be dismissed. (Response, Doc. 20, at PageID 235.)

Second, Plaintiffs are not entitled to lost earning capacity or lost career and business opportunities. Their Response does not address the Supreme Court's decision in *Barnes v. Gorman* stating it is "doubtful that funding recipients would have agreed to exposure to such an unorthodox and indeterminate liability." 536 U.S. 181, 188 (2002) (discussing implied punitive damages). Yet they still ask this Court to allow equally indeterminate liability for lost career and business opportunities that were not within the contemplation of the parties.

Instead of addressing the Supreme Court's doubts in *Barnes*, Plaintiffs argue that lost earning capacity and lost career and business opportunities can be recovered as damages in contract, and cite *Ask Chemicals, LP v. Computer Packages, Inc.*, 593 F. App'x 506, 511 (6th Cir. 2014). (Response, Doc. 20, at PageID 235.) Plaintiffs fail to mention that the decision held such damages are only available where they "were within the contemplation of the parties," and "the

profits are not remote and speculative and may be shown with reasonable certainty." *Ask Chemicals*, 593 F. App'x at 511. The Sixth Circuit routinely holds that plaintiffs may not recover damages for lost profits that are too speculative. *Booker v. Ralston Purina Co.*, 699 F.2d 334, 336-37 (6th Cir. 1983); *Hi Hat Elkhorn Coal Co. v. Inland Steel Co.*, 370 F.2d 117, 118 (6th Cir. 1966); *Unif. Masters v. McKesson Corp.*, 465 F. App'x 466, 468-69 (6th Cir. 2012). Here, Plaintiffs cannot make such a showing. *Ask Chemicals* does not rescue Plaintiffs' claim for lost career and business opportunities.

Plaintiffs also rely on *Montgomery* and *Chaitram* in their attempt to recover damages related to lost earning capacity and lost career and business opportunities. *See Montgomery*, 2022 WL 1618741, at *23-27; *Chaitram*, 2022 WL 16821692, at *2. Both cases are inapposite. The type of opportunity costs in *Montgomery* and *Chaitram* are not the type of damages Plaintiffs are seeking here. The loss of opportunity damages at issue in *Montgomery* and *Chaitram* were characterized as (1) a "small amount of damages," *see Montgomery*, *id*. at *25; that (2) directly related to the violation; and which (3) stemmed from the defendants' alleged conduct. In contrast, Plaintiffs here seek significant, remote, and speculative damages for lost earning capacity and lost career and business opportunities that also necessarily involve conjecture regarding ***possible*** future decisions by third parties. Such consequential damages are not recoverable because they are unforeseeable and were not within the contemplation of the parties at the time of the alleged violations, nor anticipated by UC when it accepted federal funds. *Cummings*, 142 S. Ct. at 1571-72. *Montgomery* and *Chaitram* did not address the availability of the type of speculative, consequential damages Plaintiffs are claiming here.

Additionally, *Montgomery* and *Chaitram* are non-binding district court decisions outside the Sixth Circuit and neither involved Title IX claims. At least one other district court has

criticized *Montgomery's* holding regarding the availability of loss of opportunity damages under Spending Clause statutes and noted that "[n]ot only is *Montgomery* not binding on this Court, but significant factual distinctions exist," characterizing the facts in *Montgomery* as "drastically different from the facts at hand." See *Hejmej v. Peconic Bay Med. Ctr.*, No. 17-CV-782 (JMA)(SIL), 2022 WL 5429675, at *8 (E.D.N.Y. July 5, 2022), report and recommendation adopted, No. 17CV782JMASIL, 2022 WL 4551696 (E.D.N.Y. Sept. 29, 2022).[5]  This Court should hold the same.

## III.   <u>CONCLUSION</u>.

For the reasons stated above, Plaintiffs Amended Complaint should be dismissed.

---

[5] To the extent the Court is inclined to reach outside the Sixth Circuit, it should look elsewhere.  In considering another Spending Clause Statute, the court in *Bartlett v. New York State Bd. of L. Examiners* engaged in a thorough and thoughtful examination of what damages are available under another Spending Clause Statute. 970 F. Supp. 1094, 1147-52 (S.D.N.Y. 1997), aff'd in part, vacated in part on other grounds, 156 F.3d 321 (2d Cir. 1998), cert. granted, judgment vacated on  other grounds, 527 U.S. 1031, 119 S. Ct. 2388, 144 L. Ed. 2d 790 (1999), and aff'd in part, vacated in part on other grounds, 226 F.3d 69 (2d Cir. 2000).  There, the court considered what damages a plaintiff was entitled to under the ADA where she was not provided accommodations to take the bar exam. *Id.* at 1152.  Plaintiff sought to recover lost income for the employment she would have gotten if the defendant-institution had not violated the ADA. *Id.*  The court found these damages to be "unduly speculative." *Id.*

Respectfully submitted,

DAVE YOST
ATTORNEY GENERAL OF OHIO

By:     /s/ Michael H. Carpenter
        Michael H. Carpenter (0015733) (Trial Attorney)
        Timothy R. Bricker (0061872)
        Michael N. Beekhuizen (0065722)
        David J. Barthel (0079307)
        Michael B. Rogers (0098948)
        CARPENTER LIPPS AND LELAND LLP
        280 Plaza, Suite 1300
        280 North High Street
        Columbus, OH 43215
        E-mail: carpenter@carpenterlipps.com
                bricker@carpenterlipps.com
                beekhuizen@carpenterlipps.com
                barthel@carpenterlipps.com
                rogers@carpenterlipps.com

        Special Counsel for Defendant
        University of Cincinnati

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on December 21, 2022.  Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel.  The parties may access this filing through the Court's ECF system.


/s/ Michael H. Carpenter
Michael H. Carpenter

One of The Attorneys for
Defendant University of Cincinnati

873177