IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JANE ROE, et al | Case No. 1:22-cv-376 |
| Plaintiffs, | Judge: HOPKINS |
| v. | |
| UNIVERSITY OF CINCINNATI, | MEMORANDUM OF LAW ON OUTSTANDING DISCOVERY DISPUTE REGARDING FERPA NOTICES |
| Defendant | |

Plaintiffs Jane Roe and Karen Soe respectfully submit this Memorandum of Law on the FERPA issues raised during a prior discovery conference with the Magistrate Judge.

Plaintiffs seek the production of investigative reports and related materials concerning prior investigations of allegations of sexual misconduct at UC. (Requests for Production Nos. 20, 27, 28, 29, 30; Interrogatory No. 5.) Plaintiffs seek only basic information, such as initial reports or complaints, investigative reports (if any), and final decisions (if any) about prior allegations of sexual misconduct. Plaintiffs do not seek the names of student involved – the nature of the allegations and UC's response is what is important and relevant.[1] As previously noted in Plaintiffs' correspondence with the Court, information about other incidents of sexual harassment is relevant to show whether UC's deliberate indifference to a pattern of student-on-student sexual misconduct led to sexual misconduct against Plaintiffs. (*See* Amended Complaint ¶¶ 17, 67.) This is a "before" claim as described in the Sixth Circuit's decisions in *Doe v. Metro. Govt. & Davidson Cty.*, 35 F.4th 459, 465 (6th

---

[1] Important: Plaintiffs seek information on all reports of student-on-student sexual harassment, not just the small subset of reports where a student, after meeting with Title IX staff, decides to pursue a "formal complaint." In her recent deposition, Jane Roe testified that she "felt pressured to not go all the way to the Title IX hearing and go through that whole process." She said that UC's Title IX staff "highly suggested" that she pursue an informal process instead of a formal complaint.

1

Cir. 2022), and *S.C. v. Metro. Govt. of Nashville & Davidson Cty.*, 86 F.4th 707, 715 (6th Cir. 2023). This "before" claim is premised on UC's pattern or responses to student-on-student sexual harassment creating vulnerability that leads to further misconduct. This discovery is intended to show whether UC and CCM were aware of issues with sexual harassment at the school well before Jane Roe and Karen Soe reported their incidents and whether UC was indifferent to widespread instances of student-on-student sexual harassment at both at CCM and across the entire university.

The records that Plaintiffs' seek are, therefore, relevant to showing whether UC discriminated against students based on sex by failing to promptly and equitably respond to complaints, reports and/or incidents or sexual misconduct. As noted previously, UC has been the subject of at least two federal investigations into allegations the University failed to appropriately respond to complaints of sexual misconduct.

The Court has requested additional briefing on whether notices to students must be provided prior to the production of this evidence.

**A.   UC Incorrectly Suggests Plaintiffs Agreed To Not Seeking Information Related To Non-Party Students Who Were Not A Part Of The Investigation**

UC has suggested that during the Preliminary Pretrial Conference, Plaintiffs' counsel indicated that Plaintiffs were not, at this time, seeking "information related to non-party students who were not a part of the investigation" into the allegations by Jane Roe and Karen Soe. (November 5, 2024 Letter at 2.) This is inaccurate. In the Response to Defendant's Motion for Stay Discovery, Plaintiffs were clear that discovery into other allegations of sexual misconduct at the school was contemplated. Plaintiffs told the Court that they were seeking:

> discovery not only on the response of UC to the allegations by and Jane Roe and Karen Soe that they were sexually assaulted by a fellow student during classes/rehearsals, *but also on UC's policies and practices for responding to allegations of sexual misconduct by students and prior investigations of allegations of sexual misconduct.*

(PageID#332 (emphasis supplied).)

2

UC's claim is based on a selective reading of the transcript that takes representations out of context. At no point did counsel say that Plaintiffs were not seeking discovery into other allegations of misconduct by other students. Counsel said only that the investigative report and communications about Plaintiff's matter was "one of the first things we are going to ask for in discovery." The sections of the transcript cited by Defendant refer to a narrow FERPA-related issue, whether the Court should have ordered "the University to provide notice to the students listed in the investigative report right away so that we don't run into the situation where discovery is delayed." (Doc#35 at PageID#380.) Counsel later made clear that this request for notice "right away" was limited to the "students who are listed in the investigative report and who were interviewed as part of the investigation." (Doc#35 at PageID#381-382.) Notice to the students who were not a part of the investigation into the allegations by Jane Roe and Karen Soe was not discussed with the Court.[2]

**B.      FERPA Does Not Prevent The Disclosure Of Records**

FERPA does not create a privilege and this Court should not allow this issue to prevent the disclosure of records – regardless of whether the Court concludes that notice is required in this circumstance.[3] This Court should be wary of UC's overbroad reading of FERPA, as UC may be motivated not by a desire to protect students' privacy, but, instead by the desire to delay meaningful discovery in this case. Plaintiffs note: (i) there is a protective order in this case which would public prevent disclosure of information; and (ii) "discovery in a federal civil rights action is intended to be

---

[2] This omission makes sense considering that, as shown *infra*, Counsel for Plaintiffs did not believe that notice for the other reports was necessary because the personally identifiable information of these students could be redacted.

[3] Notably, UC has never claimed that providing notice – which can be accomplished by a simple letter – is unduly burdensome. Simple emails to the affected students – indicating both that records would be produced and that there is a protective order in place to prevent public disclosure – is all that is necessary.

3

broad in scope." *Tinal v. Norton Healthcare, Inc.*, W.D.Ky. No. 3:11-CV-596-S, 2014 U.S. Dist. LEXIS 191995, at *11 (July 14, 2014) (collecting cases).

FERPA merely conditions the receipt of federal funds by schools on certain requirements relating to the access and disclosure of student educational records. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 278 (2002). Accordingly, while Congress' intent in enacting FERPA was to protect the privacy of students by limiting disclosure of educational records without consent, the statute does not provide a privilege against disclosure of relevant student records in litigation. "[F]ederal law—namely FERPA—does not create an absolute privilege as to the release of education records." *Doe v. Ohio Hi-Point School Dist. Bd. of Edn.*, S.D.Ohio No. 2:20-cv-4798, 2022 U.S. Dist. LEXIS 230223, at *12 (Dec. 21, 2022). *See also Doe v. N. Kentucky Univ.*, E.D.Ky. No. 2:16-CV-28, 2016 U.S. Dist. LEXIS 146744, at *7 (Oct. 24, 2016) ("'By its plain terms, FERPA does not create an evidentiary privilege.'"), *quoting Garza v. Scott and White Mem. Hosp.*, 234 F.R.D. 617, 624 (W.D. Tex. 2005).

## C. FERPA Does Not Prevent The Disclosure Of Redacted Records Without Notice

The Sixth Circuit, in *United States v. Miami Univ.*, 294 F.3d 797, 824 (6th Cir. 2002), held that "Nothing in the FERPA would prevent the Universities from releasing properly redacted" student disciplinary records. *See also Peloe v. Univ. of Cincinnati,* S.D.Ohio No. 1:14-cv-404, 2014 U.S. Dist. LEXIS 150882, at *4 (Oct. 23, 2014) ("FERPA does not prevent universities from releasing properly redacted records."). This Court (Kemp, M.J.) has observed that schools

> could either comply with FERPA's requirement 'that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency,' 20 U.S.C.A. §1232g(b)(2), or [the school] could redact all personally identifiable information.

*Doe v. Ohio*, S.D.Ohio No. 2:91-cv-0464, 2013 U.S. Dist. LEXIS 69022, at *20 (May 15, 2013), *citing Ragusa v. Malverne Union Free Sch. Dist.,* 549 F. Supp. 2d 288, 293 (E.D.N.Y. 2008) ("there is nothing in FERPA that would prohibit Defendants from releasing education records that had all 'personally identifiable information' redacted").

4

**D.     Notice To Students Is Not Required Prior To Responding To Plaintiffs' Discovery Requests**

FERPA prohibits the release of educational records containing "personally identifiable information" absent written consent from the student or his parents, a judicial order directing such disclosure, or a lawfully issued subpoena. 20 U.S.C. § 1232(g). When disclosure is pursuant to a judicial order or subpoena, parents and students must be notified in advance of the disclosure. *Id.*

If UC were to redact "personally identifiable information" from the educational records Plaintiffs seek before disclosing those records, FERPA would no longer require notice to affected students.  Plaintiffs suggest that the following redactions in the records sought are sufficient to obviate the need for Notice:

- The student's name and address;
- The name, address, and professions of the student's parent or other family members;
- The email address and phone numbers of the student; and
- Any personal identifier, such as the student's social security number, student number, birth date, or biometric records;
- Any visual depiction of students' faces, including photographs and videos;
- The names of roommates and romantic partners;
- The names of graduate schools or internships sought; and
- The student's employer and/or work locations.

UC suggested, during the discovery conference, that such redaction is insufficient to allow disclosure without prior notice because other information in the other files may be "linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty." 34 C.F.R. § 99.3.  UC's concerns are both overbroad and based on unsupported speculation.

In reviewing that "linkable" language, one court has noted, "the standard is not… whether a student can *conceivably* be identified by the statements." *Doe v. Huntington Indep. School Dist.*, E.D.Tex. No. 9:19-CV-00133, 2021 U.S. Dist. LEXIS 126861, at *5, fn. 2 (Jan. 15, 2021) (quotation omitted, emphasis supplied).  UC has failed to make any showing that it's concerns are anything beyond

5

speculation. At best, UC suggests that in a relatively small subset of the school, CCM, details about allegations may lead to identification. But UC has not provided any specific evidence, for example, that Plaintiffs have a personal relationship with the relevant students that would make it likely that they would be able to identify the students by the contents of their complaints. Nor does UC address the fact that Plaintiffs have suggested that the Court adopt the two-step process employed by this Court in *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:16-cv-171, 2018 U.S. Dist. LEXIS 176752, at *10-12 (Oct. 15, 2018). Under this process, first, UC would compile and produce a spreadsheet containing information about the allegations, resulting in a list that would not contain any FERPA-protected information. After reviewing the spreadsheet, Plaintiffs may request and obtain the full case files for certain matters. At that time, the parties would be in a better position to determine if FERPA notices are necessary or if redaction is sufficient.

There is limited additional caselaw addressing the scope of the "linkable" language in FERPA. In *Doe v. Baylor Univ.*, W.D.Tex. No. 6:16-CV-173, 2018 U.S. Dist. LEXIS 248764, at *15 (May 6, 2018), one court credited a plaintiff's complaint that a school was using this language to engage in "overzealous redacting." The *Baylor* court suggested that the school's proposed redactions. that included "details in the [student's] statement," were not necessary under FERPA. The *Baylor* court permitted redactions similar to the redactions proposed *supra*. However, upon a specific showing that that in certain circumstances redaction was insufficient, the *Baylor* court determined that records would only be produced after notice to the student. But, significantly, in *Baylor* the records were eventually produced.

E. **Requiring Notice Should Not Be a Reason To Continue To Delay Discovery – Notice Should Be Sent Out Right Away**

If the Court determines that Notice should be provided to implicated students, this is not a reason to deny discovery. Instead, the Court should Oder UC to provide notice immediately so that discovery may proceed after students are given time to lodge objections.

6

Counsel for Plaintiff represents to the Court that notice has been provided to students – like happened earlier in this case – in dozens of other cases involving student discipline records. Counsel is aware of only one time where a student objected. In that case, Judge Barrett sent a letter to the student assuring the student that records would be produced subject to a protective order.[4]

UC's efforts to avoid *any* production of the records because it might "cause concern with those other students" or "invade[]their privacy rights as a student" has been rejected by this Court. (Doc#35, PageID#372-373.) Judge Hopkins observed during a prior hearing that the protective order would permit discovery regardless of notice. The Court said:

> Couldn't a protective order, though, resolve those issues? I mean, certainly we have to let the students know that their information is going to be disclosed, but it will be held confidential and their names will not appear in any of the pleadings.

(Doc#35, PageID#373.) The Court further observed, in discussing the student information contained in the investigative files for Plaintiffs:

> having that protective order in place, once those students in the report are contacted, should give them some assurance that even though this information is going to be disclosed in the litigation, it is going to be highly, highly confidential and protected from further disclosure without Court order.

(Doc#35, PageID#375.) Magistrate Judge Kemp made a similar observation in *Doe v. Ohio*, noting: "the potential harm to students' privacy interests will be lessened here by the fact that the Court will require that the parties enter into a protective order…" 2013 U.S. Dist. LEXIS 69022, at *29.

---

[4] Counsel also previously observed, based on experience with Title IX cases, that "We have historically run into some issues involving the notice to students. And in particular, we've had some concerns that schools have used this notice provision as a way to delay discovery." (Doc#35, PageID#380.)

7

        Respectfully submitted,

        ATTORNEYS FOR PLAINTIFFS:

           /s/ Joshua A. Engel
        Joshua Adam Engel (OH 0075769)
        Scott O'Reilly (OH 0075717)
        ENGEL AND MARTIN, LLC
        4660 Duke Dr., Suite 101
        Mason, OH 45040
        (513) 445-9600
        engel@engelandmartin.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's ECF system this December 19, 2024 upon all counsel of record.

/s/ Joshua Engel
Joshua Engel