CARPENTER LIPPS LLP

ATTORNEYS AT LAW
280 PLAZA, SUITE 1300
280 NORTH HIGH STREET
COLUMBUS, OHIO 43215
WWW.CARPENTERLIPPS.COM

TELEPHONE: (614) 365-4100

180 NORTH LaSALLE
SUITE 2105
CHICAGO, ILLINOIS 60601
TELEPHONE (312) 777-4300

1025 CONNECTICUT AVENUE N.W.
SUITE 1000
WASHINGTON, DC 20036-5417
TELEPHONE (202) 365-2808

WRITER'S DIRECT NUMBER:
(614) 365-4125
bricker@carpenterlipps.com

November 5, 2024

**Via E-mail**
The Honorable Karen L. Litkovitz
Potter Stewart U.S. Courthouse, Room 716
100 East Fifth Street
Cincinnati, OH 45202

      Re:    *Roe et al. v. University of Cincinnati*
              Case No. 1:22-cv-00376 (S.D. Ohio)

Dear Chief Magistrate Judge Litkovitz:

We are counsel for defendant University of Cincinnati ("UC") in the above-referenced case and write in advance of the November 8, 2024 discovery conference pursuant to Your Honor's October 1, 2024 Order (ECF No. 37) directing the parties to submit position statements regarding discovery disputes raised in plaintiffs' counsel's September 25, 2024 forwarding e-mail and letter addressed to Judge Hopkins.[1]

Plaintiffs seek three categories of discovery from UC: (1) non-party John Doe's admissions application and related files; (2) documents concerning unrelated allegations of sexual harassment involving non-party students; and (3) UC's responses to U.S. Department of Education investigations into unrelated allegations of sexual harassment involving non-party students.

UC believes this discovery is irrelevant to the claims in this matter, and, at a minimum, seeking discovery in these areas is premature for the following reasons:

(1) A decision on UC's pending Motion to Dismiss will eliminate, or significantly limit, the minimal relevance (if any) of the confidential and sensitive information that plaintiffs seek related to non-party students. *See* UC's MTD (ECF No. 18) and related briefing.

(2) During the Preliminary Pretrial Conference at which UC sought a complete stay of discovery pending a ruling on its Motion to Dismiss, Judge Hopkins did the following:

---

[1] On October 1, 2024, counsel for all parties spoke with Your Honor's courtroom deputy to schedule the November 8, 2024 discovery conference. The courtroom deputy stated that plaintiffs' counsel was not required to re-do his six-page position statement sent to Judge Hopkins chambers on September 25, 2024, and that UC also could submit a position statement of the same page length.

EXHIBIT A

November 5, 2024  
Page 2

CARPENTER LIPPS LLP

- Stated that plaintiffs are seeking "more" discovery "than may be warranted," *see* Transcript of May 15, 2024 Preliminary Pretrial Conference at 17:1-2 (ECF No. 35);
- Directed that discovery should go forward on an "incremental basis" only, *id.* at 17:8-9, 22;
- Expressed concern for the "rights" of non-party students, including non-party John Doe, whose privacy rights would be violated by allowing the disproportional and broad discovery plaintiffs seek, *id.* at 23:3-4; and
- Invited UC to object "[t]o the extent the plaintiffs seek discovery that is beyond the scope permitted by the Federal Rules of Civil Procedure [] in that it is irrelevant and unduly costly, time-consuming or burdensome," *id.* at 16:8-13, which UC is doing with respect to the discovery at issue.

(3) During the Preliminary Pretrial Conference, when opposing UC's request for a stay of discovery, plaintiffs' counsel represented that the discovery plaintiffs sought was "***limited*** to the students who are listed in the investigative report and who were interviewed as part of the investigation." *Id.* at 19:25, 20:1-2 (emphasis added). Yet now, plaintiffs seek information related to non-party students who were not a part of the investigation.

(4) The discovery deadline is June 30, 2025—nearly eight months away. *See* Scheduling Order at ¶ 9 (ECF No. 33). UC has already produced more than 7,500 pages of documents.

(5) As a matter of judicial economy, it would be more efficient for the parties to complete written discovery and approach the Court one time for assistance in resolving any discovery disputes by either party. Plaintiffs' letter states there are "additional deficiencies" in written discovery responses that "are not yet ripe for presentation to the Court." *See* Plaintiffs' Sept. 25, 2024 Letter at 1 n.1. In addition, UC discussed and on October 24, 2024 provided written notice to plaintiffs' counsel of deficiencies in plaintiffs' recently provided written discovery responses and document productions. On November 1, 2024, plaintiffs' counsel responded to UC's letter. Based on plaintiffs' response, it appears the parties are at an impasse regarding numerous deficiencies UC has identified. UC is drafting a letter to the Court in this regard. This further establishes that plaintiffs' request for Court intervention regarding discovery matters is premature.

For these reasons, and those discussed below, plaintiffs' requested discovery should be denied.

   **I.**  <u>**UC's Pending Motion to Dismiss**</u>: Plaintiffs Jane Roe and Karen Soe are former students, and non-party John Doe is a current student, at UC's College-Conservatory of Music ("CCM") ballet program. Plaintiffs filed an original complaint against UC on June 30, 2022 (ECF No. 1), and an amended complaint on September 30, 2022 (ECF No. 15), alleging John Doe touched them inappropriately in September and October 2021, during partnering class (female and male dancers are taught how to dance together) or during *pas de deux* rehearsals (a dance for two people, typically a male and a female). Plaintiffs allege UC was deliberately indifferent to an

November 5, 2024  
Page 3

CARPENTER LIPPS LLP

October 2021 report of alleged sexual harassment, and that UC retaliated in violation of Title IX of the Education Amendments of 1972 ("Title IX"), despite the undisputed facts that UC conducted an investigation, a hearing and an appeal into John Doe's conduct. *See generally* Amended Complaint (ECF No. 15).

On October 28, 2022, UC filed a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss plaintiffs' amended complaint in its entirety (ECF No. 18) on the following grounds:

***First,*** plaintiffs failed to state a Title IX deliberate indifference claim because: (1) there was no actionable harassment by John Doe; (2) UC was not deliberately indifferent because (a) it did not have actual knowledge of the alleged sexual harassment until October 2021; (b) it responded reasonably once it learned of the alleged harassment, including conducting an investigation, hearing and appeal; and (c) plaintiffs suffered no further alleged injuries after UC received their reports; and (3) plaintiffs did not plausibly allege a "before" Title IX deliberate indifference claim pursuant to *Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson County*, 35 F.4th 459 (6th Cir. 2022).

***Second,*** plaintiffs failed to state a Title IX retaliation claim because: (1) UC did not retaliate against plaintiffs, nor was it deliberately indifferent to alleged retaliatory acts by professors; (2) plaintiffs did not suffer a materially adverse action; and (3) plaintiffs failed to plead any facts showing a causal connection between the alleged adverse actions and engaging in protected activity.

***Third,*** plaintiffs were not entitled to damages for loss of reputation, humiliation, embarrassment, inconvenience, lost earning capacity, and lost career and business opportunities because such damages are not recoverable under Title IX and too speculative as a matter of law pursuant to the Supreme Court's and Sixth Circuit's recent decisions in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) and *S.C. v. Metro. Gov't of Nashville*, 86 F.4th 707 (6th Cir. 2023).

UC's Motion to Dismiss was fully briefed on December 21, 2022. If some or all of plaintiffs' claims are dismissed, the scope of discovery will be reduced. Regardless, for the reasons that follow, the discovery at issue in plaintiffs' counsel's letter is irrelevant and should not be allowed.

**II.** **Discovery Related To Non-Party Students And FERPA:** Plaintiffs' counsel represented at the Preliminary Pretrial Conference that any FERPA-protected discovery plaintiffs intended to seek would be "*limited* to the students who are listed in the investigative report and who were interviewed as part of the investigation." *See* Transcript of May 15, 2024 Preliminary Pretrial Conference at 19:25, 20:1-2 (ECF No. 35) (emphasis added). As noted above, Judge Hopkins then allowed discovery to proceed on "an incremental basis" until such time as he rules on UC's Motion to Dismiss. *Id.* at 17:8-13, 22-23. Despite the representation made to Judge Hopkins, plaintiffs now seek the confidential education records of ***every*** UC student who has complained of sexual harassment, and, confidential information about ***every*** U.S. Department of Education investigation of UC, even though such records and information are completely irrelevant to plaintiffs' allegations in this matter which are limited to alleged conduct by John Doe.

November 5, 2024
Page 4

CARPENTER LIPPS LLP

Such an irrelevant and unnecessary intrusion into the privacy of non-party students is not permitted.

In addition to invading the privacy of non-party students, requiring UC to produce the requested discovery would be disproportional to the needs of the case and impose a substantial burden on UC. FERPA requires that institutions provide students with notice and an opportunity to object before any protected educational information can be disclosed. 20 U.S.C. § 1232g(b)(2)(B); 34 C.F.R. § 99.31(a)(9)(ii). At the request of plaintiffs' counsel, UC provided the required notices for the eight students listed in the investigative report. To provide the discovery plaintiffs now seek, however, UC would need to notify *every* student whose information would be disclosed and provide them with an opportunity to object, in addition to collecting the information. Clearly, this is overly burdensome and disproportional to the needs of the case (especially in light of the limited damages available post-*Cummings* on a Title IX claim).

**III.** **John Doe's Admission Application:** Plaintiffs' letter speculates that "John Doe's application *may* show that UC had prior knowledge that John Doe had sexually harassed another person before he harassed Plaintiffs" because "instructors" at the Cincinnati Ballet allegedly "were aware of allegations that John Doe sexually harassed another ballet student." Plaintiffs' Letter at 3 (emphasis added). Plaintiffs' assertion lacks merit for several reasons. *First,* Cincinnati Ballet is not affiliated with UC. *Second,* the "ballet student" allegedly harassed at Cincinnati Ballet is not a plaintiff in this matter and has never been a UC student. *Third,* the records produced by Cincinnati Ballet in response to plaintiffs' subpoena establish that Cincinnati Ballet employees were not aware of allegations related to John Doe until May 2019, at the earliest—more than a year-and-a-half *after* John Doe submitted his admission application to UC in October 2017. Thus, plaintiffs' assertion that "John Doe's application is very likely to contain letters and other information from his time as a student at Cincinnati Ballet which, if the prior instructors are candid, will include a mention of the prior allegations of sexual harassment," *id.*, has no basis.

Information contained in John Doe's admission application regarding events at Cincinnati Ballet also is irrelevant to plaintiffs' Title IX claims against UC. Title IX liability for student-on-student harassment is limited to "circumstances wherein the [school] exercises substantial control over both the harasser and the context in which the known harassment occurs," *Pahssen v. Merrill Cmt. Sch. Distr.*, 668 F.3d 356, 366 (6th Cir. 2012) (quoting *Davis Next Friend LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 645 (1999)). UC did not have any control over harassment at Cincinnati Ballet allegedly committed prior to John Doe's application and enrollment at UC.

Plaintiffs' additional assertion that information in John Doe's admission file "may be sufficient to establish the school's actual knowledge" that John Doe had a "propensity for sexual harassment of female ballet dancers" likewise lacks merit. Plaintiffs' Letter at 3. *First,* plaintiffs concede that information about John Doe at Cincinnati Ballet amounted only to "allegations" of sexual harassment. *Id. Second,* based on the records produced in response to plaintiffs' subpoena, the allegations are related to a single female ballet dancer at Cincinnati Ballet who did not attend UC. This does not establish a "propensity for sexual harassment of female ballet dancers" by John Doe. *Id. Third,* the "actual knowledge" requirement means that a university's liability under Title IX *cannot* be premised on principles of agency, negligence, respondeat superior, vicarious

liability, or the independent actions of school employees. *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 511 (6th Cir. 2001); *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285, 288 (1998). Instead, "Title IX requires notice to an appropriate person" at UC, *i.e.*, university administrators high enough up the chain of command and with the authority to address alleged harassment and take corrective action on the school's behalf. *Kesterson v. Kent State Univ.*, 967 F.3d 519, 527–29 (6th Cir. 2020) (cleaned up). Knowledge of sexual misconduct by faculty, staff, former employees, friends, benefactors, head coaches, assistant coaches, trainers, or academic counselors, among others, is **not** enough to impose Title IX liability, even if such individuals have a duty to report such sexual misconduct and have been trained to do so. *Id.* at 528-529; *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 765 (6th Cir. 2022); 34 CFR § 106.30(a). Thus, information in an admissions application that is reviewed by an admissions employee at UC cannot establish "actual knowledge" by UC. *Kesterson*, 967 F.3d at 528-29; *Snyder-Hill*, 48 F.4th at 765.

The case cited by plaintiffs' counsel in his letter, *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 174-75 (2005), is inapposite. *Jackson* did not hold that information in a student's admissions application can be imputed to a university as the "actual knowledge" required to state a Title IX deliberate indifference claim.

**IV.** **Other Allegations Of Sexual Harassment And U.S. Department Of Education Investigations:** Plaintiffs seek private and confidential education records of non-party students and information about U.S. Department of Education investigations that are irrelevant, have nothing to do with this case, and do not contain findings of any wrongdoing by UC. Plaintiffs' improper request for such discovery should be denied for several reasons.

First, plaintiffs' request is directly contrary to counsel's representation to Judge Hopkins that plaintiffs' request for FERPA-protected materials would be "limited to the students who are listed in the investigative report and who were interviewed as part of the investigation." *See* Transcript of May 15, 2024 Preliminary Pretrial Conference at 19:25, 20:1-2 (ECF No. 35). Simply stated, when opposing UC's request to stay all discovery, plaintiffs' counsel represented to the Court that the discovery plaintiffs now seek would not be sought.

Contrary to their representations to Judge Hopkins, plaintiffs now argue they need the records because they have pled a Title IX "before" claim. They are wrong. To state a "before" claim, a plaintiff must allege that UC, as an institution, (1) "maintained a **policy** of deliberate indifference to reports of sexual misconduct"; and (2) this policy "created a heightened risk of sexual harassment that was **known** or **obvious**" to UC administrators who had the authority to address the alleged misconduct and take corrective action on UC's behalf. *Doe on behalf of Doe #2*, 35 F.4th 459, 465 (6th Cir. 2022) (emphasis added); *Snyder-Hill*, 48 F.4th at 703-705 (citing *Gebser*, 524 U.S. at 290 and 20 U.S.C. § 1682)). "[B]efore" claims require a prior "pattern" of the same sexual misconduct that "the student currently alleges." *Doe on behalf of Doe #2*, 35 F.4th at 465-466 (quoting *Kollaritsch v. Michigan State Univ.*, 944 F.3d 613, 621 (6th Cir. 2019)). A single incident of sexual misconduct is not sufficient to trigger liability under a "before" theory because it does not establish a policy of deliberate indifference. *Doe on behalf of Doe #2*, 35 F.4th at 466. In short, a 'before" theory of liability is a high bar, and plaintiffs' allegations here do not come close to meeting it.

November 5, 2024
Page 6

GARPENTER LIPPS LLP

   Plaintiffs allege only their own discrete allegations about John Doe. They do not allege that John Doe sexually harassed any other UC students or that any other UC student had been inappropriately touching UC ballet students during classes or rehearsals prior to the alleged misconduct by John Doe. Because of this, plaintiffs also cannot (and do not) allege that a "heightened risk" of such alleged harassment was "known or obvious" to UC administrators who had the authority to address it and take corrective action on UC's behalf. *See id.* at 465-466 (quoting *Kollaritsch*, 944 F.3d at 621). Simply stated, plaintiffs have failed to plead a "before" claim for which relief can be granted. As such, they are not entitled to the irrelevant and disproportional discovery they seek related to allegations and investigations of sexual misconduct involving other students that do not involve plaintiffs or John Doe.

   The cases plaintiffs cite are inapposite.[2] Plaintiffs concede they involve allegations of a "pattern" of "pervasive" and "extensive" student-on-student sexual misconduct over "multiple years" of which school officials with the authority to take corrective action were aware and which created a heightened risk that other students would experience the same harassment. In stark contrast to those cases, plaintiffs here have pled no facts supporting a "before" claim.

   Plaintiffs' additional reliance on cases involving erroneous outcome reverse-discrimination claims under Title IX, rather than Title IX deliberate indifference claims, also is misplaced.[3] The claims in those cases involved completely different elements and alleged that institutions discriminated against male students in their procedures for responding to sexual misconduct complaints because of external pressure exerted by the U.S. Department of Education/Office of Civil Rights. The discovery into allegations of sexual misconduct involving other students and Department of Education investigations allowed in those cases were relevant in showing whether the universities were discriminating against male students generally. *Doe v. Ohio State Univ.*, 2018 WL 4958958 at *3. Here, plaintiffs have not asserted erroneous outcome reverse-discrimination claims or facts plausibly suggesting a "before" claim.

   **V.**  **Conclusion:** Plaintiffs' requested discovery is a fishing expedition that is not relevant to their claims, is disproportional to the needs of the case, and would intrude upon the privacy of other students.

---

[2] *See* Plaintiffs' Letter at 4 (citing *Doe v. Metro. Govt. & Davidson Cty.*, 35 F.4th 459 (6th Cir. 2022); *S.C. v. Metro. Govt. of Nashville & Davidson Cty.*, 86 F.4th 707 (6th Cir. 2023); *T.C on Behalf of S.C. v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, No. 3:17-CV-01098, 2018 WL 3348728 (M.D. Tenn. July 9, 2018); *M.R. v. Burlington Area Sch. Dist.*, No. 21-CV-1284-JPS, 2022 WL 3700888 (E.D. Wis. Aug. 26, 2022)).

[3] *See* Plaintiffs' Letter at 4-5 (citing Doe *v. Ohio State Univ.*, 2:16-CV-171, 2018 WL 4958958 (S.D. Ohio Oct. 15, 2018); *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018); *Doe v. Miami*, 882 F.3d 579 (6th Cir. 2018).

November 5, 2024  
Page 7

CARPENTER LIPPS LLP

It should not be allowed. Plaintiffs' actions in seeking this discovery also directly contradict what plaintiffs' counsel told Judge Hopkins at the preliminary pretrial before he allowed "incremental" discovery to proceed over the objection of UC. At a minimum, the discovery requested should be precluded until after the Court has ruled on UC's pending motion to dismiss and all unresolvable disputes have materialized.

Respectfully submitted,

/s/ Timothy R. Bricker  
Timothy R. Bricker

cc: Josh Engel  
Scott O'Reilly  
Michael H. Carpenter  
David J. Barthel