UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JANE ROE, et al.,  Case No. 1:22-cv-376
    Plaintiffs,  Hopkins, J.
                                                        Litkovitz, M.J.

vs.

UNIVERSITY OF CINCINNATI,  **ORDER**
    Defendant.

       Plaintiffs Jane Roe and Karen Soe bring this action under Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, against the University of Cincinnati ("UC"). This matter is before the Court following two informal discovery conferences held on November 8 and 26, 2024. The following two categories of discovery were discussed: (1) disciplinary records and prior investigations of alleged sexual misconduct at UC involving non-party students, and (2) investigations by the Department of Education into how UC investigates and adjudicates allegations of sexual misconduct. At the last conference, the Court requested both parties to provide additional briefing on the discovery dispute, including whether UC would be required to provide a notice under the Family Education Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, to non-party students if their personally identifiable information was redacted, and whether UC provided notice to students before UC submitted information to the U.S. Department of Education as part of prior, unrelated investigations of UC. Plaintiffs and UC have submitted their briefs, and this matter is ripe for resolution. (Docs. 39, 41).

      **I. Background**

       The amended complaint alleges that plaintiffs are undergraduate ballet students at UC's College Conservatory of Music ("CCM"). Plaintiffs allege they were touched inappropriately by John Doe, a fellow CCM ballet student, and suffered multiple incidents of harassment from John

Doe. As relevant to the instant discovery dispute, plaintiffs claim, *inter alia*, that UC violated Title IX by maintaining "a policy of deliberate indifference to sexual misconduct during rehearsals and performances the result of which was a campus environment that was hostile to women and an elevated risk that they would be subject to sexual harassment. As a result, Jane Roe and Karen Soe suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived them of access to the educational opportunities or benefits provided by the school." (Doc. 15 at PAGEID 123, ¶ 67).

UC filed a motion to dismiss the amended complaint, including the claim that UC's deliberate indifference to reports of sexual misconduct created a heightened risk of sexual harassment leading to the sexual misconduct against plaintiffs. (Doc. 18). That motion remains pending before District Judge Hopkins.

UC moved to stay discovery pending resolution of the motion to dismiss. (Doc. 29). At a status conference with the parties, Judge Hopkins declined to impose a stay of discovery pending resolution of the motion to dismiss and suggested that an incremental approach to discovery may be warranted. (Doc. 35). Plaintiffs then specifically asked Judge Hopkins to order UC to promptly provide a FERPA-required notice to the students identified in plaintiff's investigative report issued by UC so as not to delay that particular discovery. When Judge Hopkins asked whether plaintiffs had a "universe of individuals you would like to list as potential witnesses to depose or obtain discovery on," plaintiffs responded "to the extent they are listed in the investigative report that was done in this case, that would be the universe of the students." (Doc. 35 at PAGEID 381-82).

Judge Hopkins subsequently referred all discovery-related motions and issues to the undersigned magistrate judge. (Doc. 36).

**II. Plaintiffs' discovery requests**

The two discovery issues relate to plaintiffs' alleged "before" claim under *Doe v. Metro Gov't of Nashville & Davidson Cty.*, 35 F.4th 459 (6th Cir. 2022). A "before" claim under Title IX is one where "a student alleg[es] that a school's deliberate indifference *before* she was harassed caused the harassment." *Doe*, 35 F.4th at 465 (emphasis added). To establish a "before" claim, the plaintiff must show:

> (1) that the school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) that indifference created a heightened risk of sexual harassment that was known or obvious, (3) the risk of harassment was in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school.

*S.C. v. Metro. Gov't of Nashville & Davidson Cnty.*, 86 F.4th 707, 715 (6th Cir. 2023) (internal quotation marks omitted).

Plaintiffs' discovery requests (Requests for Production 20, 27, 28, 29, and 30 and Interrogatory 5) seek information about other incidents of student-on-student sexual harassment at UC. Interrogatory 5 states:

> Identify all students who have been alleged to have been the victims of Sexual Misconduct at UC from 2012 through 2022. For each person identified: describe the nature of the allegation; state the gender of the complainant and the respondent; identify the alleged perpetrator(s); describe the results of any investigation and/or any appeal or hearing on the allegations, including any sanctions or discipline imposed on a student (including any interim sanctions imposed prior to the resolution of the matter); and describe any supportive measures requested by and/or provided to the alleged victim.

(Doc. 41-2 at PAGEID 431). Plaintiffs' corresponding requests for production of documents seek non-party student complaints or reports of sexual misconduct made to UC from 2012 to 2022, investigative reports, adjudicatory hearings, and communications and meeting notes, among others. Plaintiffs argue this information "is relevant to show whether UC's deliberate

3

indifference to a pattern of student-on-student sexual misconduct led to sexual misconduct against Plaintiffs." (Doc. 39 at PAGEID 395, citing Amended Complaint ¶¶ 17, 67). Plaintiffs state they are not seeking the names of students but only basic information such as initial reports or complaints of student-on-student sexual harassment, investigative reports, and final decisions. (*Id.* at PAGEID 395).

UC argues that prior unrelated reports of sexual harassment are not relevant to any claims in the case, and plaintiffs may only conduct discovery on their well-pleaded claims. UC states that for the reasons set forth in its motion to dismiss, the amended complaint does not plausibly allege deliberate indifference on a Title IX "before" theory. According to UC, any discovery relating to non-party student complaints of sexual harassment is therefore irrelevant. In addition, UC argues that discovery relating to non-party students will encroach upon the privacy rights of those students, is disproportional to plaintiffs' claims in this case, and would require a FERPA notice to each of those students, posing an undue burden on UC at this juncture of the lawsuit. UC further argues that plaintiffs' counsel represented to Judge Hopkins that the discovery sought would be "limited to the students who are listed in the investigative report and who were interviewed as part of the investigation," and the discovery plaintiffs now seek exceeds that representation. (Doc. 41 at PAGEID 407-08).

Plaintiffs assert the redacted records are relevant to show whether UC discriminated against students based on sex by failing to promptly and equitably respond to complaints, reports and/or incidents of sexual misconduct. They allege "UC has been the subject of at least two federal investigations into allegations the University failed to appropriately respond to complaints of sexual misconduct." (Doc. 39 at PAGEID 396). Plaintiffs allege the discovery limitation discussed at the conference with Judge Hopkins pertained solely to the issuance of

4

prompt FERPA notices to the students named in the investigation of plaintiffs' complaints of sexual misconduct by John Doe. Plaintiffs state they have always been clear they are seeking to discover allegations of sexual misconduct by non-party students at UC, which is the subject of the instant dispute. Plaintiffs also dispute the privacy and proportionality concerns raised by UC. According to plaintiffs, student identifiers can be redacted to protect non-party students' privacy, and a FERPA notice is not required under this circumstance. (Doc. 39 at PAGEID 398-400).

### III. Resolution

As an initial matter, the undersigned does not find that plaintiffs agreed to limit discovery in the conference with Judge Hopkins. The undersigned has read the transcript, and the discovery limitations Judge Hopkins discussed plaintiffs' counsel related to the timing of FERPA notices to students whose names appeared as part of UC's investigation into plaintiffs' sexual harassment complaints. The instant discovery dispute was not discussed.

That said, the undersigned previously expressed reluctance to permit full blown university-wide discovery in light of the pending motion to dismiss and Judge Hopkins' decision to allow discovery to move forward on an incremental basis. (Docs. 35, 43). Judge Hopkins has not yet determined whether plaintiffs have stated a plausible "before" claim under Title IX. The undersigned explored with the parties whether discovery could proceed on a more narrow basis, for example, by limiting the discovery sought by plaintiffs to the CCM population. Plaintiffs were agreeable to this middle ground, opining that this approach would help inform the scope of discovery moving forward, and suggested that the two-step approach used by the Court in *Doe v. Ohio State Univ.*, No. 2:16-cv-171, 2018 WL 4958958, at *4 (S.D. Ohio Oct. 15, 2018) be used. UC opposed this approach contending that the discovery still seeks information about non-party CCM students on matters unrelated to plaintiffs' case and is irrelevant. UC also expressed that it

5

would still be required to give notice to the affected non-party students and infringe on their privacy rights.

FERPA prohibits educational institutions from disclosing "personally identifiable information in education records" without a student's prior consent. 20 U.S.C. § 1232g(b)(2). Personally identifiable information includes, *inter alia*, the student's name; the name of the student's parent or other family members; the address of the student or student's family; a personal identifier, such as the student's social security number, student number, or biometric record; other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name; and other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty. 34 C.F.R. § 99.3. The parties agree that the UC records at issue are "educational records" that contain personally identifiable information as that term is defined in FERPA.

Nevertheless, disclosure of such records "pursuant to a subpoena or judicial order is proper when done in compliance with the requirements of FERPA and its regulations." *Doe v. Ohio*, No. 2:91-cv-464, 2013 WL 2145594, at *5 (S.D. Ohio May 15, 2013) (citing 20 U.S.C. § 1232g(b)). A student's prior consent is not required if the "disclosure is to comply with a judicial order or lawfully issued subpoena." 34 C.F.R. § 99.31(a)(9)(i). *See also* 20 U.S.C. § 1232g(b)(2)(B). However, the institution must still provide pre-disclosure notice to the student where disclosure of educational records containing personally identifiable information is made pursuant to a court order or subpoena. 20 U.S.C. § 1232g(b)(2). *See also* 34 C.F.R. § 99.31(a)(9)(ii) (the educational institution may disclose information if the institution "makes a

6

reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action. . . .").

The parties disagree on whether UC must provide a FERPA notice to non-party students who previously reported sexual misconduct at UC if the Court orders discovery on the two categories at issue. Plaintiffs argue that as long as the personally identifiable information in the requested records is redacted, no notice is required. In contrast, UC expressed concern that given the limited number of students at CCM, disclosing even redacted records would nevertheless reasonably disclose the identity of students and require a FERPA notice.

Plaintiffs bear the burden of showing that the information they seek is relevant to the claims in the amended complaint. Whether a Title IX "before" claim is adequately pleaded in the amended complaint has not yet been determined. Judge Hopkins' ruling on UC's motion to dismiss will determine that issue. Therefore, after further consideration, the undersigned cannot conclude at this juncture that the evidence plaintiffs seek is relevant.

In addition, the undersigned cannot conclude that a middle ground approach authorizing discovery limited to CCM records outweighs the privacy interests of non-party students. Plaintiffs are correct that "[n]othing in the FERPA would prevent the Universit[y] from releasing properly redacted" student disciplinary records. *See United States v. Miami Univ.*, 294 F.3d 797, 824 (6th Cir. 2002). Given the relatively small population of CCM students, however, the undersigned is not convinced that redacting the information plaintiffs suggest (*see* Doc. 39 at PAGEID 399)[1] would obviate the need for a FERPA-required notice to those students. Even if

---

[1] These include:
- The student's name and address;
- The name, address, and professions of the student's parent or other family members;
- The email address and phone numbers of the student;
- Any personal identifier, such as the student's social security number, student number, birth date, or biometric records;
- Any visual depiction of students' faces, including photographs and videos;

7

CCM students' names, addresses, social security numbers, visual depictions, etc. (Doc. 39 at PAGEID 399) could be redacted, the disclosure of the details of any alleged sexual harassment included in initial reports or complaints, investigative reports, or final decision may "link or [be] linkable to a specific student" thereby requiring UC to give a FERPA notice to such students. Plaintiffs allege the fear of linking the information to a particular student is speculative. At this stage, however, the undersigned finds the potential benefit of such discovery does not outweigh the privacy interests of affected students. If Judge Hopkins ultimately determines the amended complaint fails to plead a plausible Title IX "before" claim, giving the FERPA notice now to non-party students may resurface past trauma unnecessarily.

Lastly, the undersigned notes that at this stage of the litigation (pre-motion to dismiss decision), disclosure would likely impose an undue burden on UC. UC represents that the records plaintiffs seek are not maintained by a specific college like CCM. As a result, UC would be required to review all reports of student sexual misconduct university-wide to identify those relating specifically to CCM students. UC represents that files on reports of sexual harassment are often large and would require time-consuming redactions of documents related to investigations, hearings, recordings and other matters that may or may not ultimately be relevant depending on Judge Hopkins' ruling on the motion to dismiss. In light of this information, the undersigned declines to order discovery on a limited basis until Judge Hopkins rules on the motion to dismiss and finds a viable Title IX "before" claim.

---

- The names of roommates and romantic partners;
- The names of graduate schools or internships sought; and
- The student's employer and/or work locations.

For similar reasons, the undersigned declines to order UC to comply with plaintiffs' requests for discovery of U.S. Department of Education investigative materials.[2] As discussed, Judge Hopkins has not yet ruled on the scope of plaintiff's amended complaint. Depending on this ruling, this discovery may not be relevant to the claims in the case. In addition, to the extent the U.S. Department of Education materials include personally identifiable information of non-party students, the privacy concerns outlined above still hold.

Plaintiffs suggest the Court adopt the two-step approach used in *Doe v. Ohio State University* to protect the educational records of non-party students. In that case:

> The [Court] previously entered an order following a discovery conference, noting that, in response to Plaintiff's Request for Production No. 29 for "all documents concerning any investigation, evaluation, prosecution, adjudication, or appeal of a charge of sexual assault, sexual misconduct, sexual harassment or a similar offense made to OSU," the parties agreed that OSU would compile and produce statistics for the period of 2010 to the present. . . . The parties "agreed that the statistics to be compiled would reflect the gender of the accused, the gender of the accuser, the charges, the relevant dates, the outcome of each case, and the identity of the investigators." (*Id*.) OSU produced a spreadsheet containing the agreed-upon information, resulting in a list of nearly 1,200 sexual misconduct cases.

*Doe v. Ohio State Univ.*, No. 2:16-cv-171, 2018 WL 4958958, at *4 (S.D. Ohio Oct. 15, 2018). The plaintiff then sought the full case files for 35 of the 1,200 cases. *Id*.

In the instant case, in contrast, the parties have not agreed to compiling university-wide statistics.[3] While this approach may be appropriate if Judge Hopkins ultimately denies UC's

---

[2] In response to the Court's inquiry, UC claims it is not required to provide notice to students before sending educational records to the U.S. Department of Education for investigative purposes. FERPA contains an explicit exception to the notice requirement for materials disclosed to representatives of the Secretary of Education, 34 C.F.R. § 99.31(a)(3)(iii), and the U.S. Department of Education is subject to strict requirements to protect personally identifiable information in FERPA-protected confidential educational records. *See* 34 C.F.R. § 99.35.

[3] In *Doe v. Ohio State University*, the plaintiff requested "all documents concerning any investigation, evaluation, prosecution, adjudication, or appeal of a charge of sexual assault, sexual misconduct, sexual harassment or a similar offense made to OSU from August 1, 2005 to the present." No. 2:16-cv-171 (S.D. Ohio Oct. 2, 2017) (Doc. 60). The defendants objected that compliance with the request would be unduly burdensome but offered to compile and produce statistics for 2010 to the present. The plaintiff's counsel agreed to this reasonable approach.

motion to dismiss plaintiffs' Title IX "before" claim, for now such an undertaking would be disproportional to the needs of the case.

Plaintiffs requests for discovery are denied.

**IT IS SO ORDERED**.

Date: 1/17/2025

Karen L. Litkovitz
United States Magistrate Judge

10