UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JANE ROE, et al.,                                         Case No. 1:22-cv-376
    Plaintiffs,                                     Hopkins, J.
                                                          Litkovitz, M.J.

vs.

UNIVERSITY OF CINCINNATI,                **ORDER**
    Defendant.

        Plaintiffs Jane Roe and Karen Soe bring this action under Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 *et seq*., against the University of Cincinnati ("UC"). This matter is before the Court following an informal discovery conference held on May 28, 2025. The following two categories of discovery were discussed: (1) disciplinary records and prior investigations of alleged sexual misconduct at UC involving non-party students, and (2) investigations by the Department of Education into how UC investigates and adjudicates allegations of sexual misconduct. These same categories of discovery were discussed at previous discovery conferences with the undersigned magistrate judge. For the reasons set forth in the undersigned's January 18, 2025 Order, plaintiffs' request for this discovery was denied pending District Judge Hopkins ruling on the then-pending motion to dismiss. (Doc. 44).

        Judge Hopkins has now denied the motion to dismiss, and plaintiffs once again seek this discovery, which UC opposes. *See* parties' discovery brief letters (attached). For the reasons that follow, the undersigned denies, at this juncture, the discovery requests as not relevant to the claims in the case.

        The Supreme Court has held that schools receiving federal funding may be liable under Title IX for "subject[ing]" their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the

school's disciplinary authority." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646-47 (1999). The Sixth Circuit has recognized two theories of deliberate indifference liability under Title IX: liability for a school's conduct *before* a student was harassed and liability for a school's conduct *after* the student was harassed. *Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 35 F.4th 459, 464 (6th Cir. 2022). *See also S.C. v. Metro. Gov't of Nashville & Davidson Cnty.*, 86 F.4th 707, 715 (6th Cir. 2023).

The two discovery categories at bar relate to plaintiffs' alleged "before" claim under *Doe v. Metro Gov't of Nashville & Davidson Cty.*, 35 F.4th 459 (6th Cir. 2022). A "before" claim under Title IX is one where "a student alleg[es] that a school's deliberate indifference *before* she was harassed caused the harassment." *Doe*, 35 F.4th at 465 (emphasis added). To establish a "before" claim, the plaintiff must show:

> (1) that the school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) that indifference created a heightened risk of sexual harassment that was known or obvious, (3) the risk of harassment was in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school.

*S.C. v. Metro. Gov't of Nashville & Davidson Cnty.*, 86 F.4th 707, 715 (6th Cir. 2023) (internal quotation marks omitted).

Plaintiffs' discovery requests (Requests for Production 20, 27, 28, 29, and 30 and Interrogatory 5[1]) seek university-wide information about other incidents of student-on-student

---

[1] Interrogatory 5 states:

> Identify all students who have been alleged to have been the victims of Sexual Misconduct at UC from 2012 through 2022. For each person identified: describe the nature of the allegation; state the gender of the complainant and the respondent; identify the alleged perpetrator(s); describe the results of any investigation and/or any appeal or hearing on the allegations, including any sanctions or

sexual harassment at UC. This includes non-party student complaints or reports of sexual misconduct made to UC from 2012 to 2022, investigative reports, adjudicatory hearings, and communications and meeting notes, among others. Plaintiffs argue this information "is relevant to show whether UC's deliberate indifference to a pattern of student-on-student sexual misconduct led to sexual misconduct against Plaintiffs." (Doc. 39 at PAGEID 395, citing Amended Complaint ¶¶ 17, 67). Plaintiffs also seek discovery on investigations by the Department of Education into how UC investigates and adjudicates allegations of sexual misconduct.

Following the last discovery conference, the undersigned declined to order UC to produce this discovery because the undersigned could not conclude that the discovery was relevant to a claim in this action. The undersigned stated, "Whether a Title IX 'before' claim is adequately pleaded in the amended complaint has not yet been determined," and "Judge Hopkins' ruling on UC's motion to dismiss will determine that issue." (Doc. 44 at PAGEID 498). The undersigned also determined that the potential benefit of a middle ground approach—limiting discovery to CCM records (as opposed to university-wide records)—did not outweigh the privacy interests of affected students. (Doc. 44 at PAGEID 499).

On March 31, 2025, Judge Hopkins denied UC's motion to dismiss. Judge Hopkins analyzed plaintiffs' Title IX deliberate indifference claim under *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613 (6th Cir. 2019), which requires a plaintiff to plead five elements:

---

discipline imposed on a student (including any interim sanctions imposed prior to the resolution of the matter); and describe any supportive measures requested by and/or provided to the alleged victim.

(Doc. 41-2 at PAGEID 431).

3

> [(1)] an incident of actionable sexual harassment, [(2)] the school's actual knowledge of it, [(3)] some further incident of actionable sexual harassment, [(4)] that the further actionable harassment would not have happened but for the objective unreasonableness (deliberate indifference) of the school's response, and [(5)] that the Title IX injury is attributable to the post-actual knowledge further harassment.

*Id*. at 623-24. Applying the five elements to plaintiffs' amended complaint, Judge Hopkins found that both Jane Roe and Karen Soe adequately alleged a claim for Title IX deliberate indifference. (Doc. 45 at PAGEID 509-511).

Following Judge Hopkins' ruling, plaintiffs again sought discovery on disciplinary records and prior investigations of alleged sexual misconduct at UC involving non-party students and investigations by the Department of Education. Plaintiffs acknowledge that Judge Hopkins did not differentiate between "before" and "after" claims, but they argue the denial of UC's motion to dismiss should be seen as an acknowledgement that plaintiffs asserted a viable "before" claim. (Plaintiffs' letter brief at 2, n.1). In contrast, UC asserts that Judge Hopkins found plaintiffs stated only two Title IX "after" claims: "Plaintiffs assert two Title IX claims against UC for its response to the students' complaints about John Doe. First, that UC was deliberately indifferent to John Doe's sexual harassment against Plaintiffs. Doc. 15, PageID 23. And second, that UC retaliated against Plaintiffs for reporting John Doe's sexual harassment. *Id*. at PageID 27." (UC's letter brief at 2). UC contends these two claims relate only to UC's response to John Doe's harassment after learning about it, and therefore the University-wide discovery plaintiffs seek is not relevant to their "after" claims.

The undersigned has carefully reviewed Judge Hopkins' motion to dismiss Order. (Doc. 45). Judge Hopkins does not address whether plaintiffs' amended complaint state a plausible "before" claim under *Doe v. Metro Gov't of Nashville & Davidson Cty.*, 35 F.4th 459 (6th Cir. 2022) and its progeny. The Order does not cite *Metro Gov't of Nashville & Davidson Cty.*, 35

4

F.4th 459 or discuss the "before" theory of liability under a Title IX deliberate indifference claim. The Order does not discuss the elements of a "before" claim, which are distinct from those in *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613 (6th Cir. 2019). The Order does not address whether the factual allegations of the amended complaint plausibly assert that UC maintained a widespread practice or policy of deliberate indifference to reports of sexual misconduct that created a heightened risk of sexual harassment that was known or obvious such that the discovery plaintiffs seek is relevant to a plausible "before" claim. At this juncture, given Judge Hopkins' Order, plaintiffs have not shown that the UC (or CCM specific) discovery they seek is relevant to a claim alleged in the amended complaint or proportional to the needs of the case. The undersigned cannot conclude that the discovery plaintiffs currently seek meets the relevance threshold until and unless Judge Hopkins rules otherwise.

Nothing in the undersigned's Order prevents plaintiffs from seeking clarification from Judge Hopkins on the issue at bar. Therefore, the undersigned declines to order UC to produce the discovery plaintiffs seek.

**IT IS SO ORDERED**.

Date: 5/29/2025

Karen L. Litkovitz
United States Magistrate Judge



Joshua Engel, Partner
Jim Hardin, Partner
Scott O'Reilly, Of Counsel

April 23, 2025

**Via Email Only**
The Honorable Magistrate Judge Karen L. Litkovitz
Potter Stewart U.S. Courthouse, Room 716
100 East Fifth Street
Cincinnati, OH 45202

    Re:    *Roe, et al. v. University of Cincinnati*
             S.D. Ohio Case Number 1:22-cv-00376

Dear Magistrate Judge Litkovitz:

This letter is intended to set forth Plaintiffs' positions on two discovery disputes in this matter that the parties remain unable to resolve. The dispute concerns Plaintiffs' requests for production of documents and other discovery concerning non-party student complaints or reports of sexual misconduct made to UC from 2012 to 2022. This matter was before Your Honor previously. The Court "expressed reluctance to permit full blown university-wide discovery in light of the pending motion to dismiss" and Judge Hopkin's desire, prior to deciding the Motion to Dismiss, "to allow discovery to move forward on an incremental basis." (Order, Doc#44.)

The Court has now denied the Motion to Dismiss. (Doc#45.) Now that the Court has denied the Motion to Dismiss, Defendant should be required to produce records and other discovery into disciplinary records and prior investigations of allegations of sexual misconduct at UC. (Requests for Production Nos. 20, 27, 28, 29, 30; Interrogatory No. 5.) Defendant should also be required to produce documents and other information concerning investigations by the Department of Education into the manner in which UC investigates and adjudicates allegations of sexual misconduct. (Request for Productions Nos. 24-25; Interrogatory No. 16.).

In accordance with S.D. Ohio Civ. R. 37.1, the parties exhausted all extrajudicial means for resolving their dispute. This includes communications both in writing and during a phone conference. The undersigned counsel is able to represent to the Court that all sides approached these issues and discussion professionally and in good faith.

RELEVANT BACKGROUND AND STANDARD

"Federal policy favors broad discovery in civil rights actions." *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128 (N.D.N.Y. 1984). In this case, the scope of discovery should be especially

April 23, 2025
Page 2 of 4

broad because evidence of deliberate indifference is often difficult to obtain, and as a result, plaintiffs must often rely on circumstantial and statistical evidence to prove their claims. *Cf. Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (explaining that actual knowledge in a deliberate-indifference standard may be satisfied if circumstantial evidence can show an official's actual knowledge).

Although the Court previously addressed various issues arising under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, Plaintiffs emphasize that FERPA does not create evidentiary privileges. One court in this Circuit has observed, "FERPA is not a law which absolutely prohibits the disclosure of educational records… *Ellis v. Cleveland Mun. Sch. Dist.*, 309 F. Supp. 2d 1019, 1023 (N.D. Ohio 2004). *See also C.R. v. Novi Cmty. Sch. Dist.*, E.D.Mich. No. 14-14531, 2016 U.S. Dist. LEXIS 3450, *6 (Jan. 1, 2016) ("Statutory confidentiality provisions such as those under FERPA and HIPAA do not create evidentiary privileges."). Discovery of FERPA materials may be made subject to the Protective Order.

PRIOR INVESTIGATIONS OF ALLEGATIONS OF SEXUAL MISCONDUCT

Defendants continue to maintain that evidence of prior allegations of sexual misconduct by other students is not relevant.[1] However, this argument is contrary to the Sixth Circuit's decisions in *Doe v. Metro. Govt. & Davidson Cty.*, 35 F.4th 459, 465 (6th Cir. 2022), and *S.C. v. Metro. Govt. of Nashville & Davidson Cty.*, 86 F.4th 707, 715 (6th Cir. 2023). In these decisions, the Sixth Circuit held that a school may be liable under Title IX where the school's deliberate indifference to a pattern of student-on-student sexual misconduct leads to sexual misconduct against the student. In *Metro. Govt. & Davidson Cty* the plaintiffs alleged that they suffered sexual harassment as a result of a school's failure to address "the problem of pervasive sexual misconduct in the schools." Similarly, in *S.C.* the student alleged that her experience of sexual harassment was "just one example of the extensive sexual misconduct problem at" both the school and the district.

In this case, as in *Doe* and *S.C.*, the Amended Complaint alleges *inter alia*, that UC "maintained a policy of deliberate indifference to sexual misconduct during rehearsals and performances the result of which was a campus environment that was hostile to women and an elevated risk

---

[1] This Court's previous Order indicated that this discovery would not be ordered "until Judge Hopkins rules on the motion to dismiss and finds a viable Title IX 'before' claim." In *Doe,* the Sixth Circuit distinguished between two theories of liability under Title IX: liability for the school's conduct before the students were harassed and liability for the schools conduct after the students were harassed (i.e. "before" and "after" claims.).

Judge Hopkins' Order did not differentiate between "before" and "after" claims. Given the nature of the parties' briefing of the Motion to Dismiss, Judge Hopkins's complete denial of the Motion to Dismiss should be seen as an acknowledgement that Plaintiff's had asserted a viable "before" claim. In response to the Motion to Dismiss, Plaintiff's had argued that "UC's response was unreasonable… under both a "before" and "after" theory." (Doc#20, PageID#230.) UC dedicated three pages of the Reply specifically to this issue. (Doc#22, PageID#2490-251.) Plaintiffs also submitted a Notice of Supplemental Authority which specifically addressed the validity of the "before" claim. (Doc#27.)

that they would be subject to sexual harassment." Doc. 15, ¶ 67. Plaintiffs assert that "UC and CCM instructors failed to provide adequate supervision in class, thereby placing female dancers in general, and Jane Roe and Karen Soe in particular, at risk for inappropriate conduct." Doc. 15, ¶ 69(b). The Amended Complaint references prior federal investigations and further alleges that "UC has a pattern and practices of both not taking allegations of sexual assault against female students seriously…" Doc#15, ¶ 17. Finally, the Amended Complaint states that even if "… prior to John Doe's enrollment… UC failed to adopt sufficient measures to assure that John Doe's misconduct did not undermine Jane Roe's and Karen Soe's education or performance." Doc#15, ¶ 70

The discovery sought in this case, thus, is the same type of evidence considered by the Sixth Circuit in *Doe* and *S.C.* In *Doe* the court noted that the plaintiffs had received in discovery disciplinary records for multiple years related to sexual misconduct. And in *S.C.*, the matter was remanded to the district court to consider whether the alleged harassment was "just one example of the extensive sexual misconduct problem at" the school.

Other courts have permitted similar discovery. In *Doe v. N. Kentucky Univ.*, E.D.Ky. No. 2:16-CV-28, 2016 U.S. Dist. LEXIS 146744, at *8 (Oct. 24, 2016), in considering a Title IX deliberate indifference claim by a student who had been sexually assaulted ion campus, a court in this Circuit said, "How the university handled other alleged sexual misconduct on campus is clearly relevant to plaintiff's claim of deliberate indifference under Title IX" and permitted discovery that "broadly inquired into that issue." The most on-point authority remains *T.C. ex rel. S.C. v. Metro. Govt. of Nashville & Davidson Cty.*, M.D.Tenn. No. 3:17-CV-01098, 2018 U.S. Dist. LEXIS 113517, at *44 (July 9, 2018). This was the case later considered by the Sixth Circuit in *S.C.*. In that case, the court permitted broad discovery by a student alleging deliberate indifference into all of the school's "investigative files and disciplinary records for events involving sexual harassment…" The court explained,

> plaintiffs allege that [the school] created an environment that was hostile to female students… The records that the plaintiffs' seek are relevant to those allegations and to showing what, if any, improper conduct was known to [the school] before the plaintiffs experienced the harm they now allege and how [the school] responded to it.

*See also M.R. v. Burlington Area School Dist.,* E.D.Wis. No. 21-CV-1284-JPS, 2022 U.S. Dist. LEXIS 153812, at *12 (Aug. 26, 2022) (permitting discovery into other students' complaints to the District of peer-to-peer harassment).

Plaintiffs have offered two limiting restrictions in an effort to address concerns about privacy issues and avoid imposing an undue burden. *First*, Plaintiffs seek only basic information, such as initial allegations, reports or complaints, investigative reports (if any), and final decisions (if any) about prior allegations of sexual misconduct. *Second*, as the Court noted it's prior Order, Plaintiffs suggest the two-step approach used by the Court in *Doe v. Ohio State Univ.*, No. 2:16-cv-171, 2018 WL 4958958, at *4 (S.D. Ohio Oct. 15, 2018). Under this process, first, UC would compile and produce a spreadsheet containing information about the allegations. After

reviewing the spreadsheet, Plaintiffs may request and obtain the full case files for certain matters.

DEPARTMENT OF EDUCATION INVESTIGATIONS
---

Defendants continue to maintain that documents produced on response to multiple federal investigations into the way UC handles allegations of sexual misconduct by other students is not relevant.

In 2016, UC received notice that the Department of Education was investigating allegations that "the University discriminated against students based on sex by failing to promptly and equitably respond to complaints, re arts and/or incidents or sexual violence of which it had notice." In 2107, UC received an additional notice that the Department of Education was investigating a complaint "the University failed to appropriately respond to [a] Student's… complaint of sexual assault." Copies of these notices were previously provided to the Court.

Discovery into Department of Education investigations into UC's response to allegations of sexual misconduct at UC is relevant in order to determine if the misconduct against Plaintiffs was a result of UC's indifference to the problem of pervasive sexual misconduct in the school. The Department of Education investigations are likely to address a key issue in this case: whether UC's response (or lack thereof) to allegations of sexual harassment caused Plaintiffs to undergo further harassment, made them vulnerable to potential further harassment, or both. The Department of Education investigations will likely provide evidence to support Plaintiffs claims that UC administrators were aware that the school had a pattern of failing fully to investigate sexual assault claims or that its responsess were flawed and would cause a heightened risk of sexual harassment or sexual violence. This, like the discovery described *supra,* is consistent with the Sixth Circuit's decisions in *Doe and S.C.*

The Court has previously held that the Department of Education investigations of a school's Title IX compliance and statements in documents related to a subsequent settlement with the Department were discoverable in a Title IX case. *See Doe v. Ohio State Univ.*, *supra*, at *9 (Oct. 15, 2018) ("A school's "communications regarding the OCR investigation and other interactions with DOE and OCR are therefore relevant"), *citing Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1070 (S.D. Ohio 2017). Moreover, the Sixth Circuit has noted the relevance of pressure from the DOE and OCR on universities to more effectively respond to complaints of sexual misconduct. *See Doe v. Baum*, 903 F. 3d 575, 586 (6th Cir. 2018); *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018).

Thank you for the Court's attention to this mater.

Sincerely,

Joshua Engel

cc: All Counsel

CARPENTER LIPPS LLP

ATTORNEYS AT LAW

TELEPHONE: (614) 365-4100

180 NORTH LASALLE
SUITE 2105
CHICAGO, ILLINOIS 60601
TELEPHONE (312) 777-4300

1025 CONNECTICUT AVENUE N.W.
SUITE 1000
WASHINGTON, DC 20036-5417
TELEPHONE (202) 365-2808

280 PLAZA, SUITE 1300
280 NORTH HIGH STREET
COLUMBUS, OHIO 43215
WWW.CARPENTERLIPPS.COM

WRITER'S DIRECT NUMBER:
(614) 365-4100
bricker@carpenterlipps.com

May 16, 2025

**Via E-mail**
The Honorable Karen L. Litkovitz
Potter Stewart U.S. Courthouse, Room 716
100 East Fifth Street
Cincinnati, OH 45202

    Re:   *Roe et al. v. University of Cincinnati*
              Case No. 1:22-cv-00376 (S.D. Ohio)

Dear Magistrate Judge Litkovitz:

       We are counsel for defendant University of Cincinnati ("UC") in the above-referenced case and write in advance of the May 21, 2025 discovery conference pursuant to the Court's May 7, 2025 Order (ECF No. 50) to state UC's position in response to plaintiffs' counsel's April 23, 2025 letter.

       Plaintiffs are re-raising two arguments they previously raised. (ECF No. 44.) *First*, plaintiffs continue to seek documents concerning unrelated allegations of sexual harassment involving non-party students. *Second*, plaintiffs seek UC's responses to U.S. Department of Education investigations into unrelated allegations of sexual harassment involving non-party students. Plaintiffs acknowledge both categories of discovery are relevant only to a purported "before" Title IX claim. Because the Court did ***not*** find that plaintiffs pled such a claim, UC continues to believe that the discovery at issue remains irrelevant to the claims plaintiffs actually pled. In short, nothing has changed and the discovery still should not be permitted.

       I.   **Discovery Concerning Unrelated Allegations of Sexual Harassment Involving Non-Party Students And FERPA:** Plaintiffs continue to seek "records and other discovery into disciplinary records and prior investigations of allegations of sexual misconduct at UC" related to non-party students. (Plaintiffs' 4/23/25 Letter at 1.) Plaintiffs acknowledge this discovery is relevant ***only*** to a before claim, *id.* at 2, fn. 1, and, based on that, the Court previously "declined to order discovery on a limited basis until Judge Hopkins rule[d] on the motion to dismiss and [found] a viable Title IX 'before' claim." (ECF No. 44 at 8.).

       Judge Hopkins ruled on March 31, 2025. (ECF No. 45) In regard to his decision, plaintiffs argue it "did not differentiate between 'before' and 'after' claims." (Plaintiffs' 4/23/25 Letter at 2, fn. 1.) This is not so. Judge Hopkins found plaintiffs had stated only two Title IX "***after***" claims:

> Plaintiffs assert two Title IX claims against UC for its response to students' complaints about John Doe. First, that UC was deliberately indifferent to John Doe's sexual harassment against Plaintiffs. … And second, that UC retaliated against Plaintiffs for reporting John Doe's sexual harassment.

(ECF No. 45 at 6 (internal citations omitted).) ***Neither of these are "before" claims.***[1] Both relate ***only*** to UC's response to the alleged harassment by John Doe ***after*** learning about it. As such, the discovery sought by plaintiffs should not be allowed because plaintiffs admit it is not relevant to their "after" claims. (Plaintiffs' 4/23/25 Letter at 2, fn. 1).

The Court previously recognized that absent a Title IX "before" claim, the FERPA notices UC is required to send could "resurface past trauma unnecessarily." (ECF No. 44 at 8.) The Court also recognized that discovery related to non-party students would likely impose an undue burden on UC for two reasons: 1) UC would be required to search for and review all reports across the entire university to determine which ones arise from CCM or involve ballet; and 2) the files at issue are often quite large, requiring time-consuming redactions. (*Id.*) This burden has not changed. Not permitting the discovery requested is especially appropriate because it seeks sensitive FERPA-protected disciplinary records related to all CCM and/or ballet students for a ten-year period.

Plaintiffs' proposed "limiting restrictions" do not support allowing the discovery at issue. Plaintiffs state that they "seek only basic information, such as initial allegations, reports or complaints, investigative reports (if any), and final decisions (if any) about prior allegations of sexual misconduct." (Plaintiffs' 4/23/25 Letter at 3.) This is the same position plaintiffs previously took and the Court denied their motion. (ECF No. 44 at 4). This position remains non-persuasive given they have not stated a "before" claim. Plaintiffs also again propose the two-step approach used in *Doe v. Ohio State Univ.*, No. 2:16-cv-171, 2018 WL 4958958 (S.D. Ohio Oct. 15, 2018.). The Court recognized *Doe* is distinguishable because, in that case, the parties had reached an agreement, something that has not occurred here. (ECF No. 44 at 9.) The Court also noted that plaintiffs' two-step approach could only be appropriate if Judge Hopkins found plaintiffs had stated a "before" Title IX claim. (*Id.*) As discussed above, Judge Hopkins did not so find. (ECF No. 45 at 6.)

Thus, discovery related to allegations of sexual harassment involving non-party students is irrelevant, unduly burdensome, and unnecessarily intrudes on the privacy of non-parties. It should not be permitted.

---

[1] To state a "before claim, plaintiffs must have alleged that UC "maintained a policy of deliberate indifference to reports of sexual misconduct" and that this policy "created a heightened risk of sexual harassment that was known or obvious." *Doe v. Metro. Gov't & Davidson Cnty.*, 35 F.4th 459, 465 (6th Cir. 2022). This is not what Judge Hopkins found plaintiffs pled in their Amended Complaint.

May 16, 2025
Page 3

CARPENTER LIPPS LLP

**II.     U.S. Department Of Education Investigations:** Plaintiffs next renew their attempt to seek "[d]iscovery into Department of Education investigations into UC's response to allegations of sexual misconduct at UC." (Plaintiffs' 4/23/25 Letter at 4.) Plaintiffs once again admit the relevance of the requested information is limited to a "before" Title IX claim. *Id.* Consistent with this, the Court previously found the requested information was not discoverable unless Judge Hopkins found "a viable Title IX 'before' claim" had been pled, (ECF No. 44 at 8), which he did not do. (ECF No. 45 at 6). Thus, this category of discovery is not relevant, unduly burdensome and not discoverable for the same reasons described above related to investigation and disciplinary records related to non-party students.

**III.    Conclusion:** Plaintiffs have not stated a Title IX "before" claim. By plaintiffs' own admission, the requested discovery is not relevant to plaintiffs' deliberate indifference or retaliation Title IX claims. It also is unduly burdensome and disproportional to the needs of the case, and intrudes upon the privacy of other students. The discovery should not be allowed.

Respectfully submitted,

*[signature]*

Timothy R. Bricker

cc:     Josh Engel
        Scott O'Reilly
        Michael H. Carpenter
        David J. Barthel

## CARPENTER LIPPS LLP

ATTORNEYS AT LAW

280 PLAZA, SUITE 1300

280 NORTH HIGH STREET

COLUMBUS, OHIO 43215

WWW.CARPENTERLIPPS.COM

TELEPHONE: (614) 365-4100

180 NORTH LaSALLE
SUITE 2105
CHICAGO, ILLINOIS 60601
TELEPHONE (312) 777-4300

1025 CONNECTICUT AVENUE N.W.
SUITE 1000
WASHINGTON, DC 20036-5417
TELEPHONE (202) 365-2808

WRITER'S DIRECT NUMBER:

(614) 365-4100
bricker@carpenterlipps.com

May 16, 2025

**Via E-mail**
The Honorable Karen L. Litkovitz
Potter Stewart U.S. Courthouse, Room 716
100 East Fifth Street
Cincinnati, OH 45202

   Re: *Roe et al. v. University of Cincinnati*
      Case No. 1:22-cv-00376 (S.D. Ohio)

Dear Chief Magistrate Judge Litkovitz:

  Pursuant to Your Honor's May 7, 2025 Order (ECF No. 50) in the above-referenced case, counsel for the parties jointly submit this agenda of the issues to be discussed at the May 21, 2025 discovery conference.

  Counsel for the parties state that the issues to be discussed at the May 21, 2025 discovery conference are the following two categories of discovery plaintiffs seek from defendant University of Cincinnati ("UC") and to which UC objects:

  (a) Records and other discovery into disciplinary records and prior investigations of allegations of sexual misconduct at UC, such as initial reports or complaints, investigative reports (if any), and final decisions (if any) from 2012 through 2022. (See Plaintiffs' Requests for Production Nos. 20, 27, 28, 29, and 30, and Interrogatory No. 5.)

  (b) Documents and other information concerning investigations by the Department of Education into the manner in which UC investigates and adjudicates allegations of sexual misconduct. (See Plaintiff's Requests for Production Nos. 24 and 25, and Interrogatory No. 16.)

  UC's responses to Plaintiffs' Requests for Production and Interrogatories are attached.

  The parties' respective positions regarding the above discovery disputes are set out in the parties' respective position statements, which plaintiffs' counsel e-mailed to Your Honor on April 23, 2025, and which UC's counsel e-mailed on May 16, 2025.

May 16, 2025
Page 2

CARPENTER LIPPS LLP

Respectfully submitted,

Timothy R. Bricker
Special Counsel for Defendant
The University of Cincinnati

**APPROVED:**

*/s/ Josh Engel by /s/ Timothy R. Bricker*
*per email authorization on 5/15/2025*
Josh Engel
Counsel for Plaintiffs


cc: Scott O'Reilly
    Michael H. Carpenter
    David J. Barthel