IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| JANE ROE, et al<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY OF CINCINNATI,<br><br>Defendant | Case No. 1:22-cv-376<br><br>HOPKINS, J.<br>LITKOVITZ, M.J.<br><br><br>MOTION FOR CLARIFICATION OF DECISION DENYING MOTION TO DISMISS<br><br>AND<br><br>OBJECTIONS TO MAGISTRATE ORDER |

    Plaintiff respectfully request a clarification of the Court's Order on the Motion to Dismiss to specify whether plaintiffs' amended complaint states a plausible "before" claim under *Doe v. Metro Gov't of Nashville & Davidson* Cty., 35 F.4th 459 (6th Cir. 2022), and its progeny. (Doc#45.) Pursuant to Fed. R. Civ. P. 72, Plaintiffs also respectfully submit this Objection to the May 29, 2025 Order of the Magistrate Judge. (Doc#51.)

**A.    Context: Plaintiffs Seek Discovery On Prior Complaints Of Sexual Misconduct At UC And The Magistrate Judge's Suggestion Of The Need For Clarification Of Order Denying Motion To Dismiss**

    This case involves allegations that Jane Roe and Karen Soe, ballet students at the University of Cincinnati College Conservatory of Music, were sexually assaulted by a fellow student during classes/rehearsals. Plaintiffs allege, in part, that UC was aware of the risk this would occur but initially did nothing, then conducted a sham investigation and flawed hearing that, predictably, exonerated a

1

star dancer. Plaintiffs' assume the Court is familiar with the facts of this case as a result of reviewing the Motion to Dismiss the Amended Complaint.

The discovery dispute before the Magistrate Judge concerned Plaintiffs' requests for production of documents and other discovery concerning non-party student complaints or reports of sexual misconduct made to UC from 2012 to 2022 and investigations by the Department of Education into how UC investigates and adjudicates allegations of sexual misconduct.[1] Plaintiffs believe this Discovery is relevant to determine whether UC maintained a policy of deliberate indifference to sexual misconduct during rehearsals and performances the result of which was a campus environment that was hostile to women and an elevated risk that they would be subject to sexual harassment.

These same categories of discovery were discussed at previous discovery conferences with the Magistrate Judge. For the reasons set forth in the Magistrate Judge's January 18, 2025 Order, the Magistrate Judge denied the request for discovery pending the Court's ruling on the then-pending motion to dismiss. (Doc. 44). The Magistrate Judge "expressed reluctance to permit full blown university-wide discovery in light of the pending motion to dismiss" and the Court's desire, prior to

---

[1] Specifically, Plaintiffs requested Defendant to produce records and other discovery into disciplinary records and prior investigations of allegations of sexual misconduct at UC. (Requests for Production Nos. 20, 27, 28, 29, 30; Interrogatory No. 5.) Plaintiffs also requested Defendant to produce documents and other information concerning investigations by the Department of Education into the manner in which UC investigates and adjudicates allegations of sexual misconduct. (Request for Productions Nos. 24-25; Interrogatory No. 16.).

Plaintiffs offered two limiting restrictions in an effort to address concerns about privacy issues and avoid imposing an undue burden. First, Plaintiffs seek only basic information, such as initial allegations, reports or complaints, investigative reports (if any), and final decisions (if any) about prior allegations of sexual misconduct. Second, as the Magistrate Judge noted in the January Order, Plaintiffs suggest the two-step approach used by this Court in *Doe v. Ohio State Univ.*, No. 2:16-cv-171, 2018 WL 4958958, at *4 (S.D. Ohio Oct. 15, 2018). Under this process, first, UC would compile and produce a spreadsheet containing information about the allegations. After reviewing the spreadsheet, Plaintiffs may request and obtain the full case files for certain matters.

2

deciding the Motion to Dismiss, "to allow discovery to move forward on an incremental basis."[2] (Doc#44.)

Following the Court's decision on the Motion to Dismiss, Plaintiff's renewed this effort to obtain discovery concerning non-party student complaints of sexual misconduct and investigations by the Department of Education. The Magistrate Judge on the grounds that denied this Court had not clarified whether Plaintiffs have properly stated a "before" Title IX claim in accordance with the Sixth Circuit's decision in *Metro. Govt. & Davidson Cty.*. In *Metro. Govt. & Davidson Cty*, the plaintiffs alleged that they suffered sexual harassment as a result of a school's failure to address "the problem of pervasive sexual misconduct in the schools." The Sixth Circuit distinguished between two theories of liability under Title IX: liability for the school's conduct before the students were harassed and liability for the schools conduct after the students were harassed (i.e. "before" and "after" claims.). The Magistrate Judge wrote:

> Judge Hopkins does not address whether plaintiffs' amended complaint state a plausible "before" claim under *Metro Gov't of Nashville & Davidson Cty.*… and its progeny. The Order does not cite *Metro Gov't of Nashville & Davidson Cty.*, 35 F.4th 459 or discuss the "before" theory of liability under a Title IX deliberate indifference claim. The Order does not discuss the elements of a "before" claim, which are distinct from those in *Kollaritsch v. Michigan State Univ. Bd. of Trustees*, 944 F.3d 613 (6th Cir. 2019). The Order does not address whether the factual allegations of the amended complaint plausibly assert that UC maintained a widespread practice or policy of deliberate indifference to reports of sexual misconduct that created a heightened risk of sexual harassment that was known or obvious such that the discovery plaintiffs seek is relevant to a plausible "before" claim. At this juncture, given Judge Hopkins' Order, plaintiffs have not shown that the UC (or CCM specific) discovery they seek is relevant to a claim alleged in the amended complaint or proportional to the needs of the case.

---

[2] The Magistrate Judge previously addressed various issues arising under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g. FERPA should not preclude the relief sought by this Motion, as "FERPA is not a law which absolutely prohibits the disclosure of educational records…" *Ellis v. Cleveland Mun. Sch. Dist.*, 309 F. Supp. 2d 1019, 1023 (N.D. Ohio 2004). *See also C.R. v. Novi Cmty. Sch. Dist.*, E.D.Mich. No. 14-14531, 2016 U.S. Dist. LEXIS 3450, *6 (Jan. 1, 2016) ("Statutory confidentiality provisions such as those under FERPA and HIPAA do not create evidentiary privileges."). Discovery of FERPA materials may be made subject to the Protective Order.

> The undersigned cannot conclude that the discovery plaintiffs currently seek meets the relevance threshold until and unless Judge Hopkins rules otherwise.

(Doc#51, PageID#544-545.) During the informal discovery conference, the Magistrate Judge suggested that clarification from the Court was appropriate. The Magistrate Judge said,

> I don't believe that the discovery plaintiffs are seeking is relevant to the claims that Judge Hopkins… has identified. It doesn't prevent plaintiffs from seeking clarification of Judge Hopkins order…. [T]o the extent plaintiffs seek clarification from Judge Hopkins, and if Judge Hopkins says Judge Litkovitz is, you know, is, you know, in his view, incorrect, that's fine.

(Informal Transcript at 7-8.)

**B.     This Court Should Clarify That Plaintiffs Stated A Valid 'Before" Claim And Permit Discovery On Prior Complaints Of Sexual Misconduct At UC**

Plaintiff respectfully requests that the Court clarify that the Amended Complaints states a valid Title IX claim under both "before" and "after" theories. Plaintiffs' claims under Title IX are based on two theories, that UC exhibited deliberate indifference to the known risks prior to their being subjected to harassment and then exhibited deliberate indifference to their reports. Both are actionable theories of Title IX liability. See Escue, 450 F.3d at 1153 ("[H]arassment of persons other than the plaintiff may provide the school with the requisite notice to impose liability under Title IX."); Ross v. Corp. of Mercer Univ., 506 F. Supp. 2d 1325, 1346 (M.D. Ga. 2007) ("[A] court can find a Title IX violation when a university exhibits deliberate indifference before an attack that makes a student more vulnerable to the attack itself, or when a university exhibits deliberate indifference after an attack that causes a student to endure additional harassment.").

The Amended Complaint alleges, *inter alia*, that UC "maintained a policy of deliberate indifference to sexual misconduct during rehearsals and performances the result of which was a campus environment that was hostile to women and an elevated risk that they would be subject to sexual harassment." Doc. 15, ¶ 67. Plaintiffs assert that "UC and CCM instructors failed to provide adequate supervision in class, thereby placing female dancers in general, and Jane Roe and Karen Soe

4

in particular, at risk for inappropriate conduct." Doc. 15, ¶ 69(b). The Amended Complaint references prior federal investigations and further alleges that "UC has a pattern and practices of both not taking allegations of sexual assault against female students seriously…" Doc#15, ¶ 17. Finally, the Amended Complaint states that even if "… prior to John Doe's enrollment… UC failed to adopt sufficient measures to assure that John Doe's misconduct did not undermine Jane Roe's and Karen Soe's education or performance." Doc#15, ¶ 70.

The discovery produced so far in this case confirms that UC was aware of John Doe's alleged misconduct – yet took no action. Most notably, UC was in possession of an email from 2015 describing sexual misconduct by John Doe female students at the Cincinnati Ballet Academy. The email described similar conduct by John Doe and the facts of this case:

> [A]nother female student, [REDACTED] at CBA told [REDACTED] that she had been groped by [John Doe] during the 2013/14 year but didn't report it… [REDACTED] is fully aware that there will be slips and accidental touching in private places while dancing. She is not concerned about this happening with someone that is genuinely trying to learn. She has partnered with several male dancers at CBA and other studios and has never felt uncomfortable or taken advantage of by any other dancer besides [John Doe].

(Discovery Bates No. UC001039.) The Amended Complaint, thus, alleged that UC maintained a policy of deliberate indifference to reports of sexual misconduct by students which created a heightened risk of sexual harassment that was known or obvious in a context subject to the school's control, and as a result, Plaintiffs suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school." (Amended Complaint ¶67.)

In *Metro. Govt. & Davidson Cty.*, and *S.C. v. Metro. Govt. of Nashville & Davidson Cty.*, 86 F.4th 707, 715 (6th Cir. 2023), the Sixth Circuit held that a school may be liable under Title IX where the school's deliberate indifference to a pattern of student-on-student sexual misconduct leads to sexual misconduct against the student. The Amended Complaint presents the same type of "before"

allegations considered to be sufficient by the Sixth Circuit in *Metro. Govt. of Nashville & Davidson Cty* and *S.C.* In *Metro. Govt. of Nashville & Davidson Cty* the court noted that the plaintiffs had received in discovery disciplinary records for multiple years related to sexual misconduct. The Sixth Circuit noted that the "before" claim was viable because "As the disciplinary records… demonstrate, [the school system] was aware of issues with sexual harassment in the school system well before the two students reported their incidents." 35 F.4th at 466. In *S.C.*, the Sixth Circuit remanded to the district court to consider whether the alleged harassment was "just one example of the extensive sexual misconduct problem at" the school. The Sixth Circuit held that a Title IX claim could be brought by students based on an allegation that the unwelcome sexual contact was a result of the school's indifference to the problem of pervasive sexual misconduct in the schools. In reaching that conclusion, the court did not consider just substantially similar allegations, but that the allegations of the plaintiff were "just one example of the extensive sexual misconduct problem" at the school, noting that "Over one thousand instances of sexual misconduct at [the] schools were documented during" one school year and "nearly 2,500 instances" over a five year period. In *T.C. ex rel. S.C. v. Metro. Govt. of Nashville & Davidson Cty.*, M.D.Tenn. No. 3:17-CV-01098, 2018 U.S. Dist. LEXIS 113517, at *44 (July 9, 2018), the case later considered by the Sixth Circuit in *S.C,* the district court had permitted broad discovery by a student alleging deliberate indifference into all of the school's "investigative files and disciplinary records for events involving sexual harassment…" The Amended Complaint in *S.C.* contained few more details than presented in this case, alleging that "the administration… was aware that students engaged in inappropriate behavior, including intimate interactions in common areas in the presence of school staff." (M.D.Tenn. No. 3:17-CV-01098, Amended Complaint ¶ 11.)[3] The District Court explained that discovery into other allegations was relevant to such a claim:

---

[3] https://storage.courtlistener.com/recap/gov.uscourts.tnmd.71535.6.0.pdf

6

>plaintiffs allege that [the school] created an environment that was hostile to female students… The records that the plaintiffs' seek are relevant to those allegations and to showing what, if any, improper conduct was known to [the school] before the plaintiffs experienced the harm they now allege and how [the school] responded to it.

*See also M.R. v. Burlington Area School Dist.,* E.D.Wis. No. 21-CV-1284-JPS, 2022 U.S. Dist. LEXIS 153812, at *12 (Aug. 26, 2022) (permitting discovery into other students' complaints to the District of peer-to-peer harassment).[4]

**C.      Discovery Of Department Of Education Investigations Is Independently Relevant**

The multiple federal investigations into the way UC handles allegations of sexual misconduct by other students is relevant and discoverable regardless of whether the Court determines that Plaintiffs have stated a "before" or "after" Title X claim. An essential element of both 'before' and 'after' claims is that the harassment at issue was gender-based. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999). The Department of Education investigations may provide indirect/circumstantial evidence of gender bias that can trigger Title IX liability.

In denying this discovery, the Magistrate Judge failed to consider that "Federal policy favors broad discovery in civil rights actions." *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128 (N.D.N.Y. 1984). In this case, the scope of discovery should be especially broad because evidence of deliberate indifference is often difficult to obtain, and as a result, plaintiffs must rely on circumstantial and statistical evidence to prove their claims. *See Doe v. Loyola Univ. Chicago*, N.D.Ill. No. 18 CV 7335, 2020 U.S. Dist. LEXIS 12289, at *8 (Jan. 24, 2020) (permitting broad discovery in Title IX claim by male

---

[4] In *R.L. v. Knox Cty.*, 6th Cir. No. 24-5002, 2024 U.S. App. LEXIS 28458, at *14-15 (Nov. 6, 2024), the court found that a plaintiff failed to state a valid "before" claim where there were no allegations of "demonstrating pervasive harassment" the school. In contrast, in this case the Amended Complaint alleges that UC has been the subject of a number of investigations by the Department of Education for the manner in which it investigates and adjudicates allegations of sexual assault and harassment, a number of lawsuits in this and other courts for the manner in which it investigates and adjudicates allegations of sexual assault and harassment, and that student groups stated that UC only "pretend[ed] to care" about sexual harassment. (Amended Complaint ¶ 17.)

7

student in how school "overhauled its disciplinary procedures in response to" federal pressure including whether school, "to protect its federal funding, skewed the disciplinary and investigative process"). *Cf. Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (explaining that actual knowledge in a deliberate-indifference standard may be satisfied if circumstantial evidence can show an official's actual knowledge); *Doe v. Marshall Univ. Bd. of Governors*, S.D.W.Va. No. 3:22-cv-00346, 2023 U.S. Dist. LEXIS 83796, at *17 (May 12, 2023) (suggesting that information about article discussing school's handling of Title IX matters "may be relevant to Plaintiff's [gender discrimination] claims, which is the broad definition of relevancy that applies to discovery requests.").

The Department of Education investigations directly address a central issue in this case: whether there was gender bias in the Student Conduct process. (*Compare* Amended Complaint ¶ 72 ("throughout the disciplinary proceedings, UC and its agents demonstrated and acted on pervasive gender bias…") In 2016, UC received notice that the Department of Education was investigating allegations that "the University discriminated against students based on sex by failing to promptly and equitably respond to complaints, re arts and/or incidents or sexual violence of which it had notice." In 2107, UC received an additional notice that the Department of Education was investigating a complaint "the University failed to appropriately respond to [a] Student's… complaint of sexual assault." (Copies of these notices are attached as Exhibits.) Discovery of Department of Education investigations into UC's response to allegations of sexual misconduct at UC is relevant in order to determine if the misconduct against Plaintiffs was a result of UC's gender-based indifference to the problem of pervasive sexual misconduct in the school. The Department of Education investigations are likely to address a key issue in this case: whether UC's response (or lack thereof) to allegations of sexual harassment caused Plaintiffs to undergo further harassment, made them vulnerable to potential further harassment, or both. The Department of Education investigations will likely provide evidence to support Plaintiffs claims that UC administrators were aware that the school had a pattern of failing

8

fully to investigate sexual assault claims or that its responses were flawed and would cause a heightened risk of sexual harassment or sexual violence.

In cases brought by male students challenging Title IX disciplinary findings, the Sixth Circuit has noted the relevance of Department of Education investigations on the question of whether universities were pressured to respond to complaints of sexual misconduct in a biased manner. *See Doe v. Baum*, 903 F. 3d 575, 586 (6th Cir. 2018); *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018). The Court has previously held that the Department of Education investigations of a school's Title IX compliance and statements in documents related to a subsequent settlement with the Department were discoverable in a Title IX case brought by a male student. This Court (Vascura, M.J.) ordered similar discovery, noting that "statements in documents related to a subsequent settlement with the [Department of Education] could provide circumstantial evidence of gender bias." *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:16-cv-171, 2018 U.S. Dist. LEXIS 176752, at *8 (Oct. 15, 2018), *citing Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1070 (S.D. Ohio 2017).

**Wherefore,** this Court should clarify the Court's Order on the Motion to Dismiss to specify that plaintiffs' amended complaint states a plausible "before" claim under *Metro Gov't of Nashville & Davidson* Cty. This Court should also permit discovery into UC's response to other allegations of sexual misconduct at UC and, independently, should permit discovery into the multiple Department of Education investigations into the way UC handles allegations of sexual misconduct.

9

        Respectfully submitted,

        <u>/s/ Joshua A. Engel</u>
        Joshua Adam Engel (OH 0075769)
        Scott O'Reilly (OH 0075717)
        ENGEL AND MARTIN, LLC
        4660 Duke Dr., Suite 101
        Mason, OH 45040
        (513) 445-9600
        engel@engelandmartin.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been electronically served via the Courts ECF system this June 4, 2025 upon all counsel of record.

<u>/s/ Joshua Engel</u>
Joshua Engel