**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| JANE ROE, *et al.*, | : | |
| *Plaintiffs*, | : | Case No. 1:22-cv-00376-JPH-KLL |
| v. | : | Judge Jeffery P. Hopkins |
| UNIVERSITY OF CINCINNATI, | : | |
| *Defendant*. | : | |

**ORDER**

Plaintiffs Jane Roe and Karen Soe bring this action under Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*, against Defendant University of Cincinnati ("UC"). This matter is before the Court upon Plaintiffs' Motion for Clarification of the Court's Order Denying Defendant's Motion to Dismiss and Objections to the Magistrate Judge's Order (the "Motion"). Doc. 54.

Plaintiffs' Motion is two-fold. First, Plaintiffs seek clarification of this Court's March 31, 2025 Order (Doc. 45) regarding whether this Court has concluded that Plaintiffs have plausibly stated a 'before' claim for Title IX liability under *Doe v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 35 F.4th 459 (6th Cir. 2022). Second, Plaintiffs object to the Magistrate Judge's May 29, 2025 Order denying Plaintiffs' discovery requests for university-wide information about other incidents of student-on-student harassment at UC, including non-party student complaints or reports of sexual misconduct made to UC from 2012 to 2022, investigative reports, adjudicatory hearings, disciplinary records, communications and meeting notes, and records of any investigations conducted by the Department of Education at UC. Doc. 51.

For the reasons stated below, the Plaintiffs' Motion to Clarify is **GRANTED**. The Court holds that Plaintiffs have only stated a viable claim for an 'after' theory of liability under Title IX (*i.e.*, not the Title IX 'before' claim). In addition, Plaintiffs' objections to the Magistrate Judge's May 29, 2025 Order denying Plaintiffs' discovery requests are **OVERRULED**.

## I.    STANDARD OF REVIEW

When a party objects to a magistrate judge's ruling on a non-dispositive motion, the district court must "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Likewise, 28 U.S.C. § 636(b)(1)(A) provides that "[a] judge of the court may reconsider any pretrial matter … where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." The "clearly erroneous" standard applies to factual findings and the "contrary to law" standard applies to legal conclusions. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992) (Kinneary, J.) (citations omitted). A factual finding is "clearly erroneous" when the reviewing court is left with the definite and firm conviction that a mistake has been made. *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). A legal conclusion is "contrary to law" when the magistrate judge has "misinterpreted or misapplied applicable law." *Hood v. Midwest Sav. Bank*, No. C2-97-218, 2001 WL 327723, at *2 (S.D. Ohio Mar. 22, 2001) (Holschuh, J.) (citations omitted).

## II.    ELEMENTS OF A TITLE IX 'BEFORE' CLAIM

Schools receiving federal funding "may be liable under Title IX for 'subject[ing]' their students to discrimination where the recipient is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary

authority." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 646–47 (1999). The Sixth Circuit has propounded two theories of deliberate indifference liability under Title IX: liability for a school's conduct *before* a student was harassed and liability for a school's conduct *after* the student was harassed. *See Doe on behalf of Doe #2 v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 35 F.4th 459, 464 (6th Cir. 2022); *see also S.C. v. Metro. Gov't of Nashville & Davidson Cnty*., 86 F.4th 707, 715 (6th Cir. 2023).

> For a Title IX 'before' claim, a student-claimant must show:
>
> (1) that the school "maintained a policy of deliberate indifference to reports of sexual misconduct," (2) that indifference "created a heightened risk of sexual harassment that was known or obvious," (3) the risk of harassment was "in a context subject to the school's control," and (4) "as a result, the plaintiff suffered harassment that was so severe, pervasive, and objectively offensive that it can be said to have deprived the plaintiff of access to the educational opportunities or benefits provided by the school."

*Id.* (quoting *Doe*, 35 F.4th at 465) (internal citations, quotation marks, and alterations omitted). To successfully allege a 'before' claim under Title IX, "a school's deliberate indifference to known past acts of sexual misconduct must have *caused* the misconduct that the student currently alleges." *Id.* at 466 (emphasis added).

III.    **ANALYSIS AND DISPOSITION**

This Court previously found Plaintiffs had plausibly stated a claim for Title IX deliberate indifference.[1] *See Roe v. Univ. of Cincinnati,* No. 1:22-CV-376, 2025 WL 961731, *3– 6 (S.D. Ohio Mar. 31, 2025). Reviewing the decision in light of the instant Motion, the Court clarifies that its holding relates solely to Plaintiffs' Title IX 'after' claim (*i.e.*, not the Title IX

---

[1] For factual background, refer to this Court's March 31, 2025 Opinion and Order. *See* Doc. 45, PageID 502–07.

'before' claim). As such, Plaintiffs' objections to the Magistrate Judge's May 29, 2025 Order are **OVERRULED**.

Plaintiffs maintain, however, that they have also adequately alleged a valid Title IX 'before' claim. Doc. 54, PageID 580. Plaintiffs contend that "UC and CCM [University of Cincinnati College-Conservatory of Music] maintained a policy of deliberate indifference to sexual misconduct during rehearsals and performances[,] the result of which was a campus environment that was hostile to women and an elevated risk that they would be subject to sexual harassment." Am. Compl., ¶ 67. Plaintiffs further assert that "UC and CCM instructors failed to provide adequate supervision in class, thereby placing female dancers in general, and Jane Roe and Karen Soe in particular, at risk for inappropriate conduct." *Id*. ¶ 69.b. Plaintiffs posit that the Amended Complaint references prior federal investigations demonstrating that "UC has a pattern and practices of both not taking allegations of sexual assault against female students seriously, and not respecting the due process rights of both accused students and alleged victims." *Id*. ¶ 17. Finally, Plaintiffs aver that "accusations [of sexual harassment and misconduct] against John Doe were common knowledge in the Cincinnati dance community and, on information and belief, CCM faculty were aware of the allegations." *Id*. ¶ 24.

Even though the allegations in the Amended Complaint suggest a university-wide policy of deliberate indifference, Plaintiffs appear to forfeit these arguments in their Response in Opposition to Defendant's Motion to Dismiss (the "Response"). Doc. 20. The total extent of Plaintiffs' arguments as to their 'before' theory of liability is as follows:

> Before. UC was informed in March 2020 about John Doe's alleged misconduct – yet took no action. The school, thus, maintained a policy of deliberate indifference to reports of sexual misconduct by ballet students which created a heightened risk of sexual harassment that was known or obvious in a context

subject to the school's control, and as a result, Plaintiffs suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school." UC claims that the [*sic*] "neither Plaintiff suffered any further actionable sexual harassment by John Doe after her report of harassment." Def. Memo. a [*sic*] PageID#142. But UC was aware of John Doe's conduct regardless of who made the report, and, as the Sixth Circuit warned about in *Metro. Govt. & Davidson Cty* [*sic*], UC's argument would "allow schools to remain deliberately indifferent to widespread discrimination as long as the same student was not harassed twice." 35 F.4th at 468.

Doc. 20, PageID 230. Put differently, where the Amended Complaint presumptively[2] alleges UC and CCM maintained "a campus environment that was hostile to women," Am. Compl., ¶ 67, Plaintiffs proceed to shift the focus of their 'before' theory of UC's liability to instead emanate from UC's purportedly "unreasonable response" to a *sole* report of an incident occurring in March 2020 concerning John Doe's alleged misconduct.[3] The record before the Court, however, shows that once the faculty member was informed of the alleged misconduct, that faculty member reported the incident and Plaintiffs' concerns to the UC Title IX office. *Id*. ¶ 28.b. From this single incident from March 2020, Plaintiffs make the sweeping assertion that UC "maintained a policy of deliberate indifference to reports of sexual misconduct by ballet students[,] which created a heightened risk of sexual harassment that was known or obvious in a context subject to the school's control." Doc. 20, PageID 230.

The Court is hard-pressed to conclude as much. Even if a plaintiff could bring a Title IX claim "based solely on a school's inadequate response to a single report of sexual

---

[2] *See, e.g. Doe I on behalf of Doe II v. Huntington Ind. Sch. Dist.*, 2020 WL 10317505, at *5 (E.D. Tex. 2020) (disregarding allegations such as "it was well known"; "perpetuation of a culture in which athletes were protected from allegations of misconduct"; "[the school's] failure to address and active concealment of sexual violence.").

[3] According to Plaintiffs, Jane Roe and Karen Soe suffered from unrelated incidents of alleged harassment by John Doe before September 2021. Jane Roe alleges John Doe "approached [her] during a rehearsal" in an "unusual and unnecessary manner." Am. Compl., ¶ 30.a. Karen Soe avers "John Doe inappropriately touched [her] breasts and buttocks during practices" in an off-campus incident several years prior to the reporting of the incident. *Id*. ¶ 25.a.

5

harassment, deliberate indifference requires, at a minimum, that the school's response was 'clearly unreasonable in light of the known circumstances.'" *H.M.T. by & through Ce.T. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:22-CV-00402, 2023 WL 2287635, at *3 (M.D. Tenn. Feb. 28, 2023) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999)). This is especially true here given the Supreme Court's admonition that "courts refrain from second-guessing the disciplinary decisions made by school administrators." *Id.* at 648. At bottom, Plaintiffs have failed to plausibly allege that UC's response was so "clearly unreasonable," *id.* at 650, for this Court to conclude that UC maintained or perpetuated a university-wide policy of deliberate indifference on the thin record now before it. The Court therefore holds Plaintiffs have not adequately pleaded a 'before' theory of liability under Title IX.

The Court turns next to Plaintiffs' objections to the May 29, 2025 Order denying Plaintiffs' sweeping requests for discovery. The Court finds that Plaintiffs impermissibly seek discovery far beyond the scope of their claims.[4] Plaintiffs request two broad categories of discovery: (1) disciplinary records, meeting notes, information on hearings, and prior investigations of alleged sexual misconduct at UC involving non-party students from 2012 to 2022, and (2) investigations by the Department of Education into how UC investigates and adjudicates allegations of sexual misconduct. Doc. 51, PageID 541. Plaintiffs aver that this information "is relevant and discoverable regardless of whether the Court determines that Plaintiffs have stated a 'before' or 'after' Title IX claim." Doc. 54, PageID 583.

---

[4] The Court notes its decision overruling Plaintiffs' objections to the denial of the discovery requests does not change this Court's holding that Plaintiffs have plausibly stated a claim for deliberate indifference pursuant to an 'after' theory of liability under Title IX. The Court's decision here is limited only to its findings under Fed. R. Civ. P. 26(b) of whether the at-issue discovery requests are proportional to the needs of the case.

The Court disagrees. Plaintiffs argue strenuously that the information sought is "relevant[,]" (Doc. 54, PageID 578), but Plaintiffs have critically failed to establish that this discovery is "proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b). Upon closer review of their Response, Plaintiffs' 'after' theory of liability is far more limited in time and in scope than their sprawling requests for discovery:

> After. In September 2021, on multiple occasions, Jane Roe informed her professor, the department chair, and the division head that she had been touched inappropriately in class. Yet the inappropriate touching continued for both Jane Roe and Karen Soe. The Amended Complaint plausibly alleges that rather than take steps to remedy the violation, UC opted to avoid cover up and avoid the problem through ineffective orders and a sham investigation, resulting in Jane Roe and Karen Soe being excluded from educational opportunities ….

Doc. 20, PageID 230–31. Here, Plaintiffs contend it is UC's alleged post-September 2021 "cover up … through ineffective orders and a sham investigation" that "*result*[*ed*] in Jane Roe and Karen Soe being excluded from educational opportunities." *Id*. (emphasis added). Neither UC's methodology for investigating separate claims of sexual misconduct in general nor the Department of Education's investigations into UC *over the previous decade* appear to have any proportional bearing on Plaintiffs' theory of liability as currently pled. Plaintiffs have not made an adequate showing that information about *other* incidents of student-on-student harassment at UC—including non-party student complaints or reports of sexual misconduct made to UC from 2012 to 2022, investigative reports, adjudicatory hearings, disciplinary records, communications and meeting notes, and records of any investigations conducted by the Department of Education—are commensurate with the claims underpinning their 'after' theory of liability, specifically as it relates to the incidents involving Jane Roe and Karen Soe. The Magistrate Judge concluded as much. Doc. 51, PageID 545. And the Court finds nothing

in the Magistrate Judge's May 29, 2025 Order "that is clearly erroneous or is contrary to law" in coming to that conclusion. Fed. R. Civ. P. 72(a).

The Court's decision here is guided by the careful balance it must navigate between the "right to discovery with the need to prevent 'fishing expeditions.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236–37 (6th Cir. 2016) (quoting *Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012)) (cleaned up). Finding the discovery requests to be a thinly veiled attempt to embark on a needless "fishing expedition," the Court hereby **OVERRULES** Plaintiffs' objections to the Magistrate Judge's May 29, 2025 Order.

**IT IS SO ORDERED.**

June 17, 2025

Jeffery P. Hopkins
United States District Judge

8