THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JANE ROE, et al. | ) | Case No. 1:22-cv-00376 |
| | ) | |
| Plaintiffs, | ) | Judge Jeffrey P. Hopkins |
| | ) | |
| v. | ) | Magistrate Judge Karen L. Litkovitz |
| | ) | |
| UNIVERSITY OF CINCINNATI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNIVERSITY OF CINCINNATI'S
PROPOSED UNDISPUTED FACTS**

Pursuant to section II.F.6.b. of the Court's Standing Order Governing Civil Cases, Defendant University of Cincinnati ("UC"), submits the following Proposed Undisputed Facts, with citations to supporting evidence, in support of its Motion for Summary Judgment.

**BACKGROUND**

1. Plaintiffs Jane Roe and Karen Soe attended UC from ████████. (12/18/24 Deposition of Jane Roe ("Roe Dep. Vol. I") at Ex. A, ECF 61-1 at PageID 836; 12/20/24 Deposition of Karen Soe ("Soe Dep.") at Ex. A, ECF 61-2 at PageID 1110.)

2. Non-party John Doe attended UC beginning in ████ (Roe Dep. Vol. I 141:22-23, ECF 61-1 at PageID 777; Soe Dep. 35:11-18, ECF 61-2 at PageID 907.)

3. Jane Roe, Karen Soe, and John Doe were students together at UC's ballet program within the College Conservatory of Music ("CCM") in 2021. (Roe Dep. Vol. I 18:9-18, ECF 61-1 at PageID 654; Soe Dep. 59:17-24, ECF 61-2 at PageID 931.)

4. Students within CCM's ballet program take a class called "Partnering," which necessarily requires them to touch other students while dancing. (Roe Dep. Vol. I 67:18-23, ECF 61-1 at PageID 703.)

1

5. Ballet students also take part in ballet productions at CCM. These productions include partnered dances that also require students to touch one another. (*Id.* at 69:9-20, at PageID 705; Soe Dep. 85:8-15, ECF 61-2 at PageID 957.)

6. Jane Roe and Karen Soe claim that John Doe touched them inappropriately while partnering during classes and rehearsals. (Roe Dep. Vol I 87:20-24, ECF 61-1 at PageID 723; Soe Dep. 85:16 – 87:16, ECF 61-2 at PageID 957-59.)

7. Plaintiffs seek to hold UC responsible for John Doe's alleged misconduct and seek damages for loss-of-income and loss-of-reputation. (Roe Dep. Vol. I 149:11-23, ECF 61-1 at PageID 785; 1/17/25 Deposition of Jane Roe ("Roe Dep. Vol. II") 350:9 – 351:2, ECF 61-3 at PageID 1309-10; Soe Dep. 153:21 – 154:21, 156:6-23, ECF 61-2 at PageID 1025-26, 1028; Soe Dep. Ex. G, ECF 62-1, at PageID 2837.)

8. Plaintiffs' purported ballet expert, Karen Jennings, acknowledged that "it's not uncommon when partnering for a male dancer to touch the private area of a female dancer" and that "[a]ccidents happen."[1] (3/2/26 Deposition of Karen Jennings ("Jennings Dep.") 75:17-24, ECF 61-11 at PageID 2526; *id.* at Ex. C, at PageID 2720.) She also agreed that "a slippery leotard" can "affect hand placement." (*Id.* 139:20-22, at PageID 2590.)

### UC'S SEX AND/OR GENDER-BASED MISCONDUCT POLICY

9. UC maintains a Sex- and/or Gender-Based Misconduct Policy ("UC Policy") that was in effect in 2021. (6/27/25 Deposition of Shannon Schipper ("Schipper Dep.") 12:18 – 13:6, ECF 61-9 at PageID 2092-93; 3/14/25 Deposition of Ashleigh Wade ("Wade Dep.") 20:20 – 21:7, ECF 61-7 at PageID 1825-26; Plaintiffs' Exhibit ("Pl. Ex.") 4, ECF 61-12 at PageID 2725.)

---

[1] UC may separately file a motion addressing the opinions of plaintiffs' purported experts, depending on whether plaintiffs intend to call them as witnesses. UC's citations to plaintiffs' purported experts are not an agreement that their opinions are admissible in evidence under Fed. R. Evid. 702 or any other rule. Instead, these citations underscore the *indisputability of the facts* to which even plaintiffs' purported experts agree.

10. The UC Policy provides for investigations into allegations of sexual misconduct by UC's Office of Gender Equity and Inclusion ("OGEI"). (Schipper Dep. 12:18 – 13:6, ECF 61-9 at PageID 2092-93; Wade Dep. 20:20 – 21:7, ECF 61-7 at PageID 1825-26.)

11. Adjudication of complaints, including their hearings and appeals, takes place as set forth in the Student Code of Conduct ("SCOC"). (Pl. Ex. 10, ECF 61-12 at PageID 2780.)

12. The SCOC in effect from September 2021 – April 2022 outlines the procedures for hearings and appeals on non-academic misconduct, including reports of UC Policy violations. (1/22/25 Deposition of Rachel Smith ("Smith Dep.") 21:6-7, 23:5 – 24:6, 28:6-10, ECF 61-4 at PageID 1407, 1409-10, 1414; Wade Dep. 22:6-17, ECF 61-7, at PageID 1827; Pl. Ex. 3, ECF 62-2 at PageID 2863-66, 2871-74.)

**JANE ROE DID NOT REPORT SEXUAL HARASSMENT IN SEPTEMBER 2021**

13. In Fall 2021, Professor Deirdre Carberry cast Jane Roe as a lead in a production of ██████████████. (1/30/25 Deposition of Deirdre Carberry ("Carberry Dep.") 75:5-10, 76:6-8, ECF 61-5 at PageID 1559-60.)

14. Professor Carberry cast John Doe as Jane Roe's partner. (*Id.* at 76:16 – 77:3, at PageID 1560-61.)

15. During the first few rehearsals in September, Jane Roe alleges "a lot of the partnering wasn't even working out, like we couldn't complete turns and we couldn't do complete jumps and lifts." (Roe Dep. Vol. I 76:13 – 77:4, ECF 61-1 at PageID 712-13.)

16. Jane Roe told Professor Carberry on September 14, 2021 that she "didn't really know why we couldn't complete things." (*Id.* at 79:3-4, at PageID 715; *id.* at Ex. M, at PageID 857.)

17. On September 28, Jane Roe apologized to Professor Carberry for her mindset and

3

told Professor Carberry "that she wanted to talk soon." (Pl. Ex. 4, ECF 61-12 at PageID 2728; Carberry Dep. 91:23 – 92:6, ECF 61-5 at PageID 1575-76.)

18.     Jane Roe did *not* tell Professor Carberry or anyone else at UC in September 2021 that she believed John Doe was ***intentionally*** touching her inappropriately or sexually harassing her in any way. (Roe Dep. Vol. I 76:15 – 77:15, 78:24 – 79:7, ECF 61-1 at PageID 712-15; Carberry Dep. 78:24 – 79:7, ECF 61-5, at PageID 1562-63; 3/2/2026 Deposition of Zev Steinrock ("Steinrock Dep.") 78:3-15, ECF 61-10 at PageID 2303; Jennings Dep. 128:1-6, ECF 61-11 at PageID 2579.)

19.     Instead, Jane Roe "was expressing frustration … that the lifts they had been practicing with the partner that they had been practicing [sic] wasn't working, that she didn't feel like … the placement was working, and that … she didn't feel secure." (4/23/25 Deposition of Shauna Steele ("Steele Dep.") 60:18-23, ECF 61-8 at PageID 1988.)

20.     Jane Roe did *not* "mention [John Doe] touching her breast." (*Id.* at 65:10-13, at PageID 1993.)

21.     Jane Roe described her issue with John Doe as "more about technique and instruction." (*Id.* at 66:16-25, at PageID 1994.)

22.     After Jane Roe expressed her frustration with John Doe's technique to Professor Carberry in September 2021, Professor Carberry observed Jane Roe and John Doe dancing at rehearsal, and corrected John Doe's dancing technique. (Roe Dep. Vol. I 79:16 – 80:8, ECF 61-1 at PageID 715-16; *id.* at Ex. M, at PageID 857; Roe Dep. Vol. II 238:5-16, ECF 61-3 at PageID 1197; Carberry Dep. 80:22 – 82:6, ECF 61-5, at PageID 1564-66; Steinrock Dep. 102:2-10, ECF 61-10, at PageID 2327; Jennings Dep. 121:13-21, ECF 61-11, at PageID 2572.) This is called a "correction" in the ballet world. (Roe Dep. Vol. II 310:11 – 311:10, ECF 61-3 at PageID 1269-

4

70.)

23. After Professor Carberry's correction, Jane Roe and John Doe "fixed it and it was fine" for the rest of the rehearsal. (Roe Dep. Vol. I 80:6-12, ECF 61-1 at PageID 716.)

24. Plaintiffs' purported expert, Karen Jennings, testified that Professor Carberry acted appropriately by providing corrections to John Doe. (Jennings Dep. 121:13 – 122:4, ECF 61-11 at PageID 2572-73.)

25. Jane Roe claims that "[l]ater in the weeks to follow it happened again" after Professor Carberry corrected John Doe's technique. (Roe Dep. Vol. I 80:11-12, ECF 61-1 at PageID 716.)

26. She admitted Professor Carberry did not see the subsequent interactions because Professor Carberry "was working with the other couple that was rehearsing . . . ." (*Id.* at 80:19-24, at PageID 716.)

27. Jane Roe did not tell anyone at UC about her belief that John Doe was engaging in intentional sexual harassment until October 6, 2021. (*Id.* at 78:24 – 79:7, at PageID 714-15; Steinrock Dep. 80:13-20, ECF 61-10 at PageID 2305; Jennings Dep. 77:12-20, ECF 61-11 at PageID 2528.)

## JANE ROE REPORTED SEXUAL HARASSMENT
## FOR THE FIRST TIME ON OCTOBER 6, 2021

28. Jane Roe partnered with John Doe for the last time during a rehearsal on October 5, 2021. After the rehearsal, Jane Roe left without reporting anything. (Roe Dep. Vol. II 191:18 – 192:12, ECF 61-3 at PageID 1150-51.)

29. The next day, October 6, Jane Roe reported to Professor Carberry that she believed John Doe's was engaging in intentional sexual harassment. (Roe Dep. Vol. I 81:10-12, 86:4-10, 87:18 – 88:13, ECF 61-1 at PageID 717, 722-24; Roe Dep. Vol. II 190:21 – 192:9, ECF 61-3 at

5

PageID 1149-51; Steinrock Dep. 132:5-12, ECF 61-10 at PageID 2357; Jennings Dep. 77:12-20, ECF 61-11 at PageID 2528.) Jane Roe admits this is the first time she reported to anyone at UC that she believed John Doe was engaged in intentional sexual harassment. (Roe Dep. Vol. I Ex. M, ECF 61-1, at PageID 857; Roe Dep. Vol. II 190:21 – 192:9, ECF 61-3, at PageID 1149-51.)

30.     Professor Carberry immediately escalated the issue to her Department Chair, Professor Shauna Steele, and set up a meeting between Professor Steele and Jane Roe for the same day, October 6. (Roe Dep. Vol. I 86:11-18, ECF 61-1 at PageID 722; Carberry Dep. 98:7-13, ECF 61-5 at PageID 1582.)

31.     Plaintiffs and their purported expert, Zev Steinrock, acknowledge Professor Carberry acted appropriately by escalating Jane Roe's complaint to the chair of the department. (Roe Dep. Vol. I 102:15-22, ECF 61-1 at PageID 738; Soe Dep. 103:25 – 104:5, ECF 61-2 at PageID 975-76; Steinrock Dep. 80:24 – 81:4, ECF 61-10 at PageID 2305-06.)

32.     On October 6, Jane Roe, Karen Soe, Professor Carberry, and Professor Steele met. (Roe Dep. Vol. I at 84:23 – 87:1, ECF 61-1 at PageID 720-23; Soe Dep. 102:10 – 103:24, ECF 61-2 at PageID 974-75; Carberry Dep. 98:7-13, ECF 61-5 at PageID 1582; Steele Dep. 68:4-20, ECF 61-8 at PageID 1996.)

33.     Immediately after the meeting, also on October 6, Professor Steele escalated Jane Roe's report to Denton Yockey, the Head of the Division of Theatre Arts, Production, and Arts Administration at UC, who set up another meeting with Jane Roe, Karen Soe, and three of their classmates for Friday, October 8. (Roe Dep. Vol. I at 89:17-19, 90:9 – 91:13, ECF 61-1 at PageID 725-27; *id.* at Ex. H, at PageID 848; Soe Dep. 105:6 – 106:16, ECF 61-2 at PageID 977-78; Carberry Dep. 97:21 – 98:6, ECF 61-5 at PageID 1581-82; Steele Dep. 68:24 – 69:5, ECF 61-8 at PageID 1996-97; 2/12/2025 Deposition of Denton Yockey ("Yockey Dep.") 32:14 -33:2, ECF 61-

6

6 at PageID 1732-33.)

34.     Plaintiffs' purported expert, Zev Steinrock, testified that it was appropriate for Professor Steele to escalate this report to Denton Yockey. (Steinrock Dep. 82:10-14, ECF 61-10 at PageID 2307.)

35.     The same day as the meeting, Friday, October 8, Professor Yockey submitted a Title IX report to UC's Office of Gender Equity and Inclusion. (Roe Dep. Vol. I 94:24 – 95:11, ECF 61-1 at PageID 730-31; Soe Dep. 111:1-6, ECF 61-2 at PageID 983; Yockey Dep. 32:6-10, ECF 61-6 at PageID 1732; Pl. Ex. 25, ECF 61-12 at PageID 2784-85.)

36.     Plaintiffs and their purported expert, Zev Steinrock, acknowledge Professor Yockey acted appropriately by submitting a Title IX report. (Roe Dep. Vol. I 97:5-16, ECF 61-1 at PageID 733; Soe Dep. 111:4-9, ECF 61-2 at PageID 983; Steinrock Dep. 82:15-20, ECF 61-10 at PageID 2307.)

37.     OGEI is the appropriate entity at UC charged with responding to Title IX reports, including reports of sexual harassment, and conducting investigations of formal complaints of student-on-student sexual harassment. (Schipper Dep. 11:21 – 12:17, 16:10 – 22:17, ECF 61-9 at PageID 2091-92, 2096-2102.) OGEI investigators are responsible for, among other things, conducting these investigations. (*Id.*)

38.     While Professor Carberry could protect students from misconduct she witnessed or was aware of in the moment, she was not permitted to unilaterally remove John Doe from her classroom or discipline him in response to Jane Roe's allegations. (Carberry Dep. 20:3-13, 23:3-16, ECF 61-5 at PageID 1504, 1507; Steele Dep. 15:5-24, ECF 61-8 at PageID 1943; Yockey Dep. 18:14-19, 19:13-15, ECF 61-6 at PageID 1718-19; Steinrock Dep. 22:1-6; 116:7-14; 117:23 – 118:4, ECF 61-10 at PageID 2247, 2341-43.)

7

39. Professor Carberry was permitted to report to the department chair and submit a Title IX report with OGEI. (Carberry Dep. 23:3-16, ECF 61-5 at PageID 1507; Steele Dep. 15:5-19, ECF 61-8 at PageID 1943; Yockey Dep. 19:7-15, ECF 61-6 at PageID 1719; Steinrock Dep. 22:1-6; 116:7-14; 117:23 – 118:4, ECF 61-10 at PageID 2247, 2341-43.)

40. All students accused of misconduct, including John Doe, are entitled to a presumption of non-responsibility and full access to all educational benefits unless and until they are determined to be responsible for misconduct. (Wade Dep. 49:18 – 50:13, ECF 61-7 at PageID 1854-56; Schipper Dep. 61:15 – 62:4, ECF 61-9 at PageID 2141-42; Steinrock Dep. 128:11-15, ECF 61-10 at PageID 2353.)

41. Plaintiffs' purported expert, Zev Steinrock, agreed that "[t]he staff of the Title IX office" investigates allegations of sexual harassment, that "[i]t is not appropriate" for professors to investigate a sexual harassment claim, and that professors "don't have a role in the investigation of the claim." (Steinrock Dep. 21:11-25, ECF 61-10 at PageID 2246.)

**JANE ROE NEVER PARTNERED WITH JOHN DOE AGAIN
AND DOES NOT CLAIM FURTHER HARASSMENT AFTER OCTOBER 5, 2021**

42. After October 5, 2021, Jane Roe never partnered with John Doe again and does not claim to have been harassed by John Doe again. (Roe Dep. Vol. II 166:20 – 167:4, ECF 61-3 at PageID 1125-26; Carberry Dep. 113:17-19, ECF 61-5 at PageID 1597; Steele Dep. 85:21-23, ECF 61-8 at PageID 2013; Steinrock Dep. 82:21-25, ECF 61:10 at PageID 2307; Jennings Dep. 183:21-25, ECF 61-11 at PageID 2634.)

43. Both of plaintiffs' purported experts acknowledge UC acted appropriately by preventing Jane Roe from dancing with John Doe after her October 6 report. (Steinrock Dep. 82:21 – 83:3, ECF 61-10 at PageID 2307-08; Jennings Dep. 183:21 – 184:15, ECF 61-11 at PageID 2634-35.)

8

**OGEI CONDUCTED AN INVESTIGATION AND PROVIDED ACCOMMODATIONS TO JANE ROE, INCLUDING THE ISSUANCE OF A NO-CONTACT ORDER**

44. On Monday, October 11, OGEI emailed Jane Roe to inform her that a report had been submitted and "to make [OGEI] available to speak with [Jane Roe]." (Roe Dep. Vol. I Ex. I, ECF 61-1 at PageID 849-52.)

45. Jane Roe corresponded further with OGEI on October 11 and 12 and set up an informal meeting with OGEI's assigned investigator, Shannon Schipper. (*Id.* at 103:12-15, at PageID 739; *id.* at Exs. I-K, at PageID 849-55.)

46. At the meeting, which took place on October 15, Ms. Schipper "explained everything" about the process, answered Jane Roe's questions, and allowed Jane Roe "to express what [she] wanted to express." (*Id.* at 106:5 – 107:20, at PageID 742-43.)

47. On Thursday, October 21, Jane Roe herself filed a formal complaint with OGEI. (*Id.* at Ex. M, at PageID 856-58.)

48. On October 25, UC's Title IX Coordinator issued a "Mutual No-Contact Order" (the "No-Contact Order") between Jane Roe and John Doe. (*Id.* at Ex. N, at PageID 859, 865-67.)

49. The No-Contact Order barred John Doe "from making contact of any kind" with Jane Roe, "including in person, via telephone or electronic means of any kind, including via social media or third parties." (*Id.* at PageID 865.)

50. The No-Contact Order further prohibited "[n]on-verbal contact used to threaten or intimidate" Jane Roe, "such as using body language, proximity, intentional eye contact, star[]ing and/or other physical cues to communicate." (*Id.*)

51. The No-Contact Order clarified that neither John Doe nor Jane Roe was "barred from accessing any part of the university's programs or activities," but stated that "[b]oth parties must make every effort in preventing their direct partnerships within shared university programs

and activities." (*Id.*)

52.     Plaintiffs' purported experts agree with UC's implementation of the No-Contact Order. (Steinrock Dep. 104:16 – 105:5, ECF 61-10 at PageID 2329-30; Jennings Dep. 184:9-14, ECF 61-11 at PageID 2635.)

53.     In response to the No-Contact Order, Professor Steele proposed a twelve-step plan approved by OGEI outlining how to navigate both students' rights to their education while also complying with the No-Contact Order. (Roe Dep. Vol. I Ex. O, ECF 61-1 at PageID 870-72; Steele Dep. 87:9-15, ECF 61-8 at PageID 2015; Schipper Dep. 74:3-13, ECF 61-9 at PageID 2154.)

54.     As part of the twelve-step plan, CCM temporarily stopped scheduling both Jane Roe and John Doe for rehearsals to keep them separated. (Roe Dep. Vol. I 133:17 – 135:9, ECF 61-1 at PageID 769-71.)

55.     Jane Roe agreed this was correct and that she and John Doe "should have been separated and not rehearsed together." (*Id.*)

56.     Professor Steele also went to great lengths to find Jane Roe an appropriate partner to replace John Doe in ▮▮▮▮▮ Among other things, she contacted third-party professional dancers in an effort to employ them at UC's cost to replace John Doe, ***including one recommended by Jane Roe*** (he declined). (*Id.* at 135:15 – 136:10, 139:3 -140:15, at PageID 771-72, 775-76.)

57.     UC was ultimately able to find a replacement partner and successfully replaced John Doe. (*Id.*) As a result, Jane Roe was able to perform her role as the lead in the performance. (*Id.*)

58.     Plaintiffs' purported expert, Zev Steinrock, testified he agreed with Professor Steele's twelve-point plan. (Steinrock Dep. 140:11 – 141:4, ECF 61-10 at PageID 2365-66.)

59.     Ms. Schipper, the OGEI investigator, gathered documentary evidence and

interviewed nine witnesses ███████████████████████████████. (Schipper Dep. 36:1-4, ECF 61-9 at PageID 2116; Pl. Ex. 4, ECF 61-12 at PageID 2724-41.)

60.     Ms. Schipper compiled the information into a Preliminary Investigation Report ("PIR"), which she provided to Jane Roe and John Doe on November 29, 2021. (Schipper Dep. 36:10-12, ECF 61-9 at PageID 2116; Pl. Ex. 64, ECF 61-12 at PageID 2800-01.)

61.     Jane Roe was permitted to provide comments to the PIR and did so on November 29, 2021. (Pl. Exs. 64-65, ECF 61-12, at PageID 2800-04.)

62.     Ms. Schipper incorporated Jane Roe's comments into a January 19, 2022, Final Investigative Report ("FIR"). (Schipper Dep. 98:20 – 99:18, ECF 61-9 at PageID 2178-79; Pl. Ex. 4, ECF 61-12 at PageID 2740-41, 2772-73.)

63.     Ms. Schipper provided the FIR to Jane Roe, John Doe, and the Office of Student Conduct & Community Standards' Administrative Review Committee ("ARC"). (Schipper Dep. 17:25 – 18:10, ECF 61-9 at PageID 2097-98.)

64.     Ms. Schipper referred the case to Ashleigh Wade, the Director of the Office of Student Conduct & Community Standards, who chaired the ARC, for a hearing. (*Id.* at 18:19-22, at PageID 2098; Wade Dep. 57:1-11, ECF 61-7 at PageID 1862.)

**THE ARC PROVIDED JANE ROE A HEARING AND APPEAL**

65.     The ARC scheduled and conducted a hearing on April 1, 2022 to determine whether John Doe violated the UC Policy. (Wade Dep. 59:13-20, ECF 61-7 at PageID 1864; Pl. Ex. 45, ECF 61-12 at PageID 2792.)

66.     Jane Roe submitted the names of three potential witnesses: Student 1, Student 2, and Karen Soe. (Pl. Exs. 47-49, ECF 61-12 at PageID 2794-96.)

67.     Student 1 told Ms. Schipper during her interview that she "would occasionally sit

in the hallway and watch [Jane Roe's] dance rehearsals" with John Doe. (Pl. Ex. 4, ECF 61-12 at PageID 2731.)

68.  Student 1 also told Ms. Schipper that she "never saw 'what [she] could tell was inappropriate touching or anything' while watching Complainant's dance rehearsals." (*Id.*)

69.  John Doe submitted the names of three potential witnesses: Student 3, Student 4, and Student 5. (Pl. Ex. 9, ECF 61-12 at PageID 2779.)

70.  Student 3 told Ms. Schipper during his interview that he was present for rehearsals and "never witnessed [John Doe] inappropriately touching [Jane Roe]." (Pl. Ex. 4, ECF 61-12 at PageID 2735.)

71.  The hearing took place on April 1, 2022. (Roe Dep. Vol. II 213:18-20, ECF 61-3 at PageID 1172; Pl. Ex. 8, ECF 61-12 at PageID 2777-78.)

72.  Jane Roe was permitted to bring an advisor to the hearing. She brought Claudia Uchtman from UC's Women Helping Women group. (Roe Dep. Vol. II 214:22 – 215:6, ECF 61-3 at PageID 1173-74.) Ms. Schipper put Jane Roe in contact with Ms. Uchtman. (*Id.* at 216:2-5, at PageID 1175.)

73.  At the hearing, Jane Roe and John Doe gave full opening statements. (*Id.* at 218:1-19, Page ID 1177.)

74.  Jane Roe and John Doe also answered questions from the hearing panel members. Jane Roe and John Doe additionally questioned each other through written questions submitted to the panel. (*Id.* at 218:21 – 219:8, at PageID 1177-78.)

75.  One witness for Jane Roe (Student 1) and one witness for John Doe (Student 3), who each observed Jane Roe and John Doe dance together, were permitted to testify and answer the hearing panel's questions, as well as questions submitted by Jane Roe and John Doe. (*Id.* at

12

219:12-19, at PageID 1178.)

76.     Student 1 and Student 3 testified consistently with what they told Ms. Schipper as reported in the FIR. (*Id.* at 219:25 – 220:11, at PageID 1178-79.)

77.     Jane Roe and John Doe gave full closing statements, and then the hearing concluded. (*Id.* at 247:14 – 248:6, at PageID 1206-07.)

78.     On April 1, the ARC unanimously determined that John Doe did not violate the UC Policy. (Pl. Ex. 8, ECF 61-12 at PageID 2777-78.)

79.     The ARC found that the physical contact Jane Roe alleged did occur, but the ARC "[did] not believe that [John Doe's] actions were of a sexual nature" or that he "engaged in physical or verbal conduct based on [Jane Roe's] sex and/or gender identity." (*Id.*)

80.     Jane Roe submitted two appeals regarding the ARC's finding that John Doe did not violate the UC Policy. (Pl. Exs. 6-7, ECF 61-12 at PageID 2774-76; Roe Dep. Vol. II 275:3-5, ECF 61-3 at PageID 1234.)

81.     The University Appeals Administrator ("UAA") found that the appeals lacked merit and the Dean of Students accepted the UAA decision, making the ARC's finding that John Doe did not violate the UC Policy final. (Pl. Ex. 10, ECF 61-12 at PageID 2780-81; Roe Dep. Vol. II 284:21-23, ECF 61-3 at PageID 1243.)

**PLAINTIFFS DECLINED UC'S OFFER TO INVESTIGATE ALLEGATIONS IN FEBRUARY 2020**

82.     On February 24, 2020, Jane Roe met with Professor Carberry and reported that two girls in her class told her that John Doe had harassed a girl at the ███████████ (unaffiliated with UC), during the same timeframe Karen Soe was attending classes at ███████████ many years ago ███████████████████████████. (Roe Dep. Vol. I 48:1-25, ECF 61-1 at PageID 684; *id.* at Ex. E, at PageID 844.)

83.     The same day, February 24, Professor Carberry submitted a Title IX report to OGEI based on her meeting with Jane Roe. (Carberry Dep. 46:2-8, ECF 61-5 at PageID 1530; Pl. Ex. 18, ECF 61-12 at PageID 2782-83.)

84.     The same day as Professor Carberry's report—February 24—OGEI emailed Jane Roe. (Roe Dep. Vol. I Ex. F, ECF 61-1 at PageID 846-47.)

85.     OGEI's February 24 email provided her a "process guide for information related to the Title IX process," invited Jane Roe to "reach out to our office if [she] ha[d] any questions or concerns," and asked her to "pass[] this information along" to the classmates she reported on behalf of who may have knowledge and to "let [her] friends know that if they need our services we are here and available." (*Id.*)

86.     On March 12, 2020, after receiving no response from Jane Roe to OGEI's February 24 email, OGEI sent a follow-up email to Jane Roe. (*Id.* at PageID 845-46.)

87.     OGEI's March 12 email stated its purpose was "to make sure that [Jane Roe] ha[d] received the information," reassure her that "[n]o one is obligated to meet with our office—we just want to make sure that they are aware of resources available to them," and ask her again to "pass[] this along." (*Id.*)

88.     On March 12, Jane Roe responded to OGEI's email. (*Id.* at PageID 845.) She confirmed that she "passed the information along when [she] received it," and stated, "We all have been very busy with our full schedules and rehearsals. Thank you." (*Id.*)

89.     Jane Roe confirmed at her deposition that she "immediately passed the information along to [Karen Soe] and whoever else was concerned at the time." (*Id.* at 55:6-8, at PageID 691.)

90.     OGEI followed up with Jane Roe once more on March 12, but neither Jane Roe, Karen Soe, nor anyone else responded to OGEI's invitation to meet and did not follow up with

14

OGEI. (*Id.* at Ex. F, at PageID 845.)

91.     On March 18, 2020, per standard practice, OGEI followed up with the reporting party, Professor Carberry, but she did not have additional information. (Carberry Dep. 68:7 – 69:6, ECF 61-5 at PageID 1552-53; Motion to Dismiss Ex. B, Declaration of Alexa Justice ¶ 4, ECF 18-2 at PageID 207; *id.* at Att. B-2, at PageID 210.)

92.     Despite this, CCM attempted to address Jane Roe's concerns directly with John Doe on March 4, 2020. (Pl. Ex. 35, ECF 61-12 at PageID 2786-87.)

**KAREN SOE EXPERIENCED ONLY ONE ALLEGED INCIDENT
AND DID NOT REPORT IT**

93.     On either October 8, 2021 or October 22, 2021, Karen Soe partnered with John Doe in class. (*Compare* Soe Dep. 92:2-11, ECF 61-2 at PageID 964, *with id.* at 93:22 – 94:15, at PageID 965-66.)

94.     Karen Soe testified that John Doe touched her inappropriately during this single dance, using "incorrect technique" and not performing "the move that [they] were supposed to be practicing." (*Id.* at 87:14-16, at PageID 959.)

95.     Karen Soe "stopped" John Doe, "asked him why he had done the lift incorrectly," "told him to never do that again," and "left class." (*Id.* at 87:17-22, at PageID 959.)

96.     Karen Soe admits she had only one allegedly inappropriate interaction with John Doe. (*Id.* at 90:13-18, at PageID 962.)

97.     During her November 5, 2021, witness interview with Ms. Schipper related to the OGEI investigation of Jane Roe's report, Karen Soe shared information with UC about the October 2021 interaction with John Doe for the first time. (*Id.* at 87:23 – 88:7, 88:20-22, 89:8-16, at PageID 959-61; Pl. Exs. 62-63, ECF 61-12 at PageID 2797-99.)

98.     After this one alleged incident in October 2021, Karen Soe never partnered with

15

John Doe again and does not claim any further harassment. (Soe Dep. 90:13-18, 100:22-25, ECF 61-2 at PageID 962, 972; Pl. Ex. 62, ECF 61-12 at PageID 2797.)

99.     Plaintiffs' purported experts agreed that it was appropriate for Karen Soe and John Doe not to partner with each other again. (Steinrock Dep. 84:22 – 85:12, ECF 61-10 at PageID 2309-10; Jennings Dep. 184:1-14, ECF 61-11 at PageID 2635.)

100.     Karen Soe did not want to file her own formal Title IX complaint against John Doe. (Soe Dep. 127:5-7, ECF 61-2 at PageID 999.)

101.     Karen Soe preferred to participate only as a witness in Jane Roe's matter, stating being interviewed as a witness for Jane Roe's complaint "would be enough." (*Id.*, 127:2-4, at PageID 999.)

## JANE ROE AND KAREN SOE FALSELY ACCUSED JOHN DOE OF VIOLATING A CIVIL PROTECTION ORDER ON TWO OCCASIONS

102.     On November 1, 2021, Jane Roe obtained an *ex parte* civil protection order against John Doe from the Hamilton County, Ohio Court of Common Pleas. (Jane Roe Dep. Vol. II 167:5-11, ECF 61-1 at PageID 1126; Motion to Dismiss Ex. A, Declaration of David J. Barthel ¶ 3, ECF 18-1 at PageID 158; *id.* at Att. A-1, at PageID 160-206.)

103.     The civil protection order barred John Doe from being at CCM while Jane Roe was there. (*Id.* at 167:5-11, at PageID 1126.)

104.     After the protection order was entered, Karen Soe never saw John Doe on campus. (Soe Dep. 116:20-22, ECF 61-2 at PageID 988.)

105.     On April 1, 2022, the day of the ARC hearing, Jane Roe emailed several UC faculty stating she "was told that [John Doe] was seen in the dance hallways today after the hearing." and that this was inappropriate. (Roe Dep. Vol. II 171:3 – 172:18, ECF 61-3 at PageID 1130-31; Pl. Ex. 52, ECF 62-3 at PageID 2876.)

106.    John Doe, however, "was not in the building [that day]." (Pl. Ex. 52, ECF 62-3 at PageID 2877.)

107.    Instead, the person Jane Roe was emailing faculty about was a different person, ███████████████████████, who was in the dance hallways that day. (*Id.*)

108.    Three days later, on April 4, 2022, Jane Roe and Karen Soe erroneously reported to police that John Doe was on campus. (*Id.*; Roe Dep. Vol. II 172:22 – 173:6, ECF 61-3 at PageID 1131-32; Soe Dep. 116:23 – 117:7, ECF 61-2 at PageID 988-89.)

109.    Jane Roe reported she saw "████████████████████████████████ ██████████ which is not out of the normal for what John Doe would be wearing." (Roe Dep. Vol. II 175:12-24, ECF 61-3 at PageID 1134.)

110.    Similarly, Karen Soe reported seeing a ████████████████████████ and thought he looked like John Doe. (Soe Dep. 119:10-13, ECF 61-2 at PageID 991.)

111.    The person they saw, however, was not John Doe, but rather ████████████ ████████ (*Id.* 119:6-9, at PageID 991; Roe Dep. Vol. II 176:9-19, ECF 61-3 at PageID 1135.)

112.    Karen Soe testified that after learning they called the police on ████████████, she and Jane Roe "apologized to the police and [they] felt terrible." (Soe Dep. 120:22-23, ECF 61-2 at PageID 992.)

113.    Neither Jane Roe nor Karen Soe apologized to ████████████. (*Id.* at 120:25 – 121:9, at PageID 992; Roe Dep. Vol. II 177:6-12, ECF 61-3 at PageID 1136.)

114.    UC did not permit John Doe on campus in a manner that would violate the civil protection order. (Roe Dep. Vol. II 171:3-25, ECF 61-3 at PageID 1130; Soe Dep. 116:20-22, ECF 61-2 at PageID 988; Carberry Dep. 123:17-21, ECF 61-5 at PageID 1607; Yockey Dep. 53:1-5, ECF 61-6 at PageID 1753.)

17

### JANE ROE AND KAREN SOE GRADUATED AND
### OBTAINED PROFESSIONAL JOBS AS BALLET DANCERS



115. Jane Roe graduated from CCM on █████████████████ ████ (Roe Dep. Vol. I 66:11-15, ECF 61-1 at PageID 702; *id.* at Ex. A, at PageID 836.)

116. Karen Soe graduated from CCM on █████████████████ ████ (Soe Dep. 136:13-15, 137:23 – 138:1, ECF 61-2 at PageID 1008-10; *id.* at Ex. F, at PageID 1113.)

117. Becoming a professional dancer is a highly competitive endeavor. (Jennings Dep. 189:2-5, ECF 61-11 at PageID 2640.) There are a lot of dancers for very few positions, particularly for women. (*Id.* at 189:6-8, at PageID 2640.)

118. Despite the high level of competition, Jane Roe and Karen Soe completed paid co-ops ████████████████████████████████████during their senior years at UC. (Soe Dep. 24:5-23, 26:19-22, ECF 61-2 at PageID 896-97; *id.* at Ex. A, at PageID 1110-11; Roe Dep. Vol. I Ex. A, ECF 61-1 at PageID 836.)

119. Jane Roe and Karen Soe obtained jobs at █████████████████ after graduation and continued working there until ██████████. (Roe Dep. Ex. A, ECF 61-1 at PageID 836; Soe Dep. 24:5-23, 26:19-22, ECF 61-2 at PageID 896-97; *id.* at Ex. A, at PageID 1110-11.) In ███████████████████████ ceased operations altogether. (Roe Dep. Vol. I 144:6-16, ECF 61-1 at PageID 780; Soe Dep. 182:13-23, ECF 61-2 at PageID 1054.)

120. CCM Professor Qi Jiang helped both Jane Roe and Karen Soe obtain their paid positions. (Roe Dep. Vol. I 40:11 – 41:3, ECF 61-1 at PageID 676-77; *id.* at Ex. B, at PageID 839; Soe Dep. 25:13 – 26:18, ECF 61-2 at PageID 897-98.)

121. Plaintiffs' purported expert Karen Jennings testified that she could not point to any evidence in the record that Jane Roe's or Karen Soe's reputations in the dance community were

18

harmed because of their reports about John Doe. (Jennings Dep. 184:15 – 185:3, ECF 61-11 at PageID 2635-36.)

122. Jane Roe admitted that the only evidence she had that her reputation was damaged is her own belief. (Roe Dep. Vol. I 149:11 – 150:2, ECF 61-1 at PageID 785-86.)

123. Jane Roe admitted that no one has ever told her that they thought less of her because of her allegations against John Doe. (*Id.*)

124. Jane Roe admitted that she does not even know what her reputation is. (Roe Dep. Vol. II 350:15-18, ECF 61-3 at PageID 1309.)

125. Karen Soe admitted that she has "no physical proof" that her alleged loss-of-reputation and inability to find a position as a ballerina after ███████████████████████ "was a direct result of what happened at CCM." (Soe Dep. 154:13 – 155:17, ECF 61-2 at PageID 1026-27.)

126. Karen Soe admitted that after ███████████████████ ceased operations, she did not apply to any other ballet companies. (*Id.*)

## PLAINTIFFS ADMIT THEY HAVE NO EVIDENCE OF RETALIATION

127. UC prohibits retaliation against students engaging in protected Title IX activities. (Schipper Dep. 53:23 – 54:1, ECF 61-9 at PageID 2133-34; Pl. Ex. 3, ECF 62-2, at PageID 2860.)

128. Complainants and respondents are informed of this policy when Title IX complaints are filed. (Roe Dep. Vol. I Ex. N, ECF 61-1 at PageID 860; Schipper Dep. 53:23 – 54:1, ECF 61-9 at PageID 2133-34; Pl. Ex. 3, ECF 62-2, at PageID 2860.)

129. At their depositions, when asked whether they witnessed retaliation against either plaintiff, every UC employee confirmed that they did not witness retaliation. (Carberry Dep. 162:11-15, ECF 61-5 at PageID 1646; Steele Dep. 102:2-5, ECF 61-8 at PageID 2030; Yockey

Dep. 76:12-15, ECF 61-6 at PageID 1776.)

130. Jane Roe testified she "felt like" several of her professors were retaliating against her. (Roe Dep. Vol. II 255:20-22, 256:11-17, 301:5-18, 303:5-6, ECF 61-3 at PageID 1214-15, 1260, 1262.)

131. Jane Roe testified that her feelings derived in part from being cast as a member of the *corps de ballet*[2] for one performance instead of as a soloist or lead. (*Id.* at 301:5-16, at PageID 1260.)

132. Plaintiffs' purported expert, Karen Jennings, admitted she did not find "any evidence to support that Jane Roe and Karen Soe's casting while still at UC was affected because they made accusations against John Doe." (Jennings Dep. 189:16-20, ECF 61-11 at PageID 2640.)

133. Jane Roe testified that the course grade she received in Modern Dance from Professor Steele was retaliation because "up until that point [she] had no feedback telling [her] what [she] was doing wrong in class, so [she] believed [she] was going to get an A." (Roe Dep. Vol. II 312:7-22, ECF 61-3 at PageID 1271.) Jane Roe's course grade in Modern Dance was an A-minus. (*Id.*)

134. On October 25, 2021, Jane Roe received an email from Professor Tricia Sundbeck criticizing her for "abruptly inform[ing] her [she] would not be in class," and calling it "incredibly disrespectful." (*Id.* at 253:2-14, at PageID 1212; *id.* at Ex. R, at PageID 1386.)

135. At her deposition, Jane Roe testified that Professor Sundbeck's email was "inappropriate" because she "thought the tone was very condescending and rude." (*Id.* at 253:21-24, at PageID 1212.)

136. Jane Roe also believed the email "is not something you would normally see at the

---

[2] The *corps de ballet* is the ensemble of a ballet—a group of dancers without a featured role. (Roe Dep. Vol. I 31:8-16, ECF 61-1 at PageID 667.)

20

college level" because she was an adult, so "coming to class is completely up to [her], [she's] not required to tell the instructors whether or not [she] will be there or not." (*Id.* at 254:7-15, at PageID 1213.)

137.    Jane Roe admitted the class was "graded based on mostly [the students'] attendance." (*Id.* at 251:18-19, at PageID 1210.)

138.    Jane Roe received an A in Professor Sundbeck's class that semester. (*Id.* at 252:11-14, at PageID 1211.)

139.    Jane Roe testified that she sent Assistant Dean Todd Pettiford an email requesting "to be put in another class by another instructor." (*Id.* at 256:10-25, at PageID 1215.)

140.    Jane Roe admitted that UC provided her supportive measures by switching her classes to other professors. (*Id.*)

141.    Karen Soe admitted at her deposition that she "wouldn't say [she] was threatened with retaliation." (Soe Dep. 147:13-18, ECF 61-2 at PageID 1019.)

142.    Karen Soe testified that she "can't prove that [she] was retaliated against." (*Id.* at 176:10-24, at PageID 1048.)

<div style="margin-left: 45%;">

Respectfully submitted,

D. ANDREW WILSON
ATTORNEY GENERAL OF OHIO

/s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
Michael Rogers (0098948)
Carpenter Lipps LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145

</div>

carpenter@carpenterlipps.com
bricker@carpenterlipps.com
barthel@carpenterlipps.com
rogers@carpenterlipps.com

*Special Counsel for Defendant University of Cincinnati*

22

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the foregoing was filed electronically on August 13, 2026. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Michael H. Carpenter

*Trial Attorney for Defendant University of Cincinnati*