**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

JANE ROE, et al

Plaintiffs,

v.

UNIVERSITY OF CINCINNATI,

Defendant

Case No. 1:22-cv-376

Judge: HOPKINS

RESPONSE TO DEFENDANTS STATEMENT OF PROPOSED UNDISPUTED FACTS

Plaintiffs respectfully submit this Response to Defendant's Statement of Proposed Undisputed Facts (Doc.64-1.).

**<u>Proposed Fact No. 1</u>**

Plaintiffs Jane Roe and Karen Soe attended UC from [REDACTED] . (12/18/24 Deposition of Jane Roe ("Roe Dep. Vol. I") at Ex. A, ECF 61-1 at PageID 836; 12/20/24 Deposition of Karen Soe ("Soe Dep.") at Ex. A, ECF 61-2 at PageID 1110.)

***Response:*** Agreed.

**<u>Proposed Fact No. 2</u>**

Non-party John Doe attended UC beginning in (Roe Dep. Vol. I 141:22-23, ECF 61-1 at PageID 777; Soe Dep. 35:11-18, ECF 61-2 at PageID 907.)

***Response:*** Agreed.

**<u>Proposed Fact No. 3</u>**

Jane Roe, Karen Soe, and John Doe were students together at UC's ballet program within the College Conservatory of Music ("CCM") in 2021. (Roe Dep. Vol. I 18:9-18, ECF 61-1 at PageID 654; Soe Dep. 59:17-24, ECF 61-2 at PageID 931.)

***Response:*** Agreed.

**<u>Proposed Fact No. 4</u>**

Students within CCM's ballet program take a class called "Partnering," which necessarily requires them to touch other students while dancing. (Roe Dep. Vol. I 67:18-23, ECF 61-1 at PageID 703.)

***Response:*** Agreed.

**Proposed Fact No. 5**

Ballet students also take part in ballet productions at CCM. These productions include partnered dances that also require students to touch one another. (Id. at 69:9-20, at PageID 705; Soe Dep. 85:8-15, ECF 61-2 at PageID 957.)

***Response:*** Agreed.

**Proposed Fact No. 6**

Jane Roe and Karen Soe claim that John Doe touched them inappropriately while partnering during classes and rehearsals. (Roe Dep. Vol I 87:20-24, ECF 61-1 at PageID 723; Soe Dep. 85:16 – 87:16, ECF 61-2 at PageID 957-59.)

***Response:*** Agreed.

**Proposed Fact No. 7**

Plaintiffs seek to hold UC responsible for John Doe's alleged misconduct and seek damages for loss-of-income and loss-of-reputation. (Roe Dep. Vol. I 149:11-23, ECF 61-1 at PageID 785; 1/17/25 Deposition of Jane Roe ("Roe Dep. Vol. II") 350:9 – 351:2, ECF 61-3 at PageID 1309-10; Soe Dep. 153:21 – 154:21, 156:6-23, ECF 61-2 at PageID 1025-26, 1028; Soe Dep. Ex. G, ECF 62-1, at PageID 2837.)

***Response:*** Agreed.

**Proposed Fact No. 8**

Plaintiffs' purported ballet expert, Karen Jennings, acknowledged that "it's not uncommon when partnering for a male dancer to touch the private area of a female dancer" and that "[a]ccidents happen."[1](3/2/26 Deposition of Karen Jennings ("Jennings Dep.") 75:17-24, ECF 61-11 at PageID 2526; id. at Ex. C, at PageID 2720.) She also agreed that "a slippery leotard" can "affect hand placement." (Id. 139:20-22, at PageID 2590.)

***Response:*** The proposed fact is misleading and out of context. There is significant evidence that John Doe's conduct was likely not accidental. (Jennings Depo., Doc.61-11, PageID#2627, 2591; Expert Report, Doc61-11, PageID#2702-2723; Soe Depo., Doc.61-2, PageID#976, 1041; Roe Depo., Doc61-1, PageID#714.)

**Proposed Fact No. 9**

UC maintains a Sex- and/or Gender-Based Misconduct Policy ("UC Policy") that was in effect in 2021. (6/27/25 Deposition of Shannon Schipper ("Schipper Dep.") 12:18 – 13:6, ECF 61-9 at PageID 2092-93; 3/14/25 Deposition of Ashleigh Wade ("Wade Dep.") 20:20 – 21:7, ECF 61-7 at PageID 1825-26; Plaintiffs' Exhibit ("Pl. Ex.") 4, ECF 61-12 at PageID 2725.)

***Response:*** Agreed.

**Proposed Fact No. 10**

The UC Policy provides for investigations into allegations of sexual misconduct by UC's Office of Gender Equity and Inclusion ("OGEI"). (Schipper Dep. 12:18 – 13:6, ECF 61-9 at PageID 2092-93; Wade Dep. 20:20 – 21:7, ECF 61-7 at PageID 1825-26.)

***Response:*** Agreed.

**Proposed Fact No. 11**

Adjudication of complaints, including their hearings and appeals, takes place as set forth in the Student Code of Conduct ("SCOC"). (Pl. Ex. 10, ECF 61-12 at PageID 2780.)

***Response:*** Agreed.

**Proposed Fact No. 12**

The SCOC in effect from September 2021 – April 2022 outlines the procedures for hearings and appeals on non-academic misconduct, including reports of UC Policy violations. (1/22/25 Deposition of Rachel Smith ("Smith Dep.") 21:6-7, 23:5 – 24:6, 28:6-10, ECF 61-4 at PageID 1407, 1409-10, 1414; Wade Dep. 22:6-17, ECF 61-7, at PageID 1827; Pl. Ex. 3, ECF 62- 2 at PageID 2863-66, 2871-74.)

***Response:*** Agreed.

**Proposed Fact No. 13**

In Fall 2021, Professor Deirdre Carberry cast Jane Roe as a lead in a production of [REDACTED]. (1/30/25 Deposition of Deirdre Carberry ("Carberry Dep.") 75:5-10, 76:6-8, ECF 61-5 at PageID 1559-60.)

***Response:*** Agreed.

**Proposed Fact No. 14**

Professor Carberry cast John Doe as Jane Roe's partner. (Id. at 76:16 – 77:3, at PageID 1560-61.)

***Response:*** Agreed.

**Proposed Fact No. 15**

During the first few rehearsals in September, Jane Roe alleges "a lot of the partnering wasn't even working out, like we couldn't complete turns and we couldn't do complete jumps and lifts." (Roe Dep. Vol. I 76:13 – 77:4, ECF 61-1 at PageID 712-13.)

***Response:*** During rehearsals John Doe repeatedly touched Jane Roe inappropriately. He touched Jane Roe's breasts and lowered Jane Roe from lifts very slowly, rubbing the back of Jane Roe's body against the front of his body. (Report, Doc.66-1, PageID#___, Exhibit p. 68; Title IX Complaint, Doc.61-1, PageID#857; Roe Depo., Doc.61-1, PageID#712-716.)

**Proposed Fact No. 16**

Jane Roe told Professor Carberry on September 14, 2021 that she "didn't really know why we couldn't complete things." (Id. at 79:3-4, at PageID 715; id. at Ex. M, at PageID 857.)

***Response:*** In February 2020 Jane Roe and Karen Soe met with Professor Carberry's in her office and expressed concerns about John Doe. (Roe Depo., Doc.61-1, PageID#684-686, 690; Soe Depo., Doc.61-2, PageID#1043.) Professor Carberry reported the allegations to the Title IX Office, but no formal investigation was started. In the Fall of 2021, Jane Roe had repeated her concerns about partnering with John Doe with her professor. (Roe Depo., Doc.61-1, PageID#713-715. Carberry "could see it happening…" and was aware of the misconduct. (Roe Depo., Doc.61-1, PageID#715-716.)

**Proposed Fact No. 17**

On September 28, Jane Roe apologized to Professor Carberry for her mindset and told Professor Carberry "that she wanted to talk soon." (Pl. Ex. 4, ECF 61-12 at PageID 2728; Carberry Dep. 91:23 – 92:6, ECF 61-5 at PageID 1575-76.)

***Response:*** In February 2020 Jane Roe and Karen Soe met with Professor Carberry's in her office and expressed concerns about John Doe. (Roe Depo., Doc.61-1, PageID#684-686, 690; Soe Depo., Doc.61-2, PageID#1043.) Professor Carberry reported the allegations to the Title IX Office, but no formal investigation was started. In the Fall of 2021, Jane Roe had repeated her concerns about partnering with John Doe with her professor. (Roe Depo., Doc.61-1, PageID#713-715. Carberry "could see it happening…" and was aware of the misconduct. (Roe Depo., Doc.61-1, PageID#715-716.)

**Proposed Fact No. 18**

Jane Roe did not tell Professor Carberry or anyone else at UC in September 2021 that she believed John Doe was intentionally touching her inappropriately or sexually harassing her in any way. (Roe Dep. Vol. I 76:15 – 77:15, 78:24 – 79:7, ECF 61-1 at PageID 712-15; Carberry Dep. 78:24 – 79:7, ECF 61-5, at PageID 1562-63; 3/2/2026 Deposition of Zev Steinrock ("Steinrock Dep.") 78:3-15, ECF 61-10 at PageID 2303; Jennings Dep. 128:1-6, ECF 61-11 at PageID 2579.)

***Response:*** In February 2020 Jane Roe and Karen Soe met with Professor Carberry's in her office and expressed concerns about John Doe. (Roe Depo., Doc.61-1, PageID#684-686, 690; Soe Depo., Doc.61-2, PageID#1043.) Professor Carberry reported the allegations to the Title IX Office, but no formal investigation was started. In the Fall of 2021, Jane Roe had repeated her concerns about partnering with John Doe with her professor. (Roe Depo., Doc.61-1, PageID#713-715. Carberry "could see it happening…" and was aware of the misconduct. (Roe Depo., Doc.61-1, PageID#715-716.)

**Proposed Fact No. 19**

Instead, Jane Roe "was expressing frustration … that the lifts they had been practicing with the partner that they had been practicing [sic] wasn't working, that she didn't feel like … the placement was working, and that … she didn't feel secure." (4/23/25 Deposition of Shauna Steele ("Steele Dep.") 60:18-23, ECF 61-8 at PageID 1988.)

***Response:*** In February 2020 Jane Roe and Karen Soe met with Professor Carberry's in her office and expressed concerns about John Doe. (Roe Depo., Doc.61-1, PageID#684-686, 690; Soe Depo., Doc.61-2, PageID#1043.) Professor Carberry reported the allegations to the Title IX Office, but no formal investigation was started. In the Fall of 2021, Jane Roe had repeated her concerns about partnering with John Doe with her professor. (Roe Depo., Doc.61-1, PageID#713-715. Carberry "could see it happening…" and was aware of the misconduct. (Roe Depo., Doc.61-1, PageID#715-716.)

**Proposed Fact No. 20**

Jane Roe did not "mention [John Doe] touching her breast." (Id. at 65:10-13, at PageID 1993.)

***Response:*** Jane Roe on multiple occasions complained that John Doe was touching her breasts. (Roe Depo., Doc.61-1, PageID#714-716; (Report, Doc.66-1, PageID#___, Exhibit p. 58; Title IX Complaint, Doc.61-1, PageID#857.)

**Proposed Fact No. 21**

Jane Roe described her issue with John Doe as "more about technique and instruction." (Id. at 66:16-25, at PageID 1994.)

***Response:*** During rehearsals John Doe repeatedly touched Jane Roe inappropriately. He touched Jane Roe's breasts and lowered Jane Roe from lifts very slowly, rubbing the back of Jane Roe's body against the front of his body. (Report, Doc.66-1, PageID#___, Exhibit p.58; Title IX Complaint, Doc.61-1, PageID#857; Roe Depo., Doc.61-1, PageID#712-716.)

**Proposed Fact No. 22**

After Jane Roe expressed her frustration with John Doe's technique to Professor Carberry in September 2021, Professor Carberry observed Jane Roe and John Doe dancing at rehearsal, and corrected John Doe's dancing technique. (Roe Dep. Vol. I 79:16 – 80:8, ECF 61-1 at PageID 715-16; id. at Ex. M, at PageID 857; Roe Dep. Vol. II 238:5-16, ECF 61-3 at PageID 1197; Carberry Dep. 80:22 – 82:6, ECF 61-5, at PageID 1564-66; Steinrock Dep. 102:2-10, ECF 61-10, at PageID 2327; Jennings Dep. 121:13-21, ECF 61-11, at PageID 2572.) This is called a "correction" in the ballet world. (Roe Dep. Vol. II 310:11 – 311:10, ECF 61-3 at PageID 1269- 70.)

***Response:*** In February 2020 Jane Roe and Karen Soe met with Professor Carberry's in her office and expressed concerns about John Doe. (Roe Depo., Doc.61-1, PageID#684-686, 690; Soe Depo., Doc.61-2, PageID#1043.) Professor Carberry reported the allegations to the Title IX Office, but no formal investigation was started. In the Fall of 2021, Jane Roe had repeated her concerns about partnering with John Doe with her professor. (Roe Depo., Doc.61-1, PageID#713-715. Carberry "could see it happening…" and was aware of the misconduct. (Roe Depo., Doc.61-1, PageID#715-716.) UC took no actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9, PageID#2119-2120.) Carberry did not take appropriate steps in class to correct the hand placement. (Jennings Report, Doc#: 61-11, PageID#2707, 2721.) The response from faculty was not sufficient. (Schipper Depo., Doc.61-9, PageID#2150; Steele Depo., Doc.61-8, PageID#2022.)

**Proposed Fact No. 23**

After Professor Carberry's correction, Jane Roe and John Doe "fixed it and it was fine" for the rest of the rehearsal. (Roe Dep. Vol. I 80:6-12, ECF 61-1 at PageID 716.)

***Response:*** During rehearsals John Doe repeatedly touched Jane Roe inappropriately. He touched Jane Roe's breasts and lowered Jane Roe from lifts very slowly, rubbing the back of Jane Roe's body against the front of his body. (Report, Doc.66-1, PageID#___, Exhibit p.58; Title IX Complaint, Doc.61-1, PageID#857; Roe Depo., Doc.61-1, PageID#712-716.)

**Proposed Fact No. 24**

Plaintiffs' purported expert, Karen Jennings, testified that Professor Carberry acted appropriately by providing corrections to John Doe. (Jennings Dep. 121:13 – 122:4, ECF 61-11 at PageID 2572-73.)

***Response**:* Jennings stated Carberry did not take appropriate steps in class to correct the hand placement and that "change didn't happen, nor was it required." (Jennings Report, Doc#: 61-11, PageID#2707, 2721; Jennings Depo., Doc.61-11, PageID#2578-79.) The response from faculty was not sufficient. (Schipper Depo., Doc.61-9, PageID#2150; Steele Depo., Doc.61-8, PageID#2022.)

**Proposed Fact No. 25**

Jane Roe claims that "[l]ater in the weeks to follow it happened again" after Professor Carberry corrected John Doe's technique. (Roe Dep. Vol. I 80:11-12, ECF 61-1 at PageID 716.)

***Response:*** During rehearsals John Doe repeatedly touched Jane Roe inappropriately. He touched Jane Roe's breasts and lowered Jane Roe from lifts very slowly, rubbing the back of Jane Roe's body against the front of his body. (Report, Doc.66-1, PageID#___, Exhibit p.58; Title IX Complaint, Doc.61-1, PageID#857; Roe Depo., Doc.61-1, PageID#712-716.)

**Proposed Fact No. 26**

She admitted Professor Carberry did not see the subsequent interactions because Professor Carberry "was working with the other couple that was rehearsing . . . ." (Id. at 80:19-24, at PageID 716.)

***Response:*** During rehearsals John Doe repeatedly touched Jane Roe inappropriately. He touched Jane Roe's breasts and lowered Jane Roe from lifts very slowly, rubbing the back of Jane Roe's body against the front of his body. (Report, Doc.66-1, PageID#___, Exhibit p.58; Title IX Complaint, Doc.61-1, PageID#857; Roe Depo., Doc.61-1, PageID#712-716.) In the Fall of 2021, Jane Roe had reported to Carberry her concerns about partnering with John Doe. (Roe Depo., Doc.61-1, PageID#713-715. Carberry "could see it happening…" and was aware of the misconduct. (Roe Depo., Doc.61-1, PageID#715-716.)

**Proposed Fact No. 27**

Jane Roe did not tell anyone at UC about her belief that John Doe was engaging in intentional sexual harassment until October 6, 2021. (Id. at 78:24 – 79:7, at PageID 714-15; Steinrock Dep. 80:13-20, ECF 61-10 at PageID 2305; Jennings Dep. 77:12-20, ECF 61-11 at PageID 2528.)

***Response***: In February 2020 Jane Roe and Karen Soe met with Professor Carberry's in her office and expressed concerns about John Doe. (Roe Depo., Doc.61-1, PageID#684-686, 690; Soe Depo., Doc.61-2, PageID#1043.) Professor Carberry reported the allegations to the Title IX Office, but no formal investigation was started. In the Fall of 2021, Jane Roe had repeated her concerns about partnering with John Doe with her professor. (Roe Depo., Doc.61-1, PageID#713-715. Carberry "could see it happening…" and was aware of the misconduct. (Roe Depo., Doc.61-1, PageID#715-716.) UC took no actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9, PageID#2119-2120.)

**Proposed Fact No. 28**

Jane Roe partnered with John Doe for the last time during a rehearsal on October 5, 2021. After the rehearsal, Jane Roe left without reporting anything. (Roe Dep. Vol. II 191:18 – 192:12, ECF 61-3 at PageID 1150-51.)

***Response***: In February 2020 Jane Roe and Karen Soe met with Professor Carberry's in her office and expressed concerns about John Doe. (Roe Depo., Doc.61-1, PageID#684-686, 690; Soe Depo., Doc.61-2, PageID#1043.) Professor Carberry reported the allegations to the Title IX Office, but no formal investigation was started. In the Fall of 2021, Jane Roe had repeated her concerns about partnering with John Doe with her professor. (Roe Depo., Doc.61-1, PageID#713-715. Carberry "could see it happening…" and was aware of the misconduct. (Roe Depo., Doc.61-1, PageID#715-716.)

**Proposed Fact No. 29**

The next day, October 6, Jane Roe reported to Professor Carberry that she believed John Doe's was engaging in intentional sexual harassment. (Roe Dep. Vol. I 81:10-12, 86:4-10, 87:18 – 88:13, ECF 61-1 at PageID 717, 722-24; Roe Dep. Vol. II 190:21 – 192:9, ECF 61-3 at PageID 1149-51; Steinrock Dep. 132:5-12, ECF 61-10 at PageID 2357; Jennings Dep. 77:12-20, ECF 61-11 at PageID 2528.) Jane Roe admits this is the first time she reported to anyone at UC that she believed John Doe was engaged in intentional sexual harassment. (Roe Dep. Vol. I Ex. M, ECF 61-1, at PageID 857; Roe Dep. Vol. II 190:21 – 192:9, ECF 61-3, at PageID 1149-51.)

***Response***: In February 2020 Jane Roe and Karen Soe met with Professor Carberry's in her office and expressed concerns about John Doe. (Roe Depo., Doc.61-1, PageID#684-686, 690; Soe Depo., Doc.61-2, PageID#1043.) Professor Carberry reported the allegations to the Title IX Office, but no formal investigation was started. In the Fall of 2021, Jane Roe had repeated her concerns about partnering with John Doe with her professor. (Roe Depo., Doc.61-1, PageID#713-715. Carberry "could see it happening…" and was aware of the misconduct. (Roe Depo., Doc.61-1, PageID#715-716.)

**Proposed Fact No. 30**

Professor Carberry immediately escalated the issue to her Department Chair, Professor Shauna Steele, and set up a meeting between Professor Steele and Jane Roe for the same day, October 6. (Roe Dep. Vol. I 86:11-18, ECF 61-1 at PageID 722; Carberry Dep. 98:7-13, ECF 61-5 at PageID 1582.)

***Response:*** Agreed to the extent that in October Carberry escalated the information to her Chair.

**Proposed Fact No. 31**

Plaintiffs and their purported expert, Zev Steinrock, acknowledge Professor Carberry acted appropriately by escalating Jane Roe's complaint to the chair of the department. (Roe Dep. Vol. I 102:15-22, ECF 61-1 at PageID 738; Soe Dep. 103:25 – 104:5, ECF 61-2 at PageID 975-76; Steinrock Dep. 80:24 – 81:4, ECF 61-10 at PageID 2305-06.)

***Response***: Plaintiff's expert, an experienced dance instructor, said, "I don't believe that Carberry took appropriate steps in class to correct the hand placement." (Jennings Report, Doc#: 61-11, PageID#2707.). She stated further, "I do not understand why action was not taken to protect the safety of personal space for these young dancers… I would not tolerate continued painful groping in rehearsal and performance, and would fire the dancer in a professional setting or replace them in an educational one." (Jennings Report, Doc#: 61-11, PageID#2721.) Steinrock said that faculty have the ability and obligation to identify when harmful behavior is occurring in the classroom and take appropriate actions. (Steinrock Expert Report, Doc___., PageID#___; Steinrock Depo., Doc.61-10, PageID#2378.)

**Proposed Fact No. 32**

On October 6, Jane Roe, Karen Soe, Professor Carberry, and Professor Steele met. (Roe Dep. Vol. I at 84:23 – 87:1, ECF 61-1 at PageID 720-23; Soe Dep. 102:10 – 103:24, ECF 61-2 at PageID 974-75; Carberry Dep. 98:7-13, ECF 61-5 at PageID 1582; Steele Dep. 68:4-20, ECF 61-8 at PageID 1996.)

***Response:*** Agreed.

**Proposed Fact No. 33**

Immediately after the meeting, also on October 6, Professor Steele escalated Jane Roe's report to Denton Yockey, the Head of the Division of Theatre Arts, Production, and Arts Administration at UC, who set up another meeting with Jane Roe, Karen Soe, and three of their classmates for Friday, October 8. (Roe Dep. Vol. I at 89:17-19, 90:9 – 91:13, ECF 61-1 at PageID 725-27; id. at Ex. H, at PageID 848; Soe Dep. 105:6 – 106:16, ECF 61-2 at PageID 977-78; Carberry Dep. 97:21 – 98:6, ECF 61-5 at PageID 1581-82; Steele Dep. 68:24 – 69:5, ECF 61-8 at PageID 1996-97; 2/12/2025 Deposition of Denton Yockey ("Yockey Dep.") 32:14 -33:2, ECF 61- 6 at PageID 1732-33.)

***Response:*** Agreed.

**Proposed Fact No. 34**

Plaintiffs' purported expert, Zev Steinrock, testified that it was appropriate for Professor Steele to escalate this report to Denton Yockey. (Steinrock Dep. 82:10-14, ECF 61-10 at PageID 2307.)

***Response:*** Agreed to the extent that escalation is appropriate, but Steinrock said that faculty have the ability and obligation to identify when harmful behavior is occurring in the classroom and take appropriate actions. (Steinrock Expert Report, Doc___., PageID#___; Steinrock Depo., Doc.61-10, PageID#2378.)

**Proposed Fact No. 35**

The same day as the meeting, Friday, October 8, Professor Yockey submitted a Title IX report to UC's Office of Gender Equity and Inclusion. (Roe Dep. Vol. I 94:24 – 95:11, ECF 61-1 at PageID 730-31; Soe Dep. 111:1-6, ECF 61-2 at PageID 983; Yockey Dep. 32:6-10, ECF 61-6 at PageID 1732; Pl. Ex. 25, ECF 61-12 at PageID 2784-85.)

***Response:*** Agreed.

**Proposed Fact No. 36**

Plaintiffs and their purported expert, Zev Steinrock, acknowledge Professor Yockey acted appropriately by submitting a Title IX report. (Roe Dep. Vol. I 97:5-16, ECF 61-1 at PageID 733; Soe Dep. 111:4-9, ECF 61-2 at PageID 983; Steinrock Dep. 82:15-20, ECF 61-10 at PageID 2307.)

***Response:*** Agreed to the extent that a report is appropriate, but Steinrock said that faculty have the ability and obligation to identify when harmful behavior is occurring in the classroom and take appropriate actions. (Steinrock Report, Doc#66-1, PageID#3244; Steinrock Depo., Doc.61-10, PageID#2378.)

**Proposed Fact No. 37**

OGEI is the appropriate entity at UC charged with responding to Title IX reports, including reports of sexual harassment, and conducting investigations of formal complaints of student-on-student sexual harassment. (Schipper Dep. 11:21 – 12:17, 16:10 – 22:17, ECF 61-9 at PageID 2091-92, 2096-2102.) OGEI investigators are responsible for, among other things, conducting these investigations. (Id.)

***Response:*** Faculty have the ability and obligation to identify when harmful behavior is occurring in the classroom and take appropriate actions. (Steinrock Report, Doc#66-1, PageID#3244; Steinrock Depo., Doc.61-10, PageID#2378.)

**<u>Proposed Fact No. 38</u>**

While Professor Carberry could protect students from misconduct she witnessed or was aware of in the moment, she was not permitted to unilaterally remove John Doe from her classroom or discipline him in response to Jane Roe's allegations. (Carberry Dep. 20:3-13, 23:3- 16, ECF 61-5 at PageID 1504, 1507; Steele Dep. 15:5-24, ECF 61-8 at PageID 1943; Yockey Dep. 18:14-19, 19:13-15, ECF 61-6 at PageID 1718-19; Steinrock Dep. 22:1-6; 116:7-14; 117:23 – 118:4, ECF 61-10 at PageID 2247, 2341-43.)

***Response:*** Faculty have the ability and obligation to identify when harmful behavior is occurring in the classroom and take appropriate actions. (Steinrock Report, Doc#66-1, PageID#3244; Steinrock Depo., Doc.61-10, PageID#2378.)

**<u>Proposed Fact No. 39</u>**

Professor Carberry was permitted to report to the department chair and submit a Title IX report with OGEI. (Carberry Dep. 23:3-16, ECF 61-5 at PageID 1507; Steele Dep. 15:5- 19, ECF 61-8 at PageID 1943; Yockey Dep. 19:7-15, ECF 61-6 at PageID 1719; Steinrock Dep. 22:1-6; 116:7-14; 117:23 – 118:4, ECF 61-10 at PageID 2247, 2341-43.)

***Response:*** Agreed but also Faculty have the ability and obligation to identify when harmful behavior is occurring in the classroom and take appropriate actions. (Steinrock Report, Doc#66-1, PageID#3244; Steinrock Depo., Doc.61-10, PageID#2378.)

**<u>Proposed Fact No. 40</u>**

All students accused of misconduct, including John Doe, are entitled to a presumption of non-responsibility and full access to all educational benefits unless and until they are determined to be responsible for misconduct. (Wade Dep. 49:18 – 50:13, ECF 61-7 at PageID 1854-56; Schipper Dep. 61:15 – 62:4, ECF 61-9 at PageID 2141-42; Steinrock Dep. 128:11-15, ECF 61-10 at PageID 2353.)

***Response****:* Agreed but Faculty have the ability and obligation to identify when harmful behavior is occurring in the classroom and take appropriate actions. (Steinrock Report, Doc#66-1, PageID#3244; Steinrock Depo., Doc.61-10, PageID#2378.)

**<u>Proposed Fact No. 41</u>**

Plaintiffs' purported expert, Zev Steinrock, agreed that "[t]he staff of the Title IX office" investigates allegations of sexual harassment, that "[i]t is not appropriate" for professors to investigate a sexual harassment claim, and that professors "don't have a role in the investigation of the claim." (Steinrock Dep. 21:11-25, ECF 61-10 at PageID 2246.)

***Response:*** Faculty have the ability and obligation to identify when harmful behavior is occurring in the classroom and take appropriate actions. (Steinrock Report, Doc#66-1, PageID#3244; Steinrock Depo., Doc.61-10, PageID#2378.)

**Proposed Fact No. 42**

After October 5, 2021, Jane Roe never partnered with John Doe again and does not claim to have been harassed by John Doe again. (Roe Dep. Vol. II 166:20 – 167:4, ECF 61-3 at PageID 1125-26; Carberry Dep. 113:17-19, ECF 61-5 at PageID 1597; Steele Dep. 85:21-23, ECF 61-8 at PageID 2013; Steinrock Dep. 82:21-25, ECF 61:10 at PageID 2307; Jennings Dep. 183:21- 25, ECF 61-11 at PageID 2634.)

*Response:* Agreed to the extent Jane Roe never partnered with John Doe. Jane Roe was denied educational opportunities in other ways, however. (Roe Depo., Doc61-3, PageID#1214; 1260.)

**Proposed Fact No. 43**

Both of plaintiffs' purported experts acknowledge UC acted appropriately by preventing Jane Roe from dancing with John Doe after her October 6 report. (Steinrock Dep. 82:21 – 83:3, ECF 61-10 at PageID 2307-08; Jennings Dep. 183:21 – 184:15, ECF 61-11 at PageID 2634-35.)

***Response:*** Agreed, except that UC's entire response was not sufficient. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 44**

On Monday, October 11, OGEI emailed Jane Roe to inform her that a report had been submitted and "to make [OGEI] available to speak with [Jane Roe]." (Roe Dep. Vol. I Ex. I, ECF 61-1 at PageID 849-52.)

***Response:*** Agreed.

**Proposed Fact No. 45**

Jane Roe corresponded further with OGEI on October 11 and 12 and set up an informal meeting with OGEI's assigned investigator, Shannon Schipper. (Id. at 103:12-15, at PageID 739; id. at Exs. I-K, at PageID 849-55.)

***Response:*** Agreed.

**Proposed Fact No. 46**

At the meeting, which took place on October 15, Ms. Schipper "explained everything" about the process, answered Jane Roe's questions, and allowed Jane Roe "to express what [she] wanted to express." (Id. at 106:5 – 107:20, at PageID 742-43.)

***Response:*** Jane Roe "felt pressured to not go all the way to the Title IX hearing and go through that full process." (Roe Depo., Doc.61-1, PageID#744.) OGEI initially issued a no contact order for both Jane Roe and John Doe. This No Contact Order was insufficient. (Roe Depo., Doc.61-1, PageID#762.)

**Proposed Fact No. 47**

On Thursday, October 21, Jane Roe herself filed a formal complaint with OGEI. (Id. at Ex. M, at PageID 856-58.)

***Response:*** Agreed.

**Proposed Fact No. 48**

On October 25, UC's Title IX Coordinator issued a "Mutual No-Contact Order" (the "No-Contact Order") between Jane Roe and John Doe. (Id. at Ex. N, at PageID 859, 865-67.)

***Response:*** Jane Roe "felt pressured to not go all the way to the Title IX hearing and go through that full process." (Roe Depo., Doc.61-1, PageID#744.) OGEI initially issued a no contact order for both Jane Roe and John Doe. This No Contact Order was insufficient. (Roe Depo., Doc.61-1, PageID#762.)

**Proposed Fact No. 49**

The No-Contact Order barred John Doe "from making contact of any kind" with Jane Roe, "including in person, via telephone or electronic means of any kind, including via social media or third parties." (Id. at PageID 865.)

***Response:*** Jane Roe "felt pressured to not go all the way to the Title IX hearing and go through that full process." (Roe Depo., Doc.61-1, PageID#744.) OGEI initially issued a no contact order for both Jane Roe and John Doe. This No Contact Order was insufficient. (Roe Depo., Doc.61-1, PageID#762.)

**Proposed Fact No. 50**

The No-Contact Order further prohibited "[n]on-verbal contact used to threaten or intimidate" Jane Roe, "such as using body language, proximity, intentional eye contact, star[]ing and/or other physical cues to communicate." (Id.)

***Response:*** Jane Roe "felt pressured to not go all the way to the Title IX hearing and go through that full process." (Roe Depo., Doc.61-1, PageID#744.) OGEI initially issued a no contact order for both Jane Roe and John Doe. This No Contact Order was insufficient. (Roe Depo., Doc.61-1, PageID#762.)

**Proposed Fact No. 51**

The No-Contact Order clarified that neither John Doe nor Jane Roe was "barred from accessing any part of the university's programs or activities," but stated that "[b]oth parties must make every effort in preventing their direct partnerships within shared university programs and activities." (Id.)

***Response:*** Jane Roe "felt pressured to not go all the way to the Title IX hearing and go through that full process." (Roe Depo., Doc.61-1, PageID#744.) OGEI initially issued a no contact order for both Jane Roe and John Doe. This No Contact Order was insufficient. (Roe Depo., Doc.61-1, PageID#762.)

**Proposed Fact No. 52**

Plaintiffs' purported experts agree with UC's implementation of the No-Contact Order. (Steinrock Dep. 104:16 – 105:5, ECF 61-10 at PageID 2329-30; Jennings Dep. 184:9-14, ECF 61-11 at PageID 2635.)

***Response:*** Jane Roe "felt pressured to not go all the way to the Title IX hearing and go through that full process." (Roe Depo., Doc.61-1, PageID#744.) OGEI initially issued a no contact order for both Jane Roe and John Doe. This No Contact Order was insufficient. (Roe Depo., Doc.61-1, PageID#762.)

**Proposed Fact No. 53**

In response to the No-Contact Order, Professor Steele proposed a twelve-step plan approved by OGEI outlining how to navigate both students' rights to their education while also complying with the No-Contact Order. (Roe Dep. Vol. I Ex. O, ECF 61-1 at PageID 870-72; Steele Dep. 87:9-15, ECF 61-8 at PageID 2015; Schipper Dep. 74:3-13, ECF 61-9 at PageID 2154.)

***Response:*** The UC Title IX investigator noted that Jane Roe was not receiving sufficient support from the faculty. (Schipper Depo., Doc.61-9, PageID#2150.) Steele noted that historically "there has been a lack of clarity, assistance, support, and then blame casting when faculty do reach out" and that the response to Jane Roe's complaint was wholly inadequate. (Email, Doc.66-1, PageID#___ (Ex. Page 144).) Steele further noted that faculty "had no assistance from OGEI on how to make things work…" and that they were "flying blind with no OGEI assistance or support." (Id.) Steele testified in her deposition that "the process felt slow to me." (Steele Depo., Doc.61-8, PageID#2022.)

**Proposed Fact No. 54**

As part of the twelve-step plan, CCM temporarily stopped scheduling both Jane Roe and John Doe for rehearsals to keep them separated. (Roe Dep. Vol. I 133:17 – 135:9, ECF 61-1 at PageID 769-71.)

***Response:*** Jane Roe "felt pressured to not go all the way to the Title IX hearing and go through that full process." (Roe Depo., Doc.61-1, PageID#744.) OGEI initially issued a no contact order for both Jane Roe and John Doe. This No Contact Order was insufficient. (Roe Depo., Doc.61-1, PageID#762.) The UC Title IX investigator noted that Jane Roe was not receiving sufficient support from the faculty. (Schipper Depo., Doc.61-9, PageID#2150.) Steele noted that historically "there has been a lack of clarity, assistance, support, and then blame casting when faculty do reach out" and that the response to Jane Roe's complaint was wholly inadequate. (Email, Doc.66-1, PageID#___ (Ex. Page 144).) Steele further noted that faculty "had no assistance from OGEI on how to make things work…" and that they were "flying blind with no OGEI assistance or support." (Id.) Steele testified in her deposition that "the process felt slow to me." (Steele Depo., Doc.61-8, PageID#2022.)

**Proposed Fact No. 55**

Jane Roe agreed this was correct and that she and John Doe "should have been separated and not rehearsed together." (Id.)

***Response:*** Jane Roe "felt pressured to not go all the way to the Title IX hearing and go through that full process." (Roe Depo., Doc.61-1, PageID#744.) OGEI initially issued a no contact order for both Jane Roe and John Doe. This No Contact Order was insufficient. (Roe Depo., Doc.61-1, PageID#762.)

**Proposed Fact No. 56**

Professor Steele also went to great lengths to find Jane Roe an appropriate partner to replace John Doe in Among other things, she contacted third-party professional dancers in an effort to employ them at UC's cost to replace John Doe, including one recommended by Jane Roe (he declined). (Id. at 135:15 – 136:10, 139:3 -140:15, at PageID 771-72, 775-76.)

***Response:*** Agreed to the extent that another partner was found for Jane Roe.

**Proposed Fact No. 57**

UC was ultimately able to find a replacement partner and successfully replaced John Doe. (Id.) As a result, Jane Roe was able to perform her role as the lead in the performance. (Id.)

***Response:*** Agreed to the extent that another partner was found for Jane Roe.

**Proposed Fact No. 58**

Plaintiffs' purported expert, Zev Steinrock, testified he agreed with Professor Steele's twelve-point plan. (Steinrock Dep. 140:11 – 141:4, ECF 61-10 at PageID 2365-66.)

***Response:*** This is not an accurate characterization of this testimony.

**Proposed Fact No. 59**

Ms. Schipper, the OGEI investigator, gathered documentary evidence and interviewed nine witnesses . (Schipper Dep. 36:1- 4, ECF 61-9 at PageID 2116; Pl. Ex. 4, ECF 61-12 at PageID 2724-41.)

***Response:*** Agreed, except to the extent that this was a biased and flawed investigation. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 60**

Ms. Schipper compiled the information into a Preliminary Investigation Report ("PIR"), which she provided to Jane Roe and John Doe on November 29, 2021. (Schipper Dep. 36:10-12, ECF 61-9 at PageID 2116; Pl. Ex. 64, ECF 61-12 at PageID 2800-01.)

***Response:*** Agreed, except to the extent that this was a biased and flawed investigation. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 61**

Jane Roe was permitted to provide comments to the PIR and did so on November 29, 2021. (Pl. Exs. 64-65, ECF 61-12, at PageID 2800-04.)

***Response:*** Agreed, except to the extent that this was a biased and flawed investigation. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 62**

Ms. Schipper incorporated Jane Roe's comments into a January 19, 2022, Final Investigative Report ("FIR"). (Schipper Dep. 98:20 – 99:18, ECF 61-9 at PageID 2178-79; Pl. Ex. 4, ECF 61-12 at PageID 2740-41, 2772-73.)

***Response:*** Agreed, except to the extent that this was a biased and flawed investigation. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 63**

Ms. Schipper provided the FIR to Jane Roe, John Doe, and the Office of Student Conduct & Community Standards' Administrative Review Committee ("ARC"). (Schipper Dep. 17:25 – 18:10, ECF 61-9 at PageID 2097-98.)

***Response:*** Agreed, except to the extent that this was a biased and flawed investigation. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 64**

Ms. Schipper referred the case to Ashleigh Wade, the Director of the Office of Student Conduct & Community Standards, who chaired the ARC, for a hearing. (Id. at 18:19-22, at PageID 2098; Wade Dep. 57:1-11, ECF 61-7 at PageID 1862.)

***Response:*** Agreed, except to the extent that this was a biased and flawed investigation. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 65**

The ARC scheduled and conducted a hearing on April 1, 2022 to determine whether John Doe violated the UC Policy. (Wade Dep. 59:13-20, ECF 61-7 at PageID 1864; Pl. Ex. 45, ECF 61-12 at PageID 2792.)

***Response:*** Agreed, except to the extent that this was a biased and flawed hearing. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 66**

Jane Roe submitted the names of three potential witnesses: Student 1, Student 2, and Karen Soe. (Pl. Exs. 47-49, ECF 61-12 at PageID 2794-96.)

***Response:*** Agreed.

**Proposed Fact No. 67**

Student 1 told Ms. Schipper during her interview that she "would occasionally sit in the hallway and watch [Jane Roe's] dance rehearsals" with John Doe. (Pl. Ex. 4, ECF 61-12 at PageID 2731.)

***Response:*** Agreed, except to the extent that this was a biased and flawed investigation and only represents a small portion of the evidence. *See* Response to Motion for Summary Judgment. One student told the investigator that she was aware of general concerns about John Doe's technique and that John Doe is "constantly holding [Jane Roe] and other females in the wrong positions… causing contact with private areas and causing discomfort." This student told the investigator that John Doe's hands "slide to the inner pelvis area" in some positions or "under the breasts" in other positions. This student stated that while watching Jane Roe and John Doe practicing, John Doe was not using correct hand placement. A second student told the investigator that while she never actually witnessed inappropriate touching by John Doe, she could tell that Jane Roe was upset by what had been happening in class. This student stated that twice Jane Roe "came out crying" and once "gave herself a nosebleed." She confirmed that Jane Roe had described John Doe touching her breasts and "rubbing his body down her body." A third student provided videos of rehearsals showing inappropriate conduct by John Doe. (Report, Doc66-1, PageID#___, Exhibit p.58).)

**Proposed Fact No. 68**

Student 1 also told Ms. Schipper that she "never saw 'what [she] could tell was inappropriate touching or anything' while watching Complainant's dance rehearsals." (Id.)

***Response:*** Agreed, except to the extent that this was a biased and flawed investigation and only represents a small portion of the evidence. *See* Response to Motion for Summary Judgment. One student told the investigator that she was aware of general concerns about John Doe's technique and that John Doe is "constantly holding [Jane Roe] and other females in the wrong positions… causing contact with private areas and causing discomfort." This student told the investigator that John Doe's

hands "slide to the inner pelvis area" in some positions or "under the breasts" in other positions. This student stated that while watching Jane Roe and John Doe practicing, John Doe was not using correct hand placement. A second student told the investigator that while she never actually witnessed inappropriate touching by John Doe, she could tell that Jane Roe was upset by what had been happening in class. This student stated that twice Jane Roe "came out crying" and once "gave herself a nosebleed." She confirmed that Jane Roe had described John Doe touching her breasts and "rubbing his body down her body." A third student provided videos of rehearsals showing inappropriate conduct by John Doe. (Report, Doc66-1, PageID#___, Exhibit p.58).)

**Proposed Fact No. 69**

John Doe submitted the names of three potential witnesses: Student 3, Student 4, and Student 5. (Pl. Ex. 9, ECF 61-12 at PageID 2779.)

***Response:*** Agreed.

**Proposed Fact No. 70**

Student 3 told Ms. Schipper during his interview that he was present for rehearsals and "never witnessed [John Doe] inappropriately touching [Jane Roe]." (Pl. Ex. 4, ECF 61-12 at PageID 2735.)

***Response:*** Agreed, except to the extent that this was a biased and flawed investigation and only represents a small portion of the evidence. *See* Response to Motion for Summary Judgment. One student told the investigator that she was aware of general concerns about John Doe's technique and that John Doe is "constantly holding [Jane Roe] and other females in the wrong positions… causing contact with private areas and causing discomfort." This student told the investigator that John Doe's hands "slide to the inner pelvis area" in some positions or "under the breasts" in other positions. This student stated that while watching Jane Roe and John Doe practicing, John Doe was not using correct hand placement. A second student told the investigator that while she never actually witnessed inappropriate touching by John Doe, she could tell that Jane Roe was upset by what had been happening in class. This student stated that twice Jane Roe "came out crying" and once "gave herself a nosebleed." She confirmed that Jane Roe had described John Doe touching her breasts and "rubbing his body down her body." A third student provided videos of rehearsals showing inappropriate conduct by John Doe. (Report, Doc66-1, PageID#___, Exhibit p.58).)

**Proposed Fact No. 71**

The hearing took place on April 1, 2022. (Roe Dep. Vol. II 213:18-20, ECF 61-3 at PageID 1172; Pl. Ex. 8, ECF 61-12 at PageID 2777-78.)

***Response:*** Agreed, except to the extent that this was a biased and flawed hearing. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 72**

Jane Roe was permitted to bring an advisor to the hearing. She brought Claudia Uchtman from UC's Women Helping Women group. (Roe Dep. Vol. II 214:22 – 215:6, ECF 61- 3 at PageID 1173-74.) Ms. Schipper put Jane Roe in contact with Ms. Uchtman. (Id. at 216:2-5, at PageID 1175.)

***Response:*** Agreed, except to the extent that this was a biased and flawed hearing. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 73**

At the hearing, Jane Roe and John Doe gave full opening statements. (Id. at 218:1- 19, Page ID 1177.)

***Response:*** Agreed, except to the extent that this was a biased and flawed hearing. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 74**

Jane Roe and John Doe also answered questions from the hearing panel members. Jane Roe and John Doe additionally questioned each other through written questions submitted to the panel. (Id. at 218:21 – 219:8, at PageID 1177-78.)

***Response:*** Agreed, except to the extent that this was a biased and flawed hearing. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 75**

One witness for Jane Roe (Student 1) and one witness for John Doe (Student 3), who each observed Jane Roe and John Doe dance together, were permitted to testify and answer the hearing panel's questions, as well as questions submitted by Jane Roe and John Doe. (Id. at 219:12-19, at PageID 1178.)

***Response:*** Agreed, except to the extent that this was a biased and flawed hearing. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 76**

Student 1 and Student 3 testified consistently with what they told Ms. Schipper as reported in the FIR. (Id. at 219:25 – 220:11, at PageID 1178-79.)

***Response:*** Agreed, except to the extent that this was a biased and flawed hearing. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 77**

Jane Roe and John Doe gave full closing statements, and then the hearing concluded. (Id. at 247:14 – 248:6, at PageID 1206-07.)

***Response:*** Agreed, except to the extent that this was a biased and flawed hearing. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 78**

On April 1, the ARC unanimously determined that John Doe did not violate the UC Policy. (Pl. Ex. 8, ECF 61-12 at PageID 2777-78.)

***Response:*** Agreed, except to the extent that this was a biased and flawed hearing. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 79**

The ARC found that the physical contact Jane Roe alleged did occur, but the ARC "[did] not believe that [John Doe's] actions were of a sexual nature" or that he "engaged in physical or verbal conduct based on [Jane Roe's] sex and/or gender identity." (Id.)

***Response:*** Agreed, except to the extent that this was a biased and flawed hearing. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 80**

Jane Roe submitted two appeals regarding the ARC's finding that John Doe did not violate the UC Policy. (Pl. Exs. 6-7, ECF 61-12 at PageID 2774-76; Roe Dep. Vol. II 275:3-5, ECF 61-3 at PageID 1234.)

***Response:*** Agreed.

**Proposed Fact No. 81**

The University Appeals Administrator ("UAA") found that the appeals lacked merit and the Dean of Students accepted the UAA decision, making the ARC's finding that John Doe did not violate the UC Policy final. (Pl. Ex. 10, ECF 61-12 at PageID 2780-81; Roe Dep. Vol. II 284:21-23, ECF 61-3 at PageID 1243.)

***Response:*** Agreed, except to the extent that this was a biased and flawed process. *See* Response to Motion for Summary Judgment.

**Proposed Fact No. 82**

On February 24, 2020, Jane Roe met with Professor Carberry and reported that two girls in her class told her that John Doe had harassed a girl at the (unaffiliated with UC), during the same timeframe Karen Soe was attending classes at many years ago. (Roe Dep. Vol. I 48:1-25, ECF 61-1 at PageID 684; id. at Ex. E, at PageID 844.)

***Response:*** Jane Roe and Karen Soe told Carberry that John Doe had been credibly accused of sexual misconduct by other female dancers at a local ballet academy prior to his enrollment at UC. (Email, Doc.61-1, PageID#844; Roe Depo., Doc.61-1, PageID#684-686; Soe Depo., Doc.61-2, PageID#1043.). Roe had emailed Professor Carberry to report that someone had "witnessed him touching [another student's] breast in… rehearsal." She added, "He is always aggressive in class and rehearsals. A lot of the girls agreed that he makes everyone uncomfortable." (Email, Doc.61-1, PageID#844.) During the meeting Jane Roe told Carberry she had witnessed inappropriate conduct in class by John Doe with other women. (Roe Depo., Doc61-1, PageID#690.) A letter in UC's possession noted that John Doe had been accused by two students of touching them inappropriately while dancing at the local ballet academy. (Letter, Doc.66-1, PageID#___, Exhibit p.121.) The author of the letter said to UC, "I hope this will serve as documentation of what she stated/experienced as well as be on file if ever there is a need to refer back to what transpired." (Letter, Doc.66-1, PageID#___, Exhibit p.121.) Another student had obtained a protection order against John Doe. (Order, Doc.66-1, PageID#___, Exhibit p.123.) The ballet community is small and the accusations against John Doe were "plausibly" common knowledge in the Cincinnati dance community in general and among CCM faculty, in particular. (Soe Depo., Doc.61-2, PageID#1167.)

**Proposed Fact No. 84**

The same day as Professor Carberry's report—February 24—OGEI emailed Jane Roe. (Roe Dep. Vol. I Ex. F, ECF 61-1 at PageID 846-47.)

***Response:*** UC took no substantive actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9,

PageID#2119-2120.) In 2020, faculty at CCM responded only by setting up a meeting with John Doe. Carberry, particular, had the ability to take actions to prevent the harassment in the classroom, yet did not. (Jennings Report, Doc#: 61-11, PageID#2707; 2721.)

**Proposed Fact No. 85**

OGEI's February 24 email provided her a "process guide for information related to the Title IX process," invited Jane Roe to "reach out to our office if [she] ha[d] any questions or concerns," and asked her to "pass[] this information along" to the classmates she reported on behalf of who may have knowledge and to "let [her] friends know that if they need our services we are here and available." (Id.)

***Response:*** Agreed, but UC took no substantive actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9, PageID#2119-2120.) In 2020, faculty at CCM responded only by setting up a meeting with John Doe. Carberry, in particular, had the ability to take actions to prevent the harassment in the classroom, yet did not. (Jennings Report, Doc#: 61-11, PageID#2707, 2721; Steinbeck Report., Doc66-2, PageID#3246.)

**Proposed Fact No. 86**

On March 12, 2020, after receiving no response from Jane Roe to OGEI's February 24 email, OGEI sent a follow-up email to Jane Roe. (Id. at PageID 845-46.)

***Response:*** Agreed, but UC took no substantive actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9, PageID#2119-2120.) .) In 2020, faculty at CCM responded only by setting up a meeting with John Doe. Carberry, in particular, had the ability to take actions to prevent the harassment in the classroom, yet did not. (Jennings Report, Doc#: 61-11, PageID#2707, 2721; Steinbeck Report., Doc66-2, PageID#3246.)

**Proposed Fact No. 87**

OGEI's March 12 email stated its purpose was "to make sure that [Jane Roe] ha[d] received the information," reassure her that "[n]o one is obligated to meet with our office—we just want to make sure that they are aware of resources available to them," and ask her again to "pass[] this along." (Id.)

***Response:*** Agreed, but UC took no substantive actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9, PageID#2119-2120.) .) In 2020, faculty at CCM responded only by setting up a meeting with John Doe. Carberry, in particular, had the ability to take actions to prevent the harassment in the classroom, yet did not. (Jennings Report, Doc#: 61-11, PageID#2707, 2721; Steinbeck Report., Doc66-2, PageID#3246.)

**Proposed Fact No. 88**

On March 12, Jane Roe responded to OGEI's email. (Id. at PageID 845.) She confirmed that she "passed the information along when [she] received it," and stated, "We all have been very busy with our full schedules and rehearsals. Thank you." (Id.)

***Response:*** Agreed, but UC took no substantive actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9,

PageID#2119-2120.) .) In 2020, faculty at CCM responded only by setting up a meeting with John Doe. Carberry, in particular, had the ability to take actions to prevent the harassment in the classroom, yet did not. (Jennings Report, Doc#: 61-11, PageID#2707, 2721; Steinbeck Report., Doc66-2, PageID#3246.)

**Proposed Fact No. 89**

Jane Roe confirmed at her deposition that she "immediately passed the information along to [Karen Soe] and whoever else was concerned at the time." (Id. at 55:6-8, at PageID 691.)

***Response:*** Agreed, but UC took no substantive actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9, PageID#2119-2120.) .) In 2020, faculty at CCM responded only by setting up a meeting with John Doe. Carberry, in particular, had the ability to take actions to prevent the harassment in the classroom, yet did not. (Jennings Report, Doc#: 61-11, PageID#2707, 2721; Steinbeck Report., Doc66-2, PageID#3246.)

**Proposed Fact No. 90**

OGEI followed up with Jane Roe once more on March 12, but neither Jane Roe, Karen Soe, nor anyone else responded to OGEI's invitation to meet and did not follow up with OGEI. (Id. at Ex. F, at PageID 845.)

***Response:*** Agreed, but UC took no substantive actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9, PageID#2119-2120.) .) In 2020, faculty at CCM responded only by setting up a meeting with John Doe. Carberry, in particular, had the ability to take actions to prevent the harassment in the classroom, yet did not. (Jennings Report, Doc#: 61-11, PageID#2707, 2721; Steinbeck Report., Doc66-2, PageID#3246.)

**Proposed Fact No. 91**

On March 18, 2020, per standard practice, OGEI followed up with the reporting party, Professor Carberry, but she did not have additional information. (Carberry Dep. 68:7 – 69:6, ECF 61-5 at PageID 1552-53; Motion to Dismiss Ex. B, Declaration of Alexa Justice ¶ 4, ECF 18- 2 at PageID 207; id. at Att. B-2, at PageID 210.)

***Response:*** Agreed, but UC took no substantive actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9, PageID#2119-2120.) .) In 2020, faculty at CCM responded only by setting up a meeting with John Doe. Carberry, in particular, had the ability to take actions to prevent the harassment in the classroom, yet did not. (Jennings Report, Doc#: 61-11, PageID#2707, 2721; Steinbeck Report., Doc66-2, PageID#3246.)

**Proposed Fact No. 92**

Despite this, CCM attempted to address Jane Roe's concerns directly with John Doe on March 4, 2020. (Pl. Ex. 35, ECF 61-12 at PageID 2786-87.)

***Response:*** Agreed, but UC took no substantive actions when the allegations against John Doe were reported to Professor Carberry and the Title IX Office in March 2020. (Schipper Depo., Doc.61-9, PageID#2119-2120.) In 2020, faculty at CCM responded only by setting up a meeting with John

Doe. Carberry, in particular, had the ability to take actions to prevent the harassment in the classroom, yet did not. (Jennings Report, Doc#: 61-11, PageID#2707; 2721.) Plaintiff's expert indicated that this meeting was insufficient to address the problem, noting that "there seems to be no encouragement to repair trust between the students, nor to address larger culture issues in the department." (Steinrock Report, Doc.66-2, PageID#3249.)

**Proposed Fact No. 93**

On either October 8, 2021 or October 22, 2021, Karen Soe partnered with John Doe in class. (Compare Soe Dep. 92:2-11, ECF 61-2 at PageID 964, with id. at 93:22 – 94:15, at PageID 965-66.)

***Response:*** Soe said: John Doe "grabbed around my breast and around my leg, lifted me up and then slowly dragged me down the front of his body, which was incorrect technique and not at all the move that we were supposed to be practicing." (Soe Depo., Doc.61-2, PageID#959.)

**Proposed Fact No. 94**

Karen Soe testified that John Doe touched her inappropriately during this single dance, using "incorrect technique" and not performing "the move that [they] were supposed to be practicing." (Id. at 87:14-16, at PageID 959.)

***Response:*** Soe said: John Doe "grabbed around my breast and around my leg, lifted me up and then slowly dragged me down the front of his body, which was incorrect technique and not at all the move that we were supposed to be practicing." (Soe Depo., Doc.61-2, PageID#959.)

**Proposed Fact No. 95**

***Response:*** Soe said: John Doe "grabbed around my breast and around my leg, lifted me up and then slowly dragged me down the front of his body, which was incorrect technique and not at all the move that we were supposed to be practicing." (Soe Depo., Doc.61-2, PageID#959.)

**Proposed Fact No. 96**

Karen Soe admits she had only one allegedly inappropriate interaction with John Doe. (Id. at 90:13-18, at PageID 962.)

***Response:*** Soe said she was touched inappropriately once by John Doe at UC. Soe said: John Doe "grabbed around my breast and around my leg, lifted me up and then slowly dragged me down the front of his body, which was incorrect technique and not at all the move that we were supposed to be practicing." (Soe Depo., Doc.61-2, PageID#959.)

**Proposed Fact No. 97**

During her November 5, 2021, witness interview with Ms. Schipper related to the OGEI investigation of Jane Roe's report, Karen Soe shared information with UC about the October 2021 interaction with John Doe for the first time. (Id. at 87:23 – 88:7, 88:20-22, 89:8-16, at PageID 959-61; Pl. Exs. 62-63, ECF 61-12 at PageID 2797-99.)

***Response***: Karen Soe told Schipper that she had previously partnered with John Doe and the same thing happened" to her. She also shared with Schipper a text to Jane Roe stating "You could put me down as a fellow victim if that's an option" Karen Soe then described to Schipper how John Doe had touched her inappropriately during a class at UC. (Report, Doc66-1, PageID#___, Exhibit p.64.)

**Proposed Fact No. 98**

After this one alleged incident in October 2021, Karen Soe never partnered with John Doe again and does not claim any further harassment. (Soe Dep. 90:13-18, 100:22-25, ECF 61-2 at PageID 962, 972; Pl. Ex. 62, ECF 61-12 at PageID 2797.)

***Response***: Karen Soe did not partner with John Doe, but testified that she was denied education opportunities in partnering classes as a result. (Soe Depo., Doc.61-2, PageID#1030-31)

**Proposed Fact No. 99**

Plaintiffs' purported experts agreed that it was appropriate for Karen Soe and John Doe not to partner with each other again. (Steinrock Dep. 84:22 – 85:12, ECF 61-10 at PageID 2309-10; Jennings Dep. 184:1-14, ECF 61-11 at PageID 2635.)

***Response*** Plaintiff's expert agreed that it was appropriate for the students to not partner with John Doe, but did not agree that UC's response was sufficient or aligned with best practices. (Steinrock Report, Doc.66-2, PageID#3246-3249.)

**Proposed Fact No. 100**

Karen Soe did not want to file her own formal Title IX complaint against John Doe. (Soe Dep. 127:5-7, ECF 61-2 at PageID 999.)

***Response***: Karen Soe told the Title IX investigator about John Doe's inappropriate conduct and indicated that she was also a victim. (Report, Doc.66-1, PageID#____, Exhibit p.64; Soe Depo., Doc.66-2, PageID#998.)

**Proposed Fact No. 101**

Karen Soe preferred to participate only as a witness in Jane Roe's matter, stating being interviewed as a witness for Jane Roe's complaint "would be enough." (Id., 127:2-4, at PageID 999.)

***Response***: Karen Soe told the Title IX investigator about John Doe's inappropriate conduct and indicated that she was also a victim. (Report, Doc.66-1, PageID#____, Exhibit p.64; Soe Depo., Doc.66-2, PageID#998.)

**Proposed Fact No. 102**

On November 1, 2021, Jane Roe obtained an ex parte civil protection order against John Doe from the Hamilton County, Ohio Court of Common Pleas. (Jane Roe Dep. Vol. II 167:5- 11, ECF 61-1 at PageID 1126; Motion to Dismiss Ex. A, Declaration of David J. Barthel ¶ 3, ECF 18-1 at PageID 158; id. at Att. A-1, at PageID 160-206.)

***Response***: Agreed.

**Proposed Fact No. 103**

The civil protection order barred John Doe from being at CCM while Jane Roe was there. (Id. at 167:5-11, at PageID 1126.)

***Response***: Agreed.

**Proposed Fact No. 104**

After the protection order was entered, Karen Soe never saw John Doe on campus. (Soe Dep. 116:20-22, ECF 61-2 at PageID 988.)

***Response***: Agreed.

**Proposed Fact No. 105**

On April 1, 2022, the day of the ARC hearing, Jane Roe emailed several UC faculty stating she "was told that [John Doe] was seen in the dance hallways today after the hearing." and that this was inappropriate. (Roe Dep. Vol. II 171:3 – 172:18, ECF 61-3 at PageID 1130-31; Pl. Ex. 52, ECF 62-3 at PageID 2876.)

***Response:*** On one occasion Roe, believing that John Doe was in Professor Steele's office on campus in violation of the protection order, contacted the police. (Roe Depo., Doc.61-3, PageID#1310.) Jane Roe and Karen Soe testified that when police informed them of the misidentification, they "apologized to the police and… felt terrible," and that they had been following a standing instruction from police "to call if [they] ever thought that he was there." (Roe Depo., Doc.61-3, PageID#11135; Soe Depo., Doc.61-2, PageID#992-993.) Professor Steele was upset with the police, but not Jane Roe. (Steele Depo., Doc.61-8, PageID#2026-2027 ("That doesn't mean that [Jane Roe] hearing this shouldn't have reported it, feeling that she was unsafe…").)

**Proposed Fact No. 106**

John Doe, however, "was not in the building [that day]." (Pl. Ex. 52, ECF 62-3 at PageID 2877.)

***Response:*** On one occasion Roe, believing that John Doe was in Professor Steele's office on campus in violation of the protection order, contacted the police. (Roe Depo., Doc.61-3, PageID#1310.) Jane Roe and Karen Soe testified that when police informed them of the misidentification, they "apologized to the police and… felt terrible," and that they had been following a standing instruction from police "to call if [they] ever thought that he was there." (Roe Depo., Doc.61-3, PageID#11135; Soe Depo., Doc.61-2, PageID#992-993.) Professor Steele was upset with the police, but not Jane Roe. (Steele Depo., Doc.61-8, PageID#2026-2027 ("That doesn't mean that [Jane Roe] hearing this shouldn't have reported it, feeling that she was unsafe…").)

**Proposed Fact No. 107**

Instead, the person Jane Roe was emailing faculty about was a different person, , who was in the dance hallways that day. (Id.)

***Response:*** On one occasion Roe, believing that John Doe was in Professor Steele's office on campus in violation of the protection order, contacted the police. (Roe Depo., Doc.61-3, PageID#1310.) Jane Roe and Karen Soe testified that when police informed them of the misidentification, they "apologized to the police and… felt terrible," and that they had been following a standing instruction from police "to call if [they] ever thought that he was there." (Roe Depo., Doc.61-3, PageID#11135; Soe Depo., Doc.61-2, PageID#992-993.) Professor Steele was upset with the police, but not Jane Roe. (Steele Depo., Doc.61-8, PageID#2026-2027 ("That doesn't mean that [Jane Roe] hearing this shouldn't have reported it, feeling that she was unsafe…").)

**Proposed Fact No. 108**

Three days later, on April 4, 2022, Jane Roe and Karen Soe erroneously reported to police that John Doe was on campus. (Id.; Roe Dep. Vol. II 172:22 – 173:6, ECF 61-3 at PageID 1131-32; Soe Dep. 116:23 – 117:7, ECF 61-2 at PageID 988-89.)

***Response:*** On one occasion Roe, believing that John Doe was in Professor Steele's office on campus in violation of the protection order, contacted the police. (Roe Depo., Doc.61-3, PageID#1310.) Jane Roe and Karen Soe testified that when police informed them of the misidentification, they "apologized to the police and… felt terrible," and that they had been following a standing instruction from police "to call if [they] ever thought that he was there." (Roe Depo., Doc.61-3,

PageID#11135; Soe Depo., Doc.61-2, PageID#992-993.) Professor Steele was upset with the police, but not Jane Roe. (Steele Depo., Doc.61-8, PageID#2026-2027 ("That doesn't mean that [Jane Roe] hearing this shouldn't have reported it, feeling that she was unsafe…").)

**Proposed Fact No. 109**

Jane Roe reported she saw " which is not out of the normal for what John Doe would be wearing." (Roe Dep. Vol. II 175:12-24, ECF 61-3 at PageID 1134.)

***Response:*** On one occasion Roe, believing that John Doe was in Professor Steele's office on campus in violation of the protection order, contacted the police. (Roe Depo., Doc.61-3, PageID#1310.) Jane Roe and Karen Soe testified that when police informed them of the misidentification, they "apologized to the police and… felt terrible," and that they had been following a standing instruction from police "to call if [they] ever thought that he was there." (Roe Depo., Doc.61-3, PageID#11135; Soe Depo., Doc.61-2, PageID#992-993.) Professor Steele was upset with the police, but not Jane Roe. (Steele Depo., Doc.61-8, PageID#2026-2027 ("That doesn't mean that [Jane Roe] hearing this shouldn't have reported it, feeling that she was unsafe…").)

**Proposed Fact No. 110**

Similarly, Karen Soe reported seeing a and thought he looked like John Doe. (Soe Dep. 119:10-13, ECF 61-2 at PageID 991.)

***Response:*** On one occasion Roe, believing that John Doe was in Professor Steele's office on campus in violation of the protection order, contacted the police. (Roe Depo., Doc.61-3, PageID#1310.) Jane Roe and Karen Soe testified that when police informed them of the misidentification, they "apologized to the police and… felt terrible," and that they had been following a standing instruction from police "to call if [they] ever thought that he was there." (Roe Depo., Doc.61-3, PageID#11135; Soe Depo., Doc.61-2, PageID#992-993.) Professor Steele was upset with the police, but not Jane Roe. (Steele Depo., Doc.61-8, PageID#2026-2027 ("That doesn't mean that [Jane Roe] hearing this shouldn't have reported it, feeling that she was unsafe…").)

**Proposed Fact No. 111**

The person they saw, however, was not John Doe, but rather (Id. 119:6-9, at PageID 991; Roe Dep. Vol. II 176:9-19, ECF 61-3 at PageID 1135.)

***Response:*** On one occasion Roe, believing that John Doe was in Professor Steele's office on campus in violation of the protection order, contacted the police. (Roe Depo., Doc.61-3, PageID#1310.) Jane Roe and Karen Soe testified that when police informed them of the misidentification, they "apologized to the police and… felt terrible," and that they had been following a standing instruction from police "to call if [they] ever thought that he was there." (Roe Depo., Doc.61-3, PageID#11135; Soe Depo., Doc.61-2, PageID#992-993.) Professor Steele was upset with the police, but not Jane Roe. (Steele Depo., Doc.61-8, PageID#2026-2027 ("That doesn't mean that [Jane Roe] hearing this shouldn't have reported it, feeling that she was unsafe…").)

**Proposed Fact No. 112**

Karen Soe testified that after learning they called the police on , she and Jane Roe "apologized to the police and [they] felt terrible." (Soe Dep. 120:22-23, ECF 61- 2 at PageID 992.)

***Response:*** On one occasion Roe, believing that John Doe was in Professor Steele's office on campus in violation of the protection order, contacted the police. (Roe Depo., Doc.61-3, PageID#1310.) Jane Roe and Karen Soe testified that when police informed them of the misidentification, they

"apologized to the police and… felt terrible," and that they had been following a standing instruction from police "to call if [they] ever thought that he was there." (Roe Depo., Doc.61-3, PageID#11135; Soe Depo., Doc.61-2, PageID#992-993.) Professor Steele was upset with the police, but not Jane Roe. (Steele Depo., Doc.61-8, PageID#2026-2027 ("That doesn't mean that [Jane Roe] hearing this shouldn't have reported it, feeling that she was unsafe…").)

**Proposed Fact No. 113**

Neither Jane Roe nor Karen Soe apologized to . (Id. at 120:25 – 121:9, at PageID 992; Roe Dep. Vol. II 177:6-12, ECF 61-3 at PageID 1136.)

***Response:*** On one occasion Roe, believing that John Doe was in Professor Steele's office on campus in violation of the protection order, contacted the police. (Roe Depo., Doc.61-3, PageID#1310.) Jane Roe and Karen Soe testified that when police informed them of the misidentification, they "apologized to the police and… felt terrible," and that they had been following a standing instruction from police "to call if [they] ever thought that he was there." (Roe Depo., Doc.61-3, PageID#11135; Soe Depo., Doc.61-2, PageID#992-993.) Professor Steele was upset with the police, but not Jane Roe. (Steele Depo., Doc.61-8, PageID#2026-2027 ("That doesn't mean that [Jane Roe] hearing this shouldn't have reported it, feeling that she was unsafe…").)

**Proposed Fact No. 114**

UC did not permit John Doe on campus in a manner that would violate the civil protection order. (Roe Dep. Vol. II 171:3-25, ECF 61-3 at PageID 1130; Soe Dep. 116:20-22, ECF 61-2 at PageID 988; Carberry Dep. 123:17-21, ECF 61-5 at PageID 1607; Yockey Dep. 53:1-5, ECF 61-6 at PageID 1753.)

***Response:*** Agreed.

**Proposed Fact No. 115**

Jane Roe graduated from CCM on (Roe Dep. Vol. I 66:11-15, ECF 61-1 at PageID 702; id. at Ex. A, at PageID 836.)

***Response:*** Agreed.

**Proposed Fact No. 116**

Karen Soe graduated from CCM on (Soe Dep. 136:13-15, 137:23 – 138:1, ECF 61-2 at PageID 1008-10; id. at Ex. F, at PageID 1113.)

***Response:*** Agreed.

**Proposed Fact No. 117**

Becoming a professional dancer is a highly competitive endeavor. (Jennings Dep. 189:2-5, ECF 61-11 at PageID 2640.) There are a lot of dancers for very few positions, particularly for women. (Id. at 189:6-8, at PageID 2640.)

***Response:*** Agreed.

**Proposed Fact No. 118**

Despite the high level of competition, Jane Roe and Karen Soe completed paid coops during their senior years at UC. (Soe Dep. 24:5-23, 26:19-22, ECF 61-2 at PageID 896-97; id. at Ex. A, at PageID 1110-11; Roe Dep. Vol. I Ex. A, ECF 61-1 at PageID 836.)

***Response:*** Agreed.

**Proposed Fact No. 119**

Jane Roe and Karen Soe obtained jobs at after graduation and continued working there until . (Roe Dep. Ex. A, ECF 61-1 at PageID 836; Soe Dep. 24:5-23, 26:19-22, ECF 61-2 at PageID 896-97; id. at Ex. A, at PageID 1110-11.) In ceased operations altogether. (Roe Dep. Vol. I 144:6-16, ECF 61-1 at PageID 780; Soe Dep. 182:13-23, ECF 61-2 at PageID 1054.)

***Response:*** Agreed.

**Proposed Fact No. 120**

CCM Professor Qi Jiang helped both Jane Roe and Karen Soe obtain their paid positions. (Roe Dep. Vol. I 40:11 – 41:3, ECF 61-1 at PageID 676-77; id. at Ex. B, at PageID 839; Soe Dep. 25:13 – 26:18, ECF 61-2 at PageID 897-98.)

***Response:*** Agreed.

**Proposed Fact No. 121**

Plaintiffs' purported expert Karen Jennings testified that she could not point to any evidence in the record that Jane Roe's or Karen Soe's reputations in the dance community were harmed because of their reports about John Doe. (Jennings Dep. 184:15 – 185:3, ECF 61-11 at PageID 2635-36.)

***Response:*** Jane Roe testified that she believes she "was seen as a complainer and not a team player" and that this affected "what's been shared about me in the ballet community" and that she does not know "what people are saying behind closed doors" in a ballet world that "is very small." (Roe Depo, Doc61-1, PageID#785; Roe Depo., Doc.61-3, PageID#1309.) She further testified that she was treated differently by professors, including not getting feedback and prominent roles (Roe Depo., Doc61-3, PageID#1214, 1260.) Karen Soe testified that she suffered retaliation from faulty and was "not confident" any CCM professor other than one, "would assist me in getting a job" and that she was denied every job application she submitted in 2022. (Soe Depo, Doc61-2, PageID#1026, 1049.)

**Proposed Fact No. 122**

Jane Roe admitted that the only evidence she had that her reputation was damaged is her own belief. (Roe Dep. Vol. I 149:11 – 150:2, ECF 61-1 at PageID 785-86.)

***Response:*** Jane Roe testified that she believes she "was seen as a complainer and not a team player" and that this affected "what's been shared about me in the ballet community" and that she does not know "what people are saying behind closed doors" in a ballet world that "is very small." (Roe Depo, Doc61-1, PageID#785; Roe Depo., Doc.61-3, PageID#1309.) She further testified that she was treated differently by professors, including not getting feedback and prominent roles (Roe Depo., Doc61-3, PageID#1214, 1260.)

**Proposed Fact No. 123**

Jane Roe admitted that no one has ever told her that they thought less of her because of her allegations against John Doe. (Id.)

***Response:*** Jane Roe testified that she believes she "was seen as a complainer and not a team player" and that this affected "what's been shared about me in the ballet community" and that she does not know "what people are saying behind closed doors" in a ballet world that "is very small." (Roe

Depo, Doc61-1, PageID#785; Roe Depo., Doc.61-3, PageID#1309.) She further testified that she was treated differently by professors, including not getting feedback and prominent roles (Roe Depo., Doc61-3, PageID#1214, 1260.)

**Proposed Fact No. 124**

Jane Roe admitted that she does not even know what her reputation is. (Roe Dep. Vol. II 350:15-18, ECF 61-3 at PageID 1309.)

***Response:*** Jane Roe testified that she believes she "was seen as a complainer and not a team player" and that this affected "what's been shared about me in the ballet community" and that she does not know "what people are saying behind closed doors" in a ballet world that "is very small." (Roe Depo, Doc61-1, PageID#785; Roe Depo., Doc.61-3, PageID#1309.) She further testified that she was treated differently by professors, including not getting feedback and prominent roles. (Roe Depo., Doc61-3, PageID#1214, 1260.)

**Proposed Fact No. 125**

Karen Soe admitted that she has "no physical proof" that her alleged loss-of reputation and inability to find a position as a ballerina after "was a direct result of what happened at CCM." (Soe Dep. 154:13 – 155:17, ECF 61-2 at PageID 1026- 27.)

***Response***: Karen Soe testified that she suffered retaliation from faculty and was "not confident" any CCM professor other than one, "would assist me in getting a job" and that she was denied every job application she submitted in 2022. (Soe Depo, Doc61-2, PageID#1026, 1049.)

**Proposed Fact No. 126**

Karen Soe admitted that after ceased operations, she did not apply to any other ballet companies. (Id.)

***Response***: Agreed. Karen Soe also testified that she suffered retaliation from faculty and was "not confident" any CCM professor other than one, "would assist me in getting a job" and that she was denied every job application she submitted in 2022. (Soe Depo, Doc61-2, PageID#1026, 1049.)

**Proposed Fact No. 127**

UC prohibits retaliation against students engaging in protected Title IX activities. (Schipper Dep. 53:23 – 54:1, ECF 61-9 at PageID 2133-34; Pl. Ex. 3, ECF 62-2, at PageID 2860.)

***Response:*** Agreed to the extent that UC has a policy.

**Proposed Fact No. 128**

Complainants and respondents are informed of this policy when Title IX complaints are filed. (Roe Dep. Vol. I Ex. N, ECF 61-1 at PageID 860; Schipper Dep. 53:23 – 54:1, ECF 61- 9 at PageID 2133-34; Pl. Ex. 3, ECF 62-2, at PageID 2860.)

***Response:*** Agreed to the extent that UC has a policy.

**Proposed Fact No. 129**

At their depositions, when asked whether they witnessed retaliation against either plaintiff, every UC employee confirmed that they did not witness retaliation. (Carberry Dep. 162:11-15, ECF 61-5 at PageID 1646; Steele Dep. 102:2-5, ECF 61-8 at PageID 2030; Yockey Dep. 76:12-15, ECF 61-6 at PageID 1776.)

***Response:*** Jane Roe testified that she believes she "was seen as a complainer and not a team player" and that this affected "what's been shared about me in the ballet community" and that she does not know "what people are saying behind closed doors" in a ballet world that "is very small." (Roe Depo, Doc61-1, PageID#785; Roe Depo., Doc.61-3, PageID#1309.) She further testified that she was treated differently by professors, including not getting feedback and prominent roles. (Roe Depo., Doc61-3, PageID#1214, 1260.) Karen Soe testified that she suffered retaliation from faculty and was "not confident" any CCM professor other than one, "would assist me in getting a job" and that she was denied every job application she submitted in 2022. (Soe Depo, Doc61-2, PageID#1026, 1049.)

**Proposed Fact No. 130**

Jane Roe testified she "felt like" several of her professors were retaliating against her. (Roe Dep. Vol. II 255:20-22, 256:11-17, 301:5-18, 303:5-6, ECF 61-3 at PageID 1214-15, 1260, 1262.)

***Response:*** Jane Roe testified that she believes she "was seen as a complainer and not a team player" and that this affected "what's been shared about me in the ballet community" and that she does not know "what people are saying behind closed doors" in a ballet world that "is very small." (Roe Depo, Doc61-1, PageID#785; Roe Depo., Doc.61-3, PageID#1309.) She further testified that she was treated differently by professors, including not getting feedback and prominent roles. (Roe Depo., Doc61-3, PageID#1214, 1260.)

**Proposed Fact No. 131**

Jane Roe testified that her feelings derived in part from being cast as a member of the corps de ballet for one performance instead of as a soloist or lead. (Id. at 301:5-16, at PageID 1260.)

***Response:*** Jane Roe testified that she believes she "was seen as a complainer and not a team player" and that this affected "what's been shared about me in the ballet community" and that she does not know "what people are saying behind closed doors" in a ballet world that "is very small." (Roe Depo, Doc61-1, PageID#785; Roe Depo., Doc.61-3, PageID#1309.) She further testified that she was treated differently by professors, including not getting feedback and prominent roles. (Roe Depo., Doc61-3, PageID#1214, 1260.)

**Proposed Fact No. 132**

Plaintiffs' purported expert, Karen Jennings, admitted she did not find "any evidence to support that Jane Roe and Karen Soe's casting while still at UC was affected because they made accusations against John Doe." (Jennings Dep. 189:16-20, ECF 61-11 at PageID 2640.)

***Response:*** Jane Roe testified that she believes she "was seen as a complainer and not a team player" and that this affected "what's been shared about me in the ballet community" and that she does not know "what people are saying behind closed doors" in a ballet world that "is very small." (Roe Depo, Doc61-1, PageID#785; Roe Depo., Doc.61-3, PageID#1309.) She further testified that she was treated differently by professors, including not getting feedback and prominent roles. (Roe Depo., Doc61-3, PageID#1214, 1260.)

**Proposed Fact No. 133**

Jane Roe testified that the course grade she received in Modern Dance from Professor Steele was retaliation because "up until that point [she] had no feedback telling [her] what [she] was doing wrong in class, so [she] believed [she] was going to get an A." (Roe Dep. Vol. II 312:7-22, ECF 61-3 at PageID 1271.) Jane Roe's course grade in Modern Dance was an Aminus. (Id.)

***Response:*** Jane Roe testified that she believes she "was seen as a complainer and not a team player" and that this affected "what's been shared about me in the ballet community" and that she does not know "what people are saying behind closed doors" in a ballet world that "is very small." (Roe Depo, Doc61-1, PageID#785; Roe Depo., Doc.61-3, PageID#1309.) She further testified that she was treated differently by professors, including not getting feedback and prominent roles. (Roe Depo., Doc61-3, PageID#1214, 1260.)

**Proposed Fact No. 134**

On October 25, 2021, Jane Roe received an email from Professor Tricia Sundbeck criticizing her for "abruptly inform[ing] her [she] would not be in class," and calling it "incredibly disrespectful." (Id. at 253:2-14, at PageID 1212; id. at Ex. R, at PageID 1386.)

***Response:*** Jane Roe testified about the context for this email, indicating that professor Steele was supposed to inform faculty why she was not in class. She thought the professor's "tone was very condescending and rude. (Roe Depo., Doc.61-3, PageID#1212-1213.)

**Proposed Fact No. 135**

At her deposition, Jane Roe testified that Professor Sundbeck's email was "inappropriate" because she "thought the tone was very condescending and rude." (Id. at 253:21- 24, at PageID 1212.)

***Response:*** Jane Roe testified about the context for this email, indicating that professor Steele was supposed to inform faculty why she was not in class. She thought the professor's "tone was very condescending and rude. (Roe Depo., Doc.61-3, PageID#1212-1213.)

**Proposed Fact No. 136**

Jane Roe also believed the email "is not something you would normally see at the 2 The corps de ballet is the ensemble of a ballet—a group of dancers without a featured role. (Roe Dep. Vol. I 31:8-16, ECF 61-1 at PageID 667.) college level" because she was an adult, so "coming to class is completely up to [her], [she's] not required to tell the instructors whether or not [she] will be there or not." (Id. at 254:7-15, at PageID 1213.)

***Response:*** Jane Roe testified about the context for this email, indicating that professor Steele was supposed to inform faculty why she was not in class. She thought the professor's "tone was very condescending and rude. (Roe Depo., Doc.61-3, PageID#1212-1213.)

**Proposed Fact No. 137**

Jane Roe admitted the class was "graded based on mostly [the students'] attendance." (Id. at 251:18-19, at PageID 1210.)

***Response:*** Jane Roe provided context for their concerns about grades, noting that "but since I went to Professor Steele and she excused the absence, it didn't really affect my attendance…" (Roe Depo., Doc.61-3, PageID#1211.)

**Proposed Fact No. 138**

Jane Roe received an A in Professor Sundbeck's class that semester. (Id. at 252:11- 14, at PageID 1211.)

***Response:*** Agreed.

**Proposed Fact No. 139**

Jane Roe testified that she sent Assistant Dean Todd Pettiford an email requesting "to be put in another class by another instructor." (Id. at 256:10-25, at PageID 1215.)

***Response:*** Agreed.

**Proposed Fact No. 140**

Jane Roe admitted that UC provided her supportive measures by switching her classes to other professors. (Id.)

***Response:*** Jane Roe testified that "I wasn't getting any feedback and I felt like I was just being ignored and I was getting rude looks and not being talked to at all and just completely passed by." She said that she was "moved a couple of times, but I don't -- I can't remember all the specific times that I went to another class." (Roe Depo., Doc61-3, PageID#1215.)

**Proposed Fact No. 141**

Karen Soe admitted at her deposition that she "wouldn't say [she] was threatened with retaliation." (Soe Dep. 147:13-18, ECF 61-2 at PageID 1019.)

***Response:*** Karen Soe testified that she suffered retaliation from faculty and was "not confident" any CCM professor other than one, "would assist me in getting a job" and that she was denied every job application she submitted in 2022. (Soe Depo, Doc61-2, PageID#1026, 1049.)

**Proposed Fact No. 142**

Karen Soe testified that she "can't prove that [she] was retaliated against." (Id. at 176:10-24, at PageID 1048.)

***Response:*** Karen Soe testified that she suffered retaliation from faculty and was "not confident" any CCM professor other than one, "would assist me in getting a job" and that she was denied every job application she submitted in 2022. (Soe Depo, Doc61-2, PageID#1026, 1049.)

Respectfully submitted,

/s/ Joshua A. Engel

Joshua Adam Engel (OH 0075769)
Scott O'Reilly (OH 0075717)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Court's ECF system this September 14, 2026 upon all counsel of record.

/s/ Joshua Engel
Joshua Engel