**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| JANE ROE, et al. | ) | Case No. 1:22-cv-00376 |
| | ) | |
| Plaintiffs, | ) | Judge Jeffrey P. Hopkins |
| | ) | |
| v. | ) | Magistrate Judge Karen L. Litkovitz |
| | ) | |
| UNIVERSITY OF CINCINNATI, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT UNIVERSITY OF CINCINNATI'S**
**REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION.

Plaintiffs' Response to Defendants['] Statement of Proposed Undisputed Facts ("UF Response") confirms that defendant University of Cincinnati ("UC") was not deliberately indifferent to claimed sexual harassment as a matter of law. Plaintiffs admit and/or do not dispute the following:

- Students like Jane Roe, Karen Soe, and John Doe are required to touch each other while partnering in ballet. (UF Response, ECF 67-1, PageID 3294-95 (admitting Proposed Fact Nos. 4-5).)
- Jane Roe did not tell anyone at UC that she believed John Doe's touching was intentional sexual harassment until October 6, 2021. (*See id.* at PageID 3299 (not denying Proposed Fact No. 27).)
- Professor Carberry escalated the report to her supervisor on October 6, 2021, and OGEI received a report on October 8, 2021. (*Id.* at PageID 3300-01 (admitting Proposed Fact Nos. 30, 32-36).)
- Professor Carberry could not unilaterally remove John Doe from class or discipline him, but was permitted to report as she did. (*Id.* at PageID 3302 (not denying Proposed Fact No. 38 and admitting Proposed Fact No. 39).)
- Jane Roe did not partner with John Doe after October 5, 2021, and claims no further harassment. (*Id.* at PageID 3303 (admitting Proposed Fact No. 42); Plaintiffs' Response to Motion for Summary Judgment ("Response"), ECF 67, PageID 3283.)

- UC investigated Jane Roe's report, interviewed nine witnesses, issued a mutual no contact order, provided supportive measures, held a hearing, and permitted an appeal. (*See* UF Response, ECF 67-1, PageID 3303-10 (admitting Proposed Fact Nos. 47, 56-57, 59-81 and not denying Proposed Fact Nos. 48-55).)

- Karen Soe claims she was touched inappropriately only once at UC, never partnered with John Doe again, filed no formal complaint, and sought no supportive measures. (UF Response, ECF 67-1, PageID 3313-14 (not denying Proposed Fact Nos. 96, 98, 100-01).)

- Both plaintiffs graduated with honors and obtained paid professional dancing positions, which a CCM professor helped them secure. (*Id*. at PageID 3317-18 (admitting Proposed Fact Nos. 115-16, 119-20).)

These undisputed facts are dispositive. While plaintiffs argue that UC should have acted sooner, differently, or better, that is not the standard. Title IX asks only whether a school refused to act. Once UC knew, it acted and the alleged harassment stopped.

Plaintiffs abandon nearly all their retaliation theories. As to what remains, they provide no admissible evidence in support. (Response, ECF 67, PageID 3289-90.) They likewise provide no evidence of their alleged damages. (*Id.* at PageID 3290-93.)

Without evidence, plaintiffs are left with argument and self-serving speculation. Neither suffices. "A properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions." *Mosquera v. MTI Retreading Co.*, 745 F. App'x 568, 573 (6th Cir. 2018) (quoting *Bradley v. Wal-Mart Stores*, *E., LP,* 587 F. App'x 863, 866 (6th Cir. 2014)). UC is entitled to summary judgment on all of plaintiffs' claims.

## II. <u>ALL OF UC'S PROPOSED UNDISPUTED FACTS REMAIN UNDISPUTED</u>.

This Court's Standing Order Governing Civil Cases requires that a party opposing summary judgment file a response to the moving party's proposed statement of undisputed facts that states in correspondingly numbered paragraphs "whether each of the facts asserted by the moving party is admitted or denied." (Standing Order Governing Civil Cases § II F.6.b.) A "denial must be supported with a citation(s) to contrary evidence that would be admissible at trial." (*Id.*)

The Response must "include, in a separate section entitled 'Proposed Disputed Issues of Material Fact,' a list of each issue of material fact the opponent contends must be tried, supported with citations to evidence that would be admissible at trial." (*Id.*)

Plaintiffs' UF Response contains no "Proposed Disputed Issues of Material Fact" section. (UF Response, ECF 67-1, PageID 3322.) For 67 of UC's Proposed Facts, plaintiffs neither admit nor deny the fact asserted. Instead, they provide a different assertion, frequently a boilerplate statement repeated verbatim in response to numerous unrelated facts, or, fail to respond. (*Id.* at PageID 3295-3305, 3310-11, 3313-22 (responses to Proposed Fact Nos. 8, 15-29, 31, 37-38, 41, 46, 48-55, 82-84, 93-101, 105-13, 121-25, 129-37, 140-42).) Plaintiffs' boilerplate responses are not denials.

Where a response "does not actually address the fact asserted," it "is exactly the kind of 'contrived' 'dispute of fact' that the Sixth Circuit has noted is not genuine for the purposes of summary judgment." *Lee v. Vanderbilt Univ.*, No. 3:20-cv-924, 2026 WL 483920, at *16 (M.D. Tenn. Feb. 20, 2026) (quoting *Brown v. Lexington-Fayette Urb. Cnty. Gov't*, 549 F. App'x 366, 372 (6th Cir. 2013)).

Under Rule 56(e)(2), where a party "fails to properly address another party's assertion of fact," the Court may "consider the fact undisputed for purposes of the motion." Plaintiffs' non-responsive purported responses, and failure to provide the required Proposed Disputed Issues of Material Fact statement, leave UC's Proposed Undisputed Facts uncontroverted.

## III. LAW AND ARGUMENT.

Under Title IX, UC can be liable only if plaintiffs prove UC "act[ed] with ***deliberate indifference to known acts of harassment***" by John Doe. (Opinion and Order, ECF 45, PageID 508 (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)) (emphasis added)). A school must have "actual knowledge of an incident of actionable

sexual harassment that prompted or should have prompted a response." *Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 621 (6th Cir. 2019) (quoting *Davis*, 526 U.S. at 650). "Only when an 'appropriate person' at a school knows about sexual discrimination does the school have 'actual knowledge.'" *Kesterson v. Kent State Univ.*, 967 F.3d 519, 527 (6th Cir. 2020). Applying these holdings here entitles UC to summary judgment on all of plaintiffs' claims.

### A. UC Is Entitled To Summary Judgment On Jane Roe's "After" Deliberate Indifference Claim.

Jane Roe and John Doe first danced as partners in September 2021. (*Id*. at PageID 3296 (admitting Proposed Fact Nos. 13-14).) It is undisputed that Jane Roe did not inform Professor Carberry of her belief John Doe was acting intentionally until October 6, 2021, at which point Professor Carberry escalated the issue to her supervisor. (*Id*. at PageID 3299 (not denying Proposed Fact Nos. 27, 29-30).) On October 8, 2021, Denton Yockey reported the same to OGEI. (*Id.* at PageID 3300-01 (admitting Proposed Fact Nos. 33-36).) Thus, for the reasons stated in UC's Motion for Summary Judgment ("MSJ"), it is undisputed that UC did not have actual knowledge that Jane Roe believed John Doe was intentionally engaging in misconduct until October 8, 2021. (MSJ, ECF 63, PageID 2893-2896.)

Recognizing they cannot rebut the above, plaintiffs seek to rely on arguments that find no support in the record or law governing Title IX "after" deliberate indifference claims. (*See* Response, ECF 67, PageID 3273-79.) For the reasons discussed below, plaintiffs' arguments are wrong and UC is entitled to summary judgment.

#### *1. No "Appropriate Person" At UC Had Actual Knowledge Of Sexual Harassment Before October 8, 2021.*

An "appropriate person" is an official "high enough up the chain-of-command" that "her decision constitutes the school's decision," with "the authority to take corrective action" on the school's behalf. *Kesterson*, 967 F.3d at 527-29. Critically, "a university employee's ability to

mitigate hardship or refer complaints does not make them an 'appropriate person.' . . . Otherwise, every employee would qualify and schools would face a form of vicarious liability that Title IX does not allow." *Id.* at 527.

***a. The UC Professors At Issue Are Not "Appropriate Persons."***

Plaintiffs argue Professor Carberry was an appropriate person under Title IX. (Response, ECF 67, PageID 3276-77.). Plaintiffs' argument is procedurally and substantively incorrect.

Initially, plaintiffs cannot rely on the expert reports of Zev Steinrock and Karen Jennings. Expert reports are "unsworn and thus [are] hearsay, which may not be considered on a motion for summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 815 (6th Cir. 2006); *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 479-81 (6th Cir. 2008) (reversing district court where it "improperly considered [a party's] unsworn, hearsay evidence" in the form of expert reports); *see also Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 619-20 (6th Cir. 2003) (finding the plaintiff's expert's "notes setting forth her opinion … amount to nothing more than inadmissible hearsay, which cannot be considered on a motion for summary judgment.").

When deposed under oath, plaintiffs' purported experts do not support their arguments. Ms. Jennings acknowledged, "we've agreed I don't know anything about the Title IX process." (3/3/26 Deposition of Karen Jennings ("Jennings Dep.") 182:9-10, ECF 61-11, PageID 2633.) She also confirmed that the "industry standards" she references in her report are not written anywhere or subject to review. (*Id.* at 183:10-13, PageID 2634.) And when asked the basis for her statement in her report that Professor Carberry "may face potential liability or discipline," she answered: "Because I was advised to" by plaintiffs' counsel. (*Id.* at 183:1, PageID 2634; *see also id.* at 181:18-21, PageID 2632 (testifying she used a quotation in her report because "I was advised by my attorney" to do so).)

When deposed under oath, Mr. Steinrock admitted the following:

1) Professor Carberry's report to her supervisor was "consistent with Title IX policy" (3/2/26 Deposition of Zev Steinrock ("Steinrock Dep.") 155:5-16, ECF 61-10, PageID 2380);

2) "Once a Title IX case is started, … the instructor cannot take steps to investigate, must treat both parties equally" (*id.* at 155:19 – 156:2, PageID 2380-81);

3) Professor Carberry was ***not*** permitted to discipline John Doe for alleged sexual harassment or suspend him because such actions ***must*** be handled by OGEI (*id.* at 22:1-6, 116:7-14, 117:23 – 118:4, PageID 2247, 2341-43);

4) Professor Carberry's escalation was "correct" for purposes of Title IX (*id.* at 158:14 – 159:3, PageID 2383-84); and

5) "The staff of the Title IX office" investigates such allegations, and "It is not appropriate" for a professor to do so. (*Id.* at 21:11-25, PageID 2246.)[1]

Plaintiffs try to attach significance to Mr. Steinrock's testimony referencing language in class syllabi, which encourages students to tell their professors if they feel uncomfortable. The syllabi, however, do not make the professors appropriate persons under Title IX. (Response, ECF 67, PageID 3277.) Instead, they show efforts by the professors to make sure allegations make their way to OGEI for appropriate review and response, as Professor Carberry did here. (UF Response, ECF 67-1, PageID 3300.)

Plaintiffs also argue a professor can instruct on proper behavior and boundaries. (Response, ECF 67, PageID 3279). While true, such instruction describes classroom management, not authority to remove or discipline students for purposes of Title IX. *Kesterson* explains the distinction: an employee's "ability to mitigate hardship or refer complaints does not make them an

[1] Plaintiffs' citations to their purported experts' reports also directly contradict the testimony of Mr. Steinrock and Ms. Jennings. Thus, even if the purported experts had filed declarations authenticating the sections of the expert reports plaintiffs rely upon, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts [his] earlier deposition testimony." *Pogue v. Nw. Mut. Life Ins. Co.*, No. 18-5291, 2019 WL 1376032, at *4 (6th Cir. Feb. 7, 2019) (quoting *Peck v. Bridgeport Machs., Inc.*, 237 F.3d 614, 619 (6th Cir. 2001)). In *Pogue*, the Sixth Circuit applied this doctrine to plaintiff's expert, and held that the district court properly declined to consider the expert's "sham" declaration. *Id.*

'appropriate person.'" 967 F.3d at 527. Otherwise, every instructor would bind UC, which is the kind of vicarious liability Title IX forbids. *Id.* And, at his deposition, Mr. Steinrock conceded this point: professors do not investigate harassment claims, the instructor "must treat both parties equally" once a Title IX matter is opened, and escalation to the Title IX office is "correct" under Title IX. (Steinrock Dep. 155:5 – 159:3, ECF 61-10, PageID 2380-84.) Plaintiffs' attempt to contort the ability to manage classes into Title IX authority is exactly what *Kesterson* precludes. 967 F.3d at 527.

In an attempt to distinguish *Kesterson*, plaintiffs admit its holding rested in part on the fact that the "plaintiff 'offered no evidence that [certain specified] individuals could act on [the school's] behalf.'" (Response, ECF 67, PageID 3276 n.2 (quoting *Kesterson*, 967 F.3d at 529).) This is directly on point to the case at bar. Plaintiffs identify no evidence conferring on Professor Carberry authority to act on UC's behalf for Title IX purposes. Instead, the undisputed record establishes that Professor Carberry could not remove John Doe from her classroom or discipline him. (UF Response, ECF 67-1, PageID 3302 (not denying Proposed Fact No. 38).)

Professor Carberry testified that if she learned of inappropriate conduct, she "would immediately go into [her] department chair which is [her] boss and then from there [she] would file with Title IX." (1/30/25 Deposition of Deirdre Carberry ("Carberry Dep.") 23:3-8, ECF 61-5, PageID 1507.) Likewise, if she witnessed something in the classroom, she "would stop what's going on in the room, go immediately into [her] boss … and then [she] would report to Title IX." Here, after she made her report, she was instructed by OGEI personnel that she did not need to take any further action herself. (*Id.* at 25:10-24, PageID 1509.) Asked directly whether she had "the ability to remove students who are committing sexual harassment from the classroom," she answered: "I do not. I believe it's the chair. I'm not the head … of the department. I'm a faculty

member." (*Id.* at 23:9-13, PageID 1507.) Mr. Steinrock agreed with these positions. (Steinrock Dep. 21:11 – 22:6, 116:7-14, 117:23 -118:4, 155:19 – 156:2, PageID 2246-47, 2341-43, 2380-81.)

Plaintiffs' reliance on the testimony of OGEI investigator Shannon Schipper does not create a dispute of material fact. Ms. Schipper testified that "everybody on a university campus has a responsibility to help prevent or address harassment when they see it," "and that faculty "are responsible for classroom management." (6/27/25 Deposition of Shannon Schipper ("Schipper Dep.") 60:22 – 61:9, ECF 61-9, PageID 2140-41.) That testimony says nothing about authority to institute corrective measures on UC's behalf pursuant to Title IX, which is the inquiry Title IX requires. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). The limited ability to refer a problem is precisely what the Sixth Circuit held does ***not*** make an employee an "appropriate person." *Kesterson*, 967 F.3d at 527. Ms. Schipper confirmed this when she testified that OGEI is the entity charged with responding to Title IX reports and conducting investigations, and that a respondent "still has that right to his education because there's been no determination that they are responsible for violating the policy." (Schipper Dep. 61:25 – 62:4, ECF 61-9, PageID 2141-42; *see also* UF Response, ECF 67-1, PageID 3301-02 (not denying Proposed Fact No. 37).)

Plaintiffs' authorities confirm what Ms. Schipper stated. In *Dahmer v. W. Ky. Univ.*, No. 21-5318, 2022 WL 19296342 (6th Cir. Oct. 13, 2022), the official at issue was a Director of Student Activities whom the university's sexual harassment policy expressly defined as someone with "the authority to address and remedy" sexual misconduct and "whose knowledge of such conduct can put the institution on notice." In *Doe v. Ohio Univ.*, No. 2:21-cv-858, 2023 WL 2652482 (S.D. Ohio Mar. 27, 2023), the individuals at issue were Title IX administrators and the Title IX Coordinator. In *Lipian v. Univ of Mich.*, 453 F.Supp.3d 937 (E.D. Mich. 2020), the department chair exercised supervisory authority over the alleged harasser, who was a faculty member—not a

fellow student.[2]

As Ms. Schipper testified, UC's Policy vests responsibility for responding to reports of student-on-student sexual harassment in OGEI, and plaintiffs identify no policy provision, job description, or other record evidence conferring on Professor Carberry authority to institute corrective measures on UC's behalf. On this record, as in *Kesterson*, plaintiffs "offer[] no evidence that [Professor Carberry] could act on [UC's] behalf." 967 F.3d at 529. Instead, all evidence establishes she could not.

#### ***b. Professor Carberry Did Not Know Of Claimed Sexual Harassment Until October 6, 2021.***

Even if Professor Carberry were an appropriate person, which she is not, Jane Roe's "after" deliberate indifference claim still fails. It is undisputed that Professor Carberry had no knowledge of claimed sexual harassment until October 6, 2021. Jane Roe admits that Professor Carberry only knew Jane Roe and John Doe needed to improve their dance technique and she herself (Jane Roe) did not know why she and John Doe's partnering was not working. (UF Response, ECF 67-1, PageID 3296-98 (not denying Proposed Fact Nos. 15-21).) Jane Roe also admits that when Professor Carberry observed a misplaced hand during a rehearsal, she stopped the rehearsal, corrected John Doe, and asked Jane Roe if she was all right—and that Jane Roe responded she was "just a little uncomfortable, like … we need to fix that," after which "we fixed it and it was fine." (*Id.* at PageID 3298 (not denying Proposed Fact Nos. 22-23); *see also* Roe Dep. Vol. I 80:6-12, ECF 61-1, PageID 716.) These facts do not establish actual knowledge of sexual harassment.

[2] The other cases on which plaintiffs rely are inapposite. *Montgomery v. Indep. Sch. Dist. No. 709*, 109 F.Supp.2d 1081 (D. Minn. 2000) and *Herndon v. College of Mainland*, No. G-06-0286, 2009 WL 367500 (S.D. Tex. Feb. 13, 2009) are out-of-circuit district court cases that cannot be squared with the Sixth Circuit's holding in *Kesterson*. None of the other cases cited by the Response hold that a professor alone can give a university actual knowledge. *See Frederick v. Simpson Coll.*, 149 F.Supp.2d 826 (S.D. Iowa 2001) (two administrators were appropriate persons); *Weis v. Bd. of Trustees of the Fla. Gulf Coast Univ.*, No. 2:19-cv-503, 2020 WL 2219192 (M.D. Fla. May 7, 2020) (department chair was appropriate person).

Jane Roe's contemporaneous formal complaint confirms Professor Carberry's lack of knowledge. Describing interactions on September 28 and 30, she wrote that she "[s]tarted to realize how consistent it was and realized it was 100% intentional," and explained: "I didn't see the signs until it became consistent in every rehearsal." (Roe Dep. Vol. I at Ex. M, ECF 61-1, PageID 857.) Objectively, a professor cannot have actual knowledge of sexual harassment in mid-September based on conduct the complainant herself did not perceive as intentional until the end of the month. *See Kollaritsch*, 944 F.3d at 621 (holding sexual harassment requires "behavior that would be offensive to a reasonable person under the circumstances, not merely offensive to the victim, personally or subjectively").

***c. The Allegations About Conduct Before Jane Roe, Karen Soe, or John Doe Attended UC Cannot Supply Actual Knowledge.***

Plaintiffs reference a 2015 letter and a February 2020 conversation with Professor Carberry. Neither bears on the "after" deliberate indifference claim that remains.

First, this material goes to plaintiffs' "before" theory, which this Court has already rejected. The Court held, "Plaintiffs have only stated a viable claim for an 'after' theory of liability under Title IX (i.e., not the Title IX 'before' claim)." (Order, ECF 55, PageID 599.) Significantly, with respect to the March 2020 report, the Court found that "once the faculty member was informed of the alleged misconduct, that faculty member reported the incident and Plaintiffs' concerns to the UC Title IX office," and, "Plaintiffs have failed to plausibly allege that UC's response was so 'clearly unreasonable'" as to establish deliberate indifference. (*Id.* at PageID 602-03.) The Court also observed that plaintiffs' surviving "after" theory is "far more limited in time and in scope," resting on UC's conduct ***after*** September 2021. (*Id.* at PageID 604.) Nothing in discovery has changed that. Plaintiffs are trying to reargue their "before" theory without acknowledging the Court's adverse ruling.

Second, the 2020 report concerns third parties. Plaintiffs' Response confirms that Jane Roe and Karen Soe told Professor Carberry that John Doe was "accused of sexual misconduct by ***other female dancers*** at a local ballet academy prior to his enrollment at UC." (UF Response, ECF 67-1, PageID 3310 (response to Proposed Fact No. 82) (emphasis added).) *Kollaritsch* requires that "the further harassment must be inflicted against the same victim[.]" 944 F.3d at 621-22; *see also Malick v. Croswell-Lexington Dist. Schs.*, 717 F.Supp.3d 639, 657 (E.D. Mich. 2024). Similarly, the 2015 letter concerns a student at an unaffiliated ballet academy and was addressed to a teacher who worked at that academy, but not at UC.[3] (Soe Dep. 65:1-5, 74:6-11, ECF 61-2, PageID 937, 946; Carberry Dep. 28:16-18, ECF 61-5, PageID 1512; Steele Dep. 20:25 – 21:1, ECF 61-8, PageID 1948-49; Yockey Dep. 21:3-7, ECF 61-6, PageID 1721.)

Third, Jane Roe conveyed in February 2020 only what she had heard from classmates. (Roe Dep. Vol. I at Ex. E, ECF 61-1, PageID 844.) Rumor does not provide actual knowledge. *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 129 (3d Cir. 2020); *Bernard v. E. Stroudsburg Univ.*, 700 F. App'x 159, 165 (3d Cir. 2017); *Shrum ex rel. Kelly v. Kluck*, 249 F.3d 773, 782 (8th Cir. 2001).

### *2. UC Was Not Deliberately Indifferent, And Jane Roe Suffered No Further Actionable Harassment.*

Plaintiffs admit Jane Roe never danced with John Doe again after October 5, 2021. (Response, ECF 67, PageID 3283.) That admission is dispositive. *Kollaritsch* requires "some

[3] The Response incorrectly states that this letter was addressed "to an unidentified person at UC." (Response, ECF 67, PageID 3273.) The letter was addressed instead to a youth ballet teacher who is associated with a youth ballet program, ***not*** UC. (*See* 12/20/24 Deposition of Karen Soe ("Soe Dep.") 65:1-5; *id.* at 74:6-11 (confirming teacher's association with the youth ballet program); 1/30/25 Deposition of Deirdre Carberry ("Carberry Dep.") 28:16-18 (UC Ballet Professor testifying she "[n]ever heard of that name"); 4/23/25 Deposition of Shauna Steele ("Steele Dep.") 20:25 – 21:1 (UC Dance Professor testifying she does not know the teacher); 2/12/25 Deposition of Denton Yockey ("Yockey Dep.") 21:3-7 (UC CCM division head testifying he does not know who the teacher is and has never spoken to her). Jane Roe acknowledged UC did not have prior knowledge of the information in the letter related to allegations about 2015 conduct at the academy until she made her own allegations in 2020. (1/17/25 Deposition of Jane Roe ("Roe Dep. Vol. II") 336:2 – 337:4, ECF 61-3, PageID 1295-96.)

further incident of actionable sexual harassment" occurring after the school's actual knowledge and caused by the unreasonableness of its response. 944 F.3d at 623-24. Here, there was none. Regardless of plaintiffs' claims about UC's investigation and hearing, the causal chain *Kollaritsch* requires does not exist, because no harassment is alleged after October 8, 2021 (the date OGEI received a report).

Plaintiffs also do not dispute the measures UC took: three meetings with OGEI before any formal complaint; a formal complaint on October 21; a mutual no-contact order on October 25; separation of the students; a twelve-point plan; attempts to procure a replacement partner at UC's expense so that Jane Roe could perform her lead role; an investigation in which nine witnesses were interviewed; a hearing; and an appeal. (*See* UF Response, ECF 67-1, PageID 3303-10 (admitting Proposed Fact Nos. 47, 56-57, 59-81; and not denying Proposed Fact Nos. 48-55).) Plaintiffs' qualifying language—"[a]greed, except to the extent that this was a biased and flawed investigation"—does not dispute that these things happened. As the Sixth Circuit has stated, "We ask not whether the school's efforts were ineffective but whether they amounted to an official decision … not to remedy the violation." *Foster v. Bd. of Regents of Univ. of Mich.*, 982 F.3d 960, 968 (6th Cir. 2020) (en banc). UC's response was not deliberately indifferent. *Id.*

Plaintiffs' other arguments are unavailing. First, Plaintiffs mischaracterize Professor Steele's October 28, 2021, email. The full email confirms UC was not indifferent. Plaintiffs quote the email's criticism of OGEI as though it described OGEI's handling of Jane Roe's complaint. The email says the opposite in its opening lines: "The below comments are not related to the situation with this 'OGEI STUDENT CONCERN' but are related to the process…" (Carberry Dep. at Pl. Ex. 26, ECF 66-1, PageID 3126.) Similarly, the passage plaintiffs quote about OGEI responding "sorry that happened to you" concerns an incident involving Professor Steele

personally. (*Id.*; Steele Dep. 92:15-25, ECF 61-8, PageID 2020.)

The remainder of the email sets out the twelve-point separation plan CCM developed for Jane Roe and John Doe. (ECF 66-1, PageID 3127-28.) The email further documents that CCM approached four outside professional dancers to replace John Doe as Jane Roe's partner so that she could still perform her lead role, at UC's expense. (*Id.*) The email does ***not*** evidence "an official decision … ***not*** to remedy the violation." *Foster*, 982 F.3d at 968 (emphasis added).

Ms. Schipper's testimony that she was unaware of any UC response to the February 2020 report is irrelevant. (Schipper Dep. 39:22 – 40:17, ECF 61-9, PageID 2119-20.) Ms. Schipper was not involved in the intake of the 2020 report, and her personal unawareness of a response is not evidence that none occurred. The undisputed record is that Professor Carberry reported to OGEI; OGEI contacted Jane Roe that same day and followed up repeatedly seeking a meeting; Jane Roe replied that she and Karen Soe were "very busy with our full schedules and rehearsals"; neither plaintiff accepted the invitation to meet; and CCM addressed the concerns with John Doe directly. (UF Response, ECF 67-1, PageID 3310-13 (not denying Proposed Fact No. 84 and admitting Proposed Fact Nos. 85-92).) Further, this evidence concerns the dismissed "before" claim.

Plaintiffs' recitation of asserted procedural irregularities or allegations of a flawed process do not establish deliberate indifference. *See Doe v. Case W. Reserve Univ.*, No. 1:14-cv-2044, 2015 WL 5522001, at *7 (N.D. Ohio Sept. 16, 2014); *Ross v. Univ. of Tulsa*, 180 F.Supp.3d 951, 969, 972-73 (N.D. Okla. 2016) ("failing to follow best practices or past practices is not equivalent to deliberate indifference"; a "possible misapplication of a school's evidentiary policy … is not 'clearly unreasonable' as a matter of law"). "The inquiry is not whether [UC] could have done better; it is whether [UC] acted with deliberate indifference to its Title IX obligations." *Ross*, 180-F.Supp.3d at 973. This Court has already stated that "courts refrain from second-guessing the

disciplinary decisions made by school administrators." (Order, ECF 55, PageID 603 (quoting *Davis*, 526 U.S. at 648).)

Plaintiffs' authorities do not overcome established Sixth Circuit law on "after" deliberate indifference claims. Plaintiffs' authorities involved students who endured continued harassment after the school learned of it and were decided on the pleadings; here, the harassment stopped, and the motion is governed by Rule 56. The one Sixth Circuit case plaintiffs cite regarding process, *Doe v. Oberlin College*, did not apply a deliberate-indifference standard. 963 F.3d 580 (6th Cir. 2020). And *Stiles v. Grainger County* uses the standard UC met: a school should take "proactive steps to reduce opportunities for further harassment." 819 F.3d 834, 849 (6th Cir. 2016). UC implemented twelve of them and neither Jane Roe nor Karen Soe alleges harassment after telling anyone at UC, let alone an appropriate person. (UF Response, ECF 67-1, PageID 3305 (not denying Proposed Fact No. 53).)

Additionally, plaintiffs' allegations of procedural errors do not support their claims. Plaintiffs argue OGEI did not interview Professor Steele or Mr. Yockey, who were not witnesses to the alleged conduct. Plaintiffs do not identify what either would have added, and do not dispute that nine witnesses were interviewed. (UF Response, ECF 67-1, PageID 3306.)

Plaintiffs' assertion that "John Doe was not required to follow the rules" is refuted by Director of Student Conduct, Ashleigh Wade, who testified that John Doe submitted his witness's name in the wrong format, that she told him to resubmit it correctly, and that she then "called and made sure that Jane Roe was okay with that witness participating," and "[s]he said 'yes.'" (3/14/25 Deposition of Ashleigh Wade ("Wade Dep.") 66:1-8, ECF 61-7, PageID 1871.) Ms. Wade enforced the deadline against John Doe's two other proposed witnesses, whom she "declined or denied because they were submitted well after the … date." (*Id.* at 64:5-7, PageID 1869.) Contrary to

plaintiffs' arguments, Jane Roe's testimony corroborates the advance notice: she knew "a week or two prior" who John Doe's witness would be. (Roe Dep. Vol. II 228:10-13, ECF 61-3, PageID 1187.) The rule was thus applied to exclude two of John Doe's witnesses, and the one who testified did so with Jane Roe's agreement.[4] *Id.*

Plaintiffs also claim the panel should have received evidence regarding the 2020 accusations, but the relevance determination was made by the panel. Ms. Wade testified that "[t]he ARC body determined that they didn't have relevant information," and the Student Code of Conduct reserves relevance determinations to the hearing chair "in consultation with the A.R.C." (Wade Dep. 68:13-15, ECF 61-7, PageID 1873; *see also* Smith Dep. at Pl. Ex. 3, ECF 66-1, PageID 3031.) *Ross* rejected plaintiffs' arguments on materially identical facts. 180 F.Supp.3d at 972-73.

Plaintiffs' remaining procedural complaints—that Professor Carberry had a conflict of interest, that she did not testify, that the images she reviewed were incomplete, and that the panel's written rationale overstated the witness testimony—are, at most, disagreements about how the hearing was run, not that UC was deliberately indifferent.

Plaintiffs also note in passing that UC did not list every decision-maker's training on its website. (Response, ECF 67, PageID 3284 (footnote 10).) A failure to satisfy an administrative posting requirement is not deliberate indifference, and plaintiffs identify no connection between the website and any outcome here. Plaintiffs also identify no evidence that the alleged process issues reflect an institutional decision not to remedy or deliberate indifference.[5] *Foster*, 982 F.3d at 968-69.

---

[4] Plaintiffs' claim that the conversation went undocumented is immaterial. Ms. Wade testified that she "typed up [her] notes from the conversation" and "provided it to the Appeals Board." (Wade Dep. 67:2-6, ECF 61-7, PageID 1872.) That the appeals administrator could not recall, four years later, which specific document contained these notes does not create a genuine dispute about whether the conversation occurred.

[5] Regarding hearing procedures, the Court should disregard any reliance by plaintiffs on Ms. Jennings. (*See* Response, ECF 67, PageID 3286.) She admitted at her deposition she knows nothing about Title IX. Jennings Dep. 182:9-10, ECF 61-11, PageID 2633.)

**B. UC Is Entitled To Summary Judgment On Karen Soe's "After" Deliberate Indifference Claim.**

Plaintiffs admit Karen Soe's claim rests on a single incident in October 2021. (UF Response, ECF 67-1, PageID 3313 (admitting Proposed Fact No. 96).) Karen Soe first told UC about the incident during her witness interview on November 5, 2021—after it occurred. (*Id.* (admitting response to Proposed Fact No. 97).) She claims no further harassment, did not partner with John Doe again, did not file a formal complaint, did not request a no-contact order, and did not seek supportive measures. (*Id.* at PageID 3313-14 (not denying Proposed Fact Nos. 98, 100-01).) There is therefore no post-knowledge further harassment of Karen Soe.

Plaintiffs argue that *Kollaritsch's* "focus was on knowledge of misconduct by the assailant, not a single assault on the victim." (Response, ECF 67, PageID 3281.) *Kollaritsch* holds the opposite: "one incident of harassment is not enough." 944 F.3d at 620. "[T]he further harassment must be inflicted against the same victim," and a plaintiff "cannot premise the further harassment element of her Title IX claim on conduct by the perpetrator directed at third parties." 944 F.3d at 621-22; *accord Doe v. Univ. of Kentucky,* 959 F.3d 246, 251 (6th Cir. 2020). Karen Soe cannot rely on what John Doe allegedly did to Jane Roe or others. *Id.*

**C. UC Is Entitled To Summary Judgment On Plaintiffs' Retaliation Claims.**

***1. Plaintiffs' Retaliation Claims Fail Because They Identify No Act Of UC.***

Plaintiffs do not dispute that the alleged retaliatory acts were taken by individual faculty members. Title IX reaches only a funding recipient's "own official decision[s]." *Bose v. Bea, 947* F.3d 983, 991 (6th Cir. 2020) (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290-91 (1998)). For the reasons set out in Part III.A.1, the faculty members that plaintiffs identify are not officials whose decisions constitute UC's decisions. *Kesterson,* 967 F.3d at 527-29. Nor may plaintiffs proceed on a theory that UC was deliberately indifferent to faculty retaliation: it is

undisputed that plaintiffs failed to report to anyone at UC they had been retaliated against and plaintiffs point to no supporting evidence.

### ***2. Jane Roe's Casting Claim Rests On Speculation That Her Own Purported Expert Rejects.***

Jane Roe can only offer her own subjective speculation that because she did not get a role she wanted, she was retaliated against. (Response, ECF 67, PageID 3289 (*quoting* Roe Dep. Vol. II, ECF 61-3, PageID 1214, 1260).) "Unsubstantiated, self-serving assertions" cannot defeat summary judgment, and "[a] properly supported motion for summary judgment will not be defeated by conclusory allegations, speculation and unsubstantiated assertions." *Mosquera v. MTI Retreading Co.,* 745 F. App'x 568, 573 (6th Cir. 2018) (quoting *Bradley v. Wal-Mart Stores E., LP,* 587 F. App'x 863, 866 (6th Cir. 2014)).

The record contains no evidence supporting a retaliation claim. When asked whether she had "any evidence to support that Jane Roe and Karen Soe's casting while still at UC was affected because they made accusations against John Doe," Ms. Jennings answered: "No." (Jennings Dep. 189:16-20, ECF 61-11, PageID 2640.) It is undisputed that every UC employee deposed confirmed that they did not witness retaliation against either plaintiff. (UF Response, ECF 67-1, PageID 3319-20 (not denying Proposed Fact No. 129).) And plaintiffs agree UC maintains a policy prohibiting retaliation, complainants were informed of the policy, and neither plaintiff filed a complaint for retaliation. (*Id.* at PageID 3319 (admitting Proposed Fact Nos. 127-28).)

### ***3. Karen Soe Admits She Has No Evidence Of Retaliation.***

Karen Soe testified: "I wouldn't say I was threatened with retaliation." (Soe Dep. 147:13-18, ECF 61-2, PageID 1019.) When asked on redirect by her counsel about her testimony that she "can't prove that [she was] retaliated against," she answered "Yeah." (*Id.* at 176:10-24, PageID 1048.) Plaintiffs say this is out of context, but do not deny she gave this testimony. (UF Response,

ECF 67-1, PageID 3322.) Summary judgment "is the nonmovant's time to lay …her evidentiary cards on the table." *Smyer v. Kroger Ltd. P'ship I*, No. 3:20-cv-114, 2022 WL 2757655, at *5 (S.D. Ohio July 14, 2022). Karen Soe has none and UC is entitled to summary judgment.

#### ***4. Plaintiffs Have Abandoned Their Remaining Retaliation Theories.***

UC moved for summary judgment on each retaliation theory plaintiffs pled or disclosed. Plaintiffs' Response does not address or defend: (i) the October 25, 2021, email from Professor Sundbeck; (ii) UC's efforts to find Jane Roe a replacement partner; (iii) the temporary modification of rehearsals; or (iv) Jane Roe's A-minus in modern dance. (*See generally* Response ECF 67, PageID 3289-90.) "When a litigant fails to address a claim in response to a motion for summary judgment, that claim is deemed abandoned or forfeited." *Bennett v. Hurley Med. Ctr.,* 86 F.4th 314, 324 (6th Cir. 2023). The Court should grant UC summary judgment as to these claims.

### **D. Plaintiffs Cannot Establish The Damages They Seek.**

Plaintiffs no longer seek emotional distress damages. (Response, ECF 67, PageID 3290.) What remains are claimed lost income and reputational harm damages.

Plaintiffs cite the decision in *Snyder-Hill v. Ohio State University* for the proposition that lost educational opportunities and earnings are "theoretically recoverable as expectation damages." No. 2:23-cv-2993, 2026 WL 1846975 (S.D. Ohio Apr. 28, 2026). But that decision holds that such losses "must be established with reasonable certainty," and that plaintiffs "are limited to recovering their 'actual loss'" out of pocket. *Id.* at *4 (quoting *Eggert v. Meritain Health, Inc.,* 428 F. App'x 558, 563 (6th Cir. 2011)). The only question is proof, and plaintiffs have none. Speculation "fails to create a genuine issue of material fact on lost earning capacity."[6] *Id*. at *3 n.6.

[6] Plaintiffs are wrong to say that "Defendants do [*sic*] not argue that the damages claimed by Plaintiffs is *[sic]* too speculative." (Response, ECF 67, PageID 3292.) UC argued that "plaintiffs have no proof, let alone proof with reasonable certainty, that they suffered lost earnings." (MSJ, ECF 63, PageID 2904.)

Plaintiffs identified no expert on damages, no job offer they lost, and no compensation they would have received. They offer only speculation that they believe they lost opportunities. (Response, ECF 67, PageID 3291-92.) The undisputed record refutes their belief.

Both plaintiffs graduated with honors. (UF Response, ECF 67-1, PageID 3317 (admitting Proposed Fact Nos. 115-16).) Both completed paid co-ops at a professional ballet company their senior years and obtained paid professional dancing positions immediately after graduation, in each case with the assistance of CCM Professor Qi Jiang. (UF Response, ECF 67-1, PageID 3318 (admitting Proposed Fact Nos. 119-20).) Ms. Jennings conceded that ballet is a highly competitive field with few available positions, "[p]articularly [for] women." (*Id.* at PageID 3317 (admitting Proposed Fact No. 117).) Asked what evidence she had that Jane Roe's reputation was harmed, Ms. Jennings answered that it "is not in the current record" and that she "do[es] not see evidence in the present"; asked the same question about Karen Soe, she answered, "I have not seen evidence." (Jennings Dep. 184:16-185:3, ECF 61-11, PageID 2635-36.) Jane Roe admitted that her subjective belief is her only basis for claiming reputational harm, that no one told her they thought less of her, and that she does not know what her reputation is. (UF Response, ECF 67-1, PageID 3318-19 (not denying Proposed Fact Nos. 122-24).) Karen Soe admitted she has no evidence that any loss "was a direct result of what happened at CCM," and that she did not apply to other companies after leaving the ballet company she danced for. (*Id.* at PageID 3319 (not denying Proposed Fact No. 125 and admitting Proposed Fact No. 126).)

Plaintiffs' own authorities also do not help them. *Montgomery v. District of Columbia,* held that the plaintiff "cannot recover either emotional distress or reputation damages in light of *Cummings."* No. 18-1928, 2022 WL 1618741, *25 (D.D.C. May 23, 2022). *Chaitram v. Penn Medicine-Princeton Medical Center* is inapposite. No. 21-17583, 2022 WL 16821692, at *2

(D.N.J. Nov. 8, 2022). The opinion was issued at the motion to dismiss stage, and expressly held that such "matters are more appropriately handled at the summary judgment stage…" *Id.* Their remaining cases involved plaintiffs who left or transferred from the institution. *Cf. Doe v. Bd. of Regents of the Univ. of Neb.,* No. 4:20-cv-3036, 2022 WL 3566990, at *4 (D. Neb. Aug. 18, 2022);[7] *Rullo v. Univ. of Pittsburgh,* No. 17-1380, 2021 WL 640063 (W.D. Pa. Feb. 18, 2021). Jane Roe and Karen Soe completed their degrees at CCM with highest honors and were placed in professional positions.

Plaintiffs' fallback argument – that they are entitled at a minimum to "the loss of the value of their education" – fails for the same reason. (Response, ECF 67, PageID 3290.) Both completed their degrees with highest honors, and neither identifies any tuition, scholarship, or other quantifiable educational cost lost. A speculative claim about the diminution in the subjective value of a completed degree does not establish a loss with reasonable certainty. *Mosquera,* 745 F. App'x at 573; *Bradley,* 587 F. App'x at 866.

## IV. CONCLUSION.

For the reasons stated above and in UC's Motion, UC is entitled to summary judgment on all claims asserted in plaintiffs' Amended Complaint (ECF 15).

Respectfully submitted,

D. ANDREW WILSON
ATTORNEY GENERAL OF OHIO

/s/ Michael H. Carpenter
Michael H. Carpenter (0015733) (Trial Attorney)
Timothy R. Bricker (0061872)
David J. Barthel (0079307)
Michael Rogers (0098948)

---

[7] Plaintiffs are wrong to suggest that the court in *Doe* "permitted a Title IX plaintiff to present evidence about 'actual financial damages she suffered as a result of leaving' the school." (Response, ECF 67, PageID 3292.) To the contrary, the district court granted defendant's motion for summary judgment just three weeks later. *See Doe v. Bd. of Regents of the Univ. of Neb.*, No. 4:20-cv-3036 (D. Neb. Sept. 9, 2022).

Carpenter Lipps LLP
280 Plaza, Suite 1300
280 North High Street
Columbus, Ohio 43215
Telephone: (614) 365-4100
Facsimile: (614) 365-9145
carpenter@carpenterlipps.com
bricker@carpenterlipps.com
barthel@carpenterlipps.com
rogers@carpenterlipps.com

*Special Counsel for Defendant University of Cincinnati*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically on September 28, 2026. Notice was sent by operation of the Court's electronic filing system to all other counsel who have entered an appearance and any parties who have entered an appearance through counsel. The parties may access this filing through the Court's ECF system.

/s/ Michael H. Carpenter
Michael H. Carpenter

*Trial Attorney for Defendant University of Cincinnati*